# **<u>EXHIBIT C</u>**

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS:

**SUPERIOR COURT**
**C.A. NO: SUCV2014-03906**

ANDRE BISASOR, )
      PLAINTIFF, )
       )
VS. )
       )
HARVARD EXTENSION SCHOOL/ )
HARVARD UNIVERSITY, ET AL. )
      DEFENDANTS. )

### MOTION TO DISMISS BY PRESIDENT & FELLOWS OF HARVARD COLLEGE (MISNAMED IN THE AMENDED COMPLAINT AS "HARVARD EXTENSION SCHOOL/HARVARD UNIVERSITY"), ROBERT H. NEUGEBOREN, MICHAEL SHINAGEL, HUNTINGTON LAMBERT, SHIRLEY R. GREENE, AND MARGARET C. ANDREWS

Defendants, President & Fellows of Harvard College ("misnamed in the Amended

Complaint as "Harvard Extension School/Harvard University"), Robert H. Neugeboren, Michael

Shinagel, Huntington Lambert, Shirley R. Greene, and Margaret C. Andrews move to dismiss the

amended complaint because it fails to: (1) state a claim upon which relief can be granted

pursuant to Mass. R. Civ. P. 12(b)(6); and (2) comply with Mass. R. Civ. P. 8 (a), (e), and 10(b).

Defendant Andrews also moves to dismiss per Rules 12(b)(4) and (5) because she was served at

her "last & usual place of business," per the docket, which is improper service for individuals.

*See* Mass. R. Civ. P. 4(d)(1).

In further support, the moving Defendants respectfully refer the Court to their supporting

Memorandum of Law, filed simultaneously herewith.

WHEREFORE, the Defendants, President & Fellows of Harvard College (misnamed in

the Amended Complaint as "Harvard Extension School/Harvard University"), Robert H.

Neugeboren, Michael Shinagel, Huntington Lambert, Shirley R. Greene, and Margaret C. Andrews, respectfully request that this Honorable Court:

   A.  Dismiss all Counts of the Amended Complaint against each of them for failure to state a claim upon which relief can be granted pursuant to Mass. R. Civ. P. 12(b)(6);

   B.  Dismiss the Amended Complaint for failure to comply with Mass. R. Civ. P. 8 (a), (e), and 10(b);

   C.  Dismiss the Amended Complaint as to Margaret C. Andrews for insufficient process and insufficient service of process pursuant to Mass. R. Civ. P. 12(b)(4), and (5); and

   D.  Grant such further relief as it deems just.

Respectfully submitted,

| CERTIFICATE OF SERVICE | DEFENDANTS, PRESIDENT & FELLOWS OF HARVARD COLLEGE (misnamed in the Amended Complaint as "Harvard Extension School/Harvard University"), ROBERT H. NEUGEBOREN, MICHAEL SHINAGEL, HUNTINGTON LAMBERT, SHIRLEY R. GREENE, AND MARGARET C. ANDREWS, By their Attorneys, |
|---|---|
| I hereby certify that on this day a true copy of the within document was served upon the attorney of record for each party by mail/hand. | |
| _Wm Mekrut_ | _Wm Mekrut_ |
| DATED: 7-9-15 | John P. Coakley, BBO# 558685 William P. Mekrut, BBO# 654350 Stephen D. Coppolo, BBO#670342 MURPHY & RILEY, P.C. 101 Summer Street Boston, MA  02110 (617) 423-3700 jcoakley@murphyriley.com wmekrut@murphyriley.com scoppolo@murphyriley.com |

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS:

SUPERIOR COURT
C.A. NO:  SUCV2014-03906

ANDRE BISASOR,  )
    PLAINTIFF,  )
      )
VS.  )
      )
HARVARD EXTENSION SCHOOL/  )
HARVARD UNIVERSITY, ET AL.  )
    DEFENDANTS.  )

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY PRESIDENT AND FELLOWS OF HARVARD COLLEGE (MISNAMED IN THE AMENDED COMPLAINT AS "HARVARD EXTENSION SCHOOL/HARVARD UNIVERSITY"), ROBERT H. NEUGEBOREN, MICHAEL SHINAGEL, HUNTINGTON LAMBERT, SHIRLEY R. GREENE, AND MARGARET C. ANDREWS

Defendant, the President & Fellows of Harvard College ("misnamed in the amended

complaint as "Harvard Extension School/Harvard University") ("Harvard"), Robert H.

Neugeboren ("Neugeboren"), Michael Shinagel ("Shinagel"), Huntington Lambert ("Lambert"),

Shirley R. Greene ("Greene"), and Margaret C. Andrews ("Andrews") (collectively, the

"Harvard Defendants") move to dismiss the amended complaint because it fails to: (a) state a

claim upon which relief can be granted pursuant to Mass. R. Civ. P. 12(b)(6); and (b) comply

with Mass. R. Civ. P. 8 (a), (e), and 10(b). Andrews also moves to dismiss per Rules 12(b)(4)

and (5) because she was served at her "last & usual place of business", per the docket, which is

improper service for individuals. *See* Mass. R. Civ. P. 4(d)(1).

### BRIEF STATEMENT OF ALLEGED MATERIAL FACTS

Harvard is a charitable corporation organized under the laws and Constitution of the

Commonwealth, and Harvard Extension School ("HES") is part of the Department of Continuing

Education within Harvard. Neugeboren is the HES Dean of Students; Shinagel was the former

HES Dean; Lambert is the current HES Dean; Greene is the HES Assistant Dean of Students; and Andrews is the former HES Dean of the Management Program. (Collectively, such persons are referred to herein as, the "Individual Harvard Defendants").

The Pro-se Plaintiff, an alumnus of Harvard Extension School ("HES"), filed a sprawling, sixty-two page, 366 paragraph (some with lengthy subsections), and seventeen count amended complaint. It begins with a single spaced narrative "introduction" section over two pages in length. In several instances, screen-shots of letters and internet web-pages are copied into the pleading. The amended complaint is needlessly verbose, prolix, and confusing. It makes conclusory allegations that Plaintiff experienced primarily race and religious based discrimination at HES, and that HES students (not Harvard personnel) made defamatory statements on an internet webpage that is not owned or controlled by Harvard.[1] Most of the allegations are made in a rotisserie fashion against all "defendants,"[2] failing to identify which defendant (or combination of defendants) is alleged to have acted or failed to act to form the basis for the claim. In many of the counts, the Individual Harvard Defendants are not even specifically identified, thus leaving the defendants guessing as to which party the allegation is directed. The allegations are broad, conclusory, non-specific, and argumentative. The amended complaint includes sweeping, provocative diatribes that are unconnected to any specific alleged act on the part of any of the Individual Harvard Defendants. *See e.g.,* Am. Compl. ¶¶32-42.[3]

Plaintiff was accepted to HES in 2006, Compl. ¶18(a), and graduated from HES in 2012. Id. ¶18. Plaintiff maintained a GPA between 3.8 and 3.9 for most of his time at HES. *Id.* ¶18(b).

---

[1] Plaintiff alleges: "This conduct, for the most part, took place in an online forum or blog…. Mr. Slavenskoj [a former HES student] is widely known to be the founder and main operator of this…online forum." Am. Compl., p. 2 (para. 3).

[2] In addition to the six Harvard Defendants, Plaintiff has also sued six other individually named defendants, John and Jane Does, and "Affiliated Companies of ExtensionStudent.com".

[3] The Harvard Defendants reserve the right to move to strike these paragraphs, and other similar paragraphs, such as, and without limitation, ¶209(d), ¶209(m), ¶209(z), and ¶209(aa).

Plaintiff's peers elected him vice-president of "HESA"[4] in 2007, and president of HESA in 2009. Id. ¶18(c), (e).

Plaintiff alleges that in or about April 2011, former HES student and co-defendant Danslav Slavenskoj ("Slavenskoj") created and launched the online message thread on which messages were placed that are, in large part, the subject of complaint. *See id.* ¶44 a.-c. Slavenskoj is the owner and main operator of the website at issue, "extensionstudent.com". Am. Compl. p. 2 (para. 3); ¶72; ¶94. Mr. Slavenskoj and another former HES student and co-defendant, Ken Vedaa, are alleged to have published defamatory and discriminatory statements on the web page. *See, e.g.,* Am. Compl. ¶44; ¶60; ¶62; ¶123(d), (e); ¶124. Plaintiff does not allege that any of the Harvard Defendants actually published any allegedly defamatory statements on the website.[5]

The amended complaint[6] should be dismissed in its entirety for failure to state a claim upon which relief can be granted per Rule 12(b)(6) as to each count, *see Iannachino v. Ford Motor Company,* 451 Mass. 623 (2008); or in the alternative for failure to comply with Rules 8(a), (e), and 10(b). *See Mmoe v. Commonwealth,* 393 Mass. 617 (1985).

## ARGUMENT

## I.   THE COMPLAINT SHOULD BE DISMISSED PER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

In *Iannacchino v. Ford Motor Company,* 451 Mass. 623, 636 (2008), the Court expressly adopted the standard set forth by the Supreme Court in *Bell Atlantic Corporation v. Twombly,*

---

[4] Presumably, HESA is Harvard Extension Student Association.
[5] Plaintiff alleges that Mr. Neugeboren made separate defamatory statements to other third parties, but the amended complaint does not identify the statements or the third parties. Am. Compl. ¶139. This, of course, fails to satisfy the heightened pleading standard applied to defamation claims.
[6] The Harvard Defendants deny the material allegations in the amended complaint.

127 S. Ct. 1955, 1964-1965 (U.S. 2007) for Mass. R. Civ. P. 12(b)(6) motions. The *Twombly*

standard requires that the complaint establish a "plausible" right to relief:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
> 'entitlement to relief' requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do, *see Papasan v. Allain*,
> 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to
> dismiss, courts 'are not bound to accept as true a legal conclusion couched as a
> factual allegation'). Factual allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all the allegations in the
> complaint are true (even if doubtful in fact) . . . .

*Id.* at 1964-65 (internal citations omitted).

### A. Count I of the Amended Complaint Makes No Allegations of Defamation on the Part of Harvard, Neugeboren, Shinagel, Lambert, Greene or Andrews

Count I of the amended complaint is styled as a claim for defamation. As an initial

matter, not a single defamatory statement is attributed to Neugeboren, Shinagel, Lambert, Greene

or Andrews in Count I.[7] Nevertheless, such claim is asserted against them. Shinagel, Lambert,

Greene or Andrews are not even mentioned by name in Count I. Their inclusion by Plaintiff in

Count I is abusive and suggests that the sole purpose of this litigation is to burden and harass as

many people as possible who are affiliated with HES. Such conduct is sanctionable.

### (1) Harvard is not alleged to have owned or operated ExtensionStudent.Com.

All of the alleged defamatory statements referenced in this claim were statements posted

on a certain website - "ExtensionStudent.com". *See* Am. Comp., at ¶¶43-119.[8] The amended

complaint, however, is devoid of any allegation that Harvard, Neugeboren, Shinagel, Lambert,

Greene or Andrews (or any combination of such parties) owned such website, owned the domain

---

[7] In a separate count, Plaintiff alleges that Neugenboren made "defamatory statements" about Plaintiff. Plaintiff, however, does not specify what those statements were, when they were made or to whom they were made. Such allegations, therefore, fail to state a claim for defamation.

[8] In the introductory paragraph (Amended Complaint, at p. 2, para. 4) of the Amended Complaint, Plaintiff lists unflattering comments allegedly made to him by unnamed defendants (i.e. loon, ass, etc.) at unspecified places to unidentified listeners. To the extent that such allegations are intended to be incorporated into Count I such allegations, do not satisfy the pleading standard for defamation claims and, further are non-actionable opinions.

name for "ExtensionStudent.com," operated such website or owned the computer equipment that hosted such site. *Id.* To the contrary, the amended complaint alleges that the subject "online forum or blog" was founded and operated by Slavenskoj, a former HES student. *See id.* at p. 2, ¶9 & ¶77 ("Slavenskoj has also sought to commercialize the ... site"). The amended complaint is devoid of any allegation that Slavenskoj was an employee of Harvard (or any other defendant). To the contrary, the only relationship between Slavenskoj and Harvard alleged is that Slavenskoj is a former HES student. *Id.* at ¶9.

      (2) <u>Harvard Cannot Be Liable For the Alleged Torts Committed By HES Students.</u>

      As a matter of law, Harvard cannot be held vicariously liable for the torts committed by HES students such as Slavenskoj or other students who posted statements on ExtensionStudent.com. The Supreme Judicial Court ("SJC") has held that the doctrine of respondeat superior does not render schools liable for the acts of their students. *Kavanagh v. Trustees of Boston Univ.*, 440 Mass. 195, 198 (2003) (university not liable for on-field assault committed by scholarship athlete during intercollegiate athletic match). In so holding, the SJC has observed that: "[s]tudents attend school to serve their own interests, not the interests of the school. 'The student is a buyer of education rather than an agent ... [A] student retains the benefit of that education for himself rather than for the university." *Id.* (citations omitted). The SJC further held that "[s]tudents do not 'represent' their schools in the sense of being able to bind their schools to agreements, or to act on behalf of their schools" even when engaging in school-sponsored extracurricular activities. *Kavanaugh*, 440 Mass. at 201. Thus, even if Slavenskoj was a student and even if he was engaged in extra-curricular activities, such as student government, as a matter of law, Harvard is not liable for any tort, including defamation, committed by him.

(3) <u>47 U.S.C. § 230 Renders the Host of ExtensionStudent.Com Immune From Count I of the Complaint.</u>

Even if Harvard owned or hosted ExtensionStudent.com (it did not) Harvard would be immune from the defamation claims asserted by the plaintiff. Section 230 of the Communications Decency Act, 47 U.S.C. § 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," *Id.* at § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *Id.* at. § 230(e)(3). "Congress intended that, within broad limits, message board operators would not be held responsible for the postings made by others on that board." *Universal Commc'n. Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007); *see also Delle v. Worcester Telegram & Gazette Corp.*, 29 Mass. L. Rep. 239 (Mass. Super. 2011) (allowing motion to dismiss because "the T&G cannot be held liable for the statements of a third party on the comments section of its website."). And even if Plaintiff alleged that the Harvard Defendants knew about the information placed on the internet by others, it is "well established notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech." *Universal Comm. Systems*, 478 F. 3d at 420; *Delle, supra.*

Thus, even assuming that Harvard owned or operated the subject website, Harvard is immune from the plaintiff's defamation claim as a matter of law. Plaintiff does not allege that either Neugeboren, Shinagel, Lambert, Greene or Andrews personally posted any derogatory information on this site and Count I should be dismissed as to such defendants. Similarly, Plaintiff failed to allege facts that, even if credited, suggest that any person who posted derogatory information about Plaintiff did so when acting within the scope of their employment with Harvard. Further, conclusory and formulaic allegations of an agency relationship between

Harvard and Slovenskoj, even if made, would be unavailing since the Plaintiff affirmatively alleges that Slavenskoj founded and maintained the website in this individual capacity. Finally, Plaintiff's rotisserie style of pleading, in which he generally attributes all conduct to all "defendants" no matter how discrete the conduct is insufficient to state a claim for defamation as to any defendant. Individualized, particularized pleading is required as to each defendant. Plaintiff has failed to meet his burden of pleading.[9]

**B.**   **Count II ("Discrimination, Harassment, Hostile Environment Based on Religion") Fails to Allege Any Conduct Suggesting Religious Discrimination, and Lacks any Statutory Foundation**

Count II baldly alleges that the Harvard Defendants unlawfully discriminated against Plaintiff on the basis of his religion, "in violation of both federal and state law." Am. Compl. ¶ 121. The only laws referenced in Count II, however, do not apply. *See id.* ¶¶162-163. Title VII of the Civil Rights Act of 1964 ("Title VII") applies only in the employment context, and the

---

[9] Count I must fail for the additional reasons that the alleged statements referenced therein are not defamatory as a matter of law. The Supreme Judicial Court regards defamation as a traditionally disfavored action and accordingly has mandated that defamation plaintiffs plead the elements of their claims with specificity. *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 432 n. 7 (1991); *see also Phantom Touring, Inc. v. Affil. Public.*, 953 F.2d 724, 728 n.6 (1st Cir. 1992). To survive a motion to dismiss, a plaintiff "must plead: (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statements; (2) the means and approximate dates of publication; and (3) the falsity of those statements." *Dorn v. Astra USA*, 975 F. Supp. 388, 395-96 (D. Mass. 1997); *Eyal*, 411 Mass. at 431-34; *White v. Spence*, 5 Mass. App. Ct. 679, 685-86 (1977). "The determination whether the communication complained of is capable of a defamatory meaning is for the court." *Jones v. Taibi*, 400 Mass. 786, 792 (1987). To be actionable as defamatory, the statements posted on the subject website must have exposed the plaintiff to public discredit "in the minds of any considerable and respectable class of the community." It is well established, furthermore, that statements of opinion and satire are constitutionally protected and are not actionable. *Friedman v. Boston Broadcasters, Inc.*, 402 Mass. 376, 379 (1988); *King v. Globe Newspaper Co.*, 400 Mass. 705, 708 (1987). In Count I, Plaintiff only alleges three statements with any level of specificity. Plaintiff alleges that Slavenskoj posted that certain people believed the plaintiff engaged in witchcraft. Plaintiff also alleges that Slavenskoj posted that Plaintiff was asked to leave a certain conference because Plaintiff practiced witchcraft and Plaintiff attributed his expulsion to racism. These statements are clearly non-actionable attempts at satire. *King*, 400 Mass. at 715 (1987). Finally, Plaintiff refers to an alleged statement on the site to the effect that Plaintiff was a member of the "Harvard Mafia." This term is not defamatory as a matter of law. Webster's Dictionary includes among the definitions of "mafia" the following: "a group of people of similar interests or backgrounds prominent in a particular field or enterprise" and references the synonym "clique." *See* http://www.merriam-webster.com/dictionary/mafia. The use of the qualifier "Harvard" eliminates any plausibility that this term is susceptible of a defamatory meaning. The alleged posts are clearly attempts at humor and satire and could not be construed as statements of fact by a reasonable reader. As such, none of these alleged statements are defamatory as a matter of law and Count I should be dismissed.

Plaintiff does not allege—nor could he—that Harvard or any of the Harvard Defendants was his employer. *See* 42 U.S.C. § 2000e-2 (defining "unlawful employment practice[s] prohibited under Title VII); *Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("Title VII is directed at, and only protects, employees and potential employees."); *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 943 (D. Idaho 2013) (Title VII does not apply to student racial discrimination claim against university).[10]

The Plaintiff also references Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d. Title VI, however, does not prohibit discrimination on the basis of religion. ("No person in the United States shall, *on the ground of race, color, or national origin*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." (emphasis added)); *see also De Leon v. Nat'l College of Bus. & Tech.*, 663 F. Supp. 2d 25, 34-35 (D.P.R. 2009) ("[D]iscriminatory actions on the ground of religion...[are] not proscribed by 42 U.S.C. §2000d.").

Regardless, Plaintiff fails to allege any specific, purposeful instances of religious discrimination attributable to any of the Harvard Defendants. For example, he alleges discrimination on the basis of religion when Neugeboren failed to intervene to his satisfaction in Plaintiff's dispute over statements by Slavenskoj and Mr. Vedaa, *see* Am. Compl. ¶¶ 123-27,[11] which falls far short of the type of plausible grounds for relief required by *Iannacchino, supra*. Plaintiff further indulges in bald and conclusory pronouncements about the Harvard Defendants' purported motivation to discriminate against him based on his religion, which are again entirely

---

[10] Even if Title VII were applicable, the Plaintiff has not exhausted his administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission or the Massachusetts Commission Against Discrimination, thus barring any Title VII claim. *See* 42 U.S.C. § 2000e-5(f)(1).

[11] Plaintiff, however, admits that Neugeboren followed up with Mr. Vedaa on the matter, undermining his claim that Neugeboren sought to discriminate against Plaintiff. *See id.* ¶ 123(b).

insufficient to defeat a Rule 12(b)(6) motion. *See, e.g.*, Am. Compl. ¶135 (Neugeboren allegedly refused to act against Slavenskoj and other (anonymous) online commenters due to their "shared Jewish identity, background and affinity"); *id.* ¶139 ("Mr. Neugeboren's actions are based on, among other things, religious and other biases against Mr. Bisasor."); *id.* ¶148 ("Harvard has a predominant intellectual culture that disapproves of those who hold an Evangelical/Pentecostal-Charismatic Christian worldview ...."). These "fact" allegations are vague, conclusory, argumentative, and do not set forth what any Harvard Defendant – in particular with respect to the Individual Harvard Defendants – is alleged to have done that was motivated by purposeful discrimination against the Plaintiff's religion.  For these reasons, Count II should be dismissed as to the Harvard Defendants

**C.    Count III for Race Discrimination/Harassment Offers No Credible Allegations of Racial Animus or Discriminatory Conduct**

**(1).    No Actionable Claims Under Title VII or 42 U.S.C. § 1982**

The heading indicates that Count III is brought under Title VII, but Title VII has no application here, outside of the employer-employee relationship. 42 U.S.C. § 2000e-2; *see also Serapion*, 119 F.3d at 985. The heading also references the Civil Rights Act of 1866, and specifically 42 U.S.C. §§ 1981 and 1982. Yet § 1982 only protects an individual's rights to "to inherit, purchase, lease, sell, hold, and convey real and personal property" regardless of race. 42 U.S.C. § 1982. As Plaintiff does not claim that the Harvard Defendants interfered with any cognizable real or personal property right belonging to him, no claim can lie under § 1982.

**(2).    The Plaintiff Has Failed to State a Plausible Claim for Relief Per Title VI**

Tile VI of the Civil Rights Act of 1964 provides that "[n]o person ... shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance." 42 U.S.C. § 2000d. It is well established that Title VI <u>does not permit claims against individual defendants</u>, only the institutional recipients of federal funding themselves. *See, e.g.,* *Shotz v. City of Plantation*, 344 F.3d 1161, 1169-70 (11th Cir. 2003); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2008). <u>Thus as a threshold matter, Count III must be dismissed against Defendants Neugeboren, Shinagel, Lambert, Greene, and Andrews.</u>

Within the educational context, a Title VI plaintiff must prove "membership in a protected class, meeting the school's legitimate educational expectations, an adverse educational action and worse treatment than that of similarly situated students not in the protected class." *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007). It is well settled that Title VI 'prohibits only intentional discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). A Title VI plaintiff must plausibly allege that the defendant took the allegedly adverse actions against him on the basis of racial animus. *See Goodman v. Bowdoin Coll.*, 380 F.3d 33, 43 (1st Cir. 2004). Thus, "a motion to dismiss a Title VI claim is appropriate where a plaintiff fails to allege evidence to indicate racial bias motivated a defendant's action and the allegations made support a finding that alleged bias was not racial in nature." *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 945 (D. Idaho 2013).

To survive a Rule 12(b)(6) motion:

A plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a *plausible inference* of racially discriminatory intent. *Bald assertions and conclusions of law will not suffice.*

*Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2012) (quotations omitted and emphases added). Plaintiff fails to state a plausible case for relief because he offers no more than conclusory, argumentative assertions.

> ### i. Plaintiff's Conclusory Allegations of Racial Animus Are Insufficient to State a Claim.

Neugeboren appears to be the principal alleged actor among the Harvard Defendants, but the amended complaint is devoid of any non-conclusory, substantive allegation from which the Court could plausibly infer racial animus. Rather, Plaintiff attempts to plead racial animus through innuendo, smears, and moral pronouncements, most of which have nothing to do with race. *See, e.g., id.* ¶¶ 209(z) ("Neugeboren is a fundamentally corrupt administrator"); *id.* ¶ 209(aa) ("[h]e uses his background in game theory and strategy ... against certain students ... in clever but malevolent ways"); *id.* ("[h]e operates with blatant and sometimes subtle contempt, and aggression towards certain students such as Mr. Bisasor"); *id.* ¶ 214(k) (lamenting "[t]he attitude, the disgust, the scowl, the animosity, [and] the jealousy" allegedly directed at Plaintiff by Neugeboren). He also claims that "Dean Neugeboren and others" saw Plaintiff as "an affront to white privilege" and thus "they spied on him, lied on him [sic], assassinated his character with lies, innuendo, and coded language." *Id.* ¶ 214(k). Such pronouncements continue for dozens of pages, but absent concrete allegations of specific statements, conduct, or other indicators plausibly suggesting racial animus, they are insufficient to state a plausible Title VI claim. *See Joseph*, 998 F. Supp. 2d at 945 ("Plaintiff's allegations of discrimination appear to be merely conclusory and not sufficient to state the requisite plausible claim for relief. Her personal belief that Boise State's actions were racially motivated is conclusory and of no probative force." (quotations and citations omitted)); *Jemaneh v. Univ. of Wyo.*, Docket No. 12-cv-02383-RM-MJW, 2013 U.S. Dist. LEXIS 187472, at *15 (D. Colo. Oct. 28, 2013) (dismissing Title VI

claim where "Plaintiff's Complaint, although very lengthy and laden with facts, does not contain any specific, non-conclusory facts which demonstrate that any of the defendants actions were motivated by racial animus").

With respect to Greene, an African American woman, *see* Am. Compl. ¶8, Plaintiff alleges she was "rude and stern and negative" toward him, from which he offensively concludes that "it was clear that [Greene] was there at the behest of her white bosses to deflect racial issues and complains away from them" and that "[o]n information and belief, she was instructed to squash Mr. Bisasor's complaints." *Id.* ¶ 203. This conclusory characterization is not the type of inference that can be credited on a Rule 12(b)(6) motion, and in any event, does not prove racial animus by Greene or any other Defendant.  To the contrary, it has been held that sporadic instances of rude behavior, without more, do not comprise proof of discriminatory intent. <u>Pagano v. Frank</u>, 983 F.2d 343, 349 (1st Cir. 1993) (employer's comments: "Good, now we can fire you", "I hope he chokes" and hoping the plaintiff quits not probative of pretext/discriminatory intent).  It has been held that such "vague and impressionistic elements have no place in defining the standards of legal intervention in the often fraught and delicate domain of personnel relations." <u>Bain v. Springfield</u>, 424 Mass. 758, 766 (1997) (employer acting "coldly" to employee during meeting and allegedly hostile body language not actionable).

Beyond this, Plaintiff seeks to bathe the instant Defendants in a racially hostile light by providing "context" concerning race-relations in modern-day America. *Id.* at ¶¶ 32, 34, 38 & 41.  Such assertions do not satisfy Plaintiff's burden of pleading or proof. *See Okereke v. Bd. of Trustees*, Docket No. 06-11284-EFH, 2007 U.S. Dist. LEXIS 102911, at *14 (D. Mass. Feb. 5, 2007) (noting, in § 1981 claim, plaintiff's reliance on "[t]he history of education for Africans in the United States" was insufficient to state a claim for relief).

ii.    **No Properly Pled Racially Discriminatory Actions**

To the extent any discernible concrete acts by the Harvard Defendants are alleged, they are utterly insufficient to plead a plausible case for race discrimination under Title VI.

**"Interference" with HESA Presidency:** Central to Count III is the allegation that Dean Neugeboren "interfered" with Plaintiff's position as HESA president. He allegedly did so by "improperly handl[ing]" Plaintiff's transition to the post, Am. Compl. ¶ 214(a), failing to invite him to alumni banquets, *id.* ¶ 214(b), failing to adequately publicize Plaintiff in Harvard publications, *id.* ¶ 214(c), subjecting him to harsher discipline and scrutiny than "his white counterparts," *id.* ¶ 214(i), and treating him in a "contemptuous and disrespectful" manner, *id.* ¶ 214(g). The amended complaint fails to identify the "non-Black student government leaders" and/or "white counterparts" who were allegedly treated more favorably, and fails to plead facts that would permit the Court to plausibly infer this treatment was the result of racial animus. *Manolov*, 952 F. Supp. 2d at 532, 533 (dismissing claim where bald assertion that "professors 'intentionally treated all white males ... in an adverse manner by maliciously downgrading their exams'" was not accompanied by supporting fact allegations); *Ross v. Mich. State Univ.*, Docket No. 11-2278, 2012 U.S. App. LEXIS 17338 (6th Cir. June 20, 2012) (affirming dismissal of university professor's Title VI claim where plaintiff failed to allege that similarly situated colleagues received better treatment than did the plaintiff).[12]

**Campus Police Allegations:** Also in support of Count III, Plaintiff alleges that campus police were called on him during a student government meeting. Am. Compl. ¶¶ 214(j), 217.

---

[12] Additionally, any alleged conduct occurring while the Plaintiff was HESA president is time-barred. Plaintiff alleges that his term as HESA President occurred during the 2009-2010 academic year. *See* Am. Compl. ¶ 26 (Plaintiff elected in 2009-2010); *id.* ¶ 13 (alleging Phil Harding held that post from 2010-2012). This is more than three years prior to the commencement of this action on November 18, 2014. *See LeGoff v. Trs. of Boston Univ.*, 23 F. Supp. 2d 120, 127 (D. Mass. 1997) (Three year statute of limitations applies to Title VI).

Plaintiff does not identify who called the police, though presumably it was not Neugeboren, as Plaintiff alleges he brought the matter to Neugeboren's attention seeking redress. *Id.* ¶ 217. If, as appears likely, the call for police came from Plaintiff's fellow students, Harvard would not be vicariously liable for such action as the students are not agents of the university. *See Kavanaugh*, 440 Mass. at 198. Regardless, the allegation is utterly lacking any factual support or detail that might plausibly state a claim of racial discrimination against the Harvard Defendants.

**ExtensionStudent.com Postings:** Though primarily recounted in response to Counts I and II, the allegations concerning third-party postings on ExtensionStudent.com cannot serve as a basis for Title VI race discrimination claim against the Harvard Defendants. While a college or university can theoretically be liable under Title VI when it responds with "deliberate indifference" to claims of "student-on-student racial discrimination," *Whitfield v. Notre Dame Middle Sch.*, 412 Fed. App'x 517, 521 (3d Cir. 2011), the statements allegedly posted on Extension Student.com cannot plausibly be inferred to constitute racial harassment. These alleged statements by Mr. Slavenskoj were that: (a) Plaintiff was kicked out of a conference for practicing witchcraft, Am. Compl. ¶ 44; (b) Plaintiff is part of the "Harvard mafia," *id.*, and (c) Plaintiff is a "public figure" for defamation purposes. *Id.* ¶ 55. Defendant Vedaa is alleged to have posted that Plaintiff was a "loon," "ass," "fool," and an "embarrassment." *Id.* ¶ 123(d). Unnamed person(s) are alleged to have called Plaintiff an "apostle of Satan," and to have compared him to Richard Nixon and Adolf Hitler. *Id.* ¶¶ 65-66. Further, the amended complaint alleges that Slavenskoj was a former student at the time Plaintiff reported the statements at issue to Neugeboren in December 2011, logically meaning his statements could not constitute "student

14

on student" harassment. *See id.* ¶¶ 123 & 123(c).[13]  Lastly, Plaintiff's lengthy December 16, 2011 report to Neugeboren, which is appended at ¶124, Am. Compl., asserts religious discrimination, but does not mention Plaintiff's race.

(3).  Plaintiff's Allegations are Insufficient to State a Claim Under §1981

Actions for race discrimination in violation of the guarantee under 42 U.S.C. § 1981 of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" are treated similarly to, and often bundled with, Counts under Titles VI and VII.[14]  "The Supreme Court has explained that 'a contract for educational services is a "contract" for purposes of § 1981.'" *Okereke v. Bd. of Trustees*, Docket No. 06-11284-EFH, 2007 U.S. Dist. LEXIS 102911, at *14 (D. Mass. Feb. 5, 2007) (quoting *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003)). In practice, courts apply similar standards to § 1981 claims as to claims under Title VI, 42 U.S.C. § 2000d.  *See Goodman v. Bowdoin Coll.*, 380 F.3d 33, 43 (1st Cir. 2005) .

As with Title VI of the Civil Rights Act of 1964, a §1981 plaintiff must demonstrate that the defendant's alleged discriminatory conduct was intentional.  *Id.*  For this reason, the Plaintiff's failure to plead adequate facts to support his conclusory assertions that Neugeboren or any other Harvard Defendant acted in an intentionally discriminatory fashion similarly dooms any race discrimination action under § 1981. *See Section C(2)*, *supra*; *see also Okereke*, 2007 U.S. Dist. LEXIS 102911, at *15-16 (D. Mass. Feb. 5, 2007) (dismissing § 1981 claim where "scattered allegations" of racial animus, including reference to "[t]he history of education for

---

[13]  Plaintiff cites no precedent by which a college or university can be subjected to Title VI or § 1981 liability for failing to address the activities of a former student, and the undersigned are aware of none. As to the other alleged anonymous postings, Plaintiff admits he is unaware of the identities of the authors. See id. ¶ 113.

[14]  As the text of 42 U.S.C. § 1981(a) indicates, the statute also protects the rights of all persons "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

Africans in the United States" did "not meet the pleading requirements of a section 1981 claim").[15]

With respect to the individual Harvard Defendants, while an individual actor may theoretically be liable under § 1981, "in order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 65 (2d Cir. 2000) (quotation omitted); *see also Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999) ("In each of the cases that have allowed individual liability [under § 1981], the individuals have been supervisors who were personally involved in the discriminatory activity."). The allegations against Shinagel, Lambert, Greene, and Andrews are sparse to nonexistent, lack any specificity linking them to the bald and conclusory "actions" that Plaintiff contends are "discriminatory", and thus these specious allegations are utterly insufficient to form the basis for liability.

**D.      Count IV (Title IX) Makes No Specific Allegation of Gender Discrimination**

Title XI of the Education Amendments of 1972, 20 U.S.C. § 1681, prohibits discrimination "on the basis of sex" by any entity or institution receiving federal funding. *See* 20 U.S.C. § 1681(a); *Frazier v. Fairhaven School Committee*, 276 F. 3d 52, 65 (2002) *citing Cohen v. Brown Univ.*, 991 F.2d 888, 894 (1st Cir. 1993). The gravamen of the Plaintiff's claim in this case is that he experienced discrimination based on <u>race</u> and <u>religion</u>, not gender. Although Plaintiff mentions his status as a "black male", the facts alleged are utterly insufficient to make out a claim for gender-based discrimination. The claims alleged against the Individual Defendants must also separately fail as a matter of law – a private right of action for a Title IX

---

[15] *Okereke* was decided pursuant to the court's screening function on an *in forma pauperis* petition under 28 U.S.C. § 1915, *see id.* at *6-7, though the standard of such a review is the same as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* 28 U.S.C. § 1915(e)(2).

claim only exists against the institution itself. *See Frazer*, 276 F.3d at 65.  For such reasons, Count IV of the amended complaint fails to state a claim and should be dismissed.

**E.**   **Count V ("Retaliation") Does not Refer to a Cognizable Cause of Action and Must be Dismissed**

There is no freestanding cause of action for "retaliation," unmoored from any of the recognized state or federal antidiscrimination statutes such as Title VII or G.L. c. 151B. *See Cardoso v. City of Brockton*, C.A. No. 13-10482, 2014 U.S. Dist. LEXIS 165563, at *9 n. 9 (D. Mass. Nov. 26, 2014) ("The free-standing claim for retaliation (Count XIV) does not exist at common law and will be dismissed ....").[16] Plaintiff has the burden of placing all Defendants on notice of the nature of his claims. By merely alleging "retaliation" without identifying the statutory or common law cause of action being asserted, Plaintiff seeks to foist that burden on the Defendants. Particularly in the context of tome-like complaint, containing seventeen counts, such disregard for the Rules of Civil Procedure and basis due process should not be countenanced. For such reasons, Count IV of the amended complaint fails to state a claim and should be dismissed.

**F.**   **Counts XI [sic] for Breach of Implied Contract and Count IX for Unjust Enrichment Purport to Sound in Contract Theory, Which has no Application Here**

Counts XI (sic) of the amended complaint is styled as "Breach of Implied Contract." An implied contract is an obligation created by law "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent .... [C]onsiderations of equity and morality play a large part . . . in constructing a quasi-contract . . . ." 1 A. Corbin, Contracts § 19 (1963). It "is not really a contract, but a legal obligation closely akin to a duty to make

---

[16] To the extent theories of retaliation for protected conduct are interwoven into the Plaintiff's Count III cause of action for race discrimination, they fail for the reasons discussed at length above, including that the allegations of intentional racial discrimination are wholly conclusory and fail to allege facts which would permit the Court to plausibly infer that Dean Neugeboren or any other Harvard administrator was motivated by racial animus. *See Joseph*, 998 F. Supp. 2d at 945.

restitution." *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973). Under this legal theory,

"[a] person who has been unjustly enriched at the expense of another is required to make

restitution to the other." Restatement of Restitution § 1 (1937). The underlying basis for

awarding damages in an implied contract case is unjust enrichment of one party and unjust

detriment to the other party. *See Salamon v. Terra*, 394 Mass. 857, 859 (1985); *U.S. Controls

Corp. v. Windle*, 509 F.2d 909, 912 (7th Cir. 1975); 1 A. Corbin, Contracts § 19A (Supp. 1984).

The classic example is where a landowner has requested that a person construct a structure on his

or her property, it is reasonably expected that the landowner will pay for the services and benefit

conferred, even if there was no express contract for the construction or if a contract has been

violated. *See Hayward v. Leonard*, 7 Pick. 181, 185 (1828).  The measure of damages in these

circumstances is quantum meruit, the reasonable value of the benefit conferred on the unjustly

enriched party. *See Id.*; *Anisgard v. Bray*, 11 Mass. App. Ct. 726, 731 (1981).

Count IX of the Complaint is styled as "Unjust Enrichment." A claim for unjust

enrichment is the functional, if not literal, equivalent of a claim for breach of implied contract.

Both theories fall under the category of "quasi contract" and include the same elements.

*Salamon*, 394 Mass. at 859. *See* 12 Williston on Contracts § 1479 (3d ed. 1957).

Both Count XI [sic] and Count IX fail to state a claim upon which relief can be granted.

Under both theories of liability, Plaintiff must plead and prove that he conferred a benefit upon

the defendant and, in turn, suffered an unjust detriment. Plaintiff asserts these claims against

each of the Defendants. Nowhere in the Complaint, however, does Plaintiff allege that he

conferred any benefit upon Neugeboren, Shinagel, Lambert, Greene or Andrews. Plaintiff does

not allege that he paid any money or provided any service to any of these individuals.  As to

Harvard, furthermore, the only possible "benefit" conferred by Plaintiff on Harvard referenced in

the amended complaint is the "payment of tuition and fees." *See* Am. Compl., at ¶¶264-275 & 296-303. Such allegation, however, fails to state a claim for unjust enrichment. In exchange for tuition, a student receives an education. Nowhere in the amended complaint is it alleged that Plaintiff was barred from any class, precluded from taking any course, denied any degree or certification or otherwise failed to receive the education for which he paid tuition. To the contrary, Plaintiff affirmatively alleges that he graduated from HES in 2012. *See* Am. Compl., at ¶18. Plaintiff alleges that he maintained a 3.8 or 3.9 grade-point average "for most of his time at" HES. *Id.* Plaintiff's grievances and negative experiences are conspicuous for having allegedly occurred entirely outside any classroom or didactic environment. Having affirmatively alleged that he received and completed the educational experience for which he paid tuition, he has not alleged that he suffered an unjust detriment. At least as it relates to the education for which Plaintiff paid tuition, he obtained the benefit of the bargain. Plaintiff, quite simply, does not state a claim for breach of implied contract or unjust enrichment as to Harvard, Neugeboren, Shinagel, Lambert, Greene or Andrews.

**G.   Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Count VII) Fails to Plead the Elements of That Cause of Action**

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails to state a claim as a matter of law. The implied covenant of good faith and fair dealing provides "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Drucker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976), *quoting Uproar Co. v. National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir.), *cert. denied*, 298 U.S. 670 (1936). As an initial matter, an indispensable element of any claim for the breach of the implied covenant of good faith and fair dealing is the existence of a contract between the Plaintiff and the defendant. *See Anthony's Pier Four, Inc. v. HBC*

*Assocs.*, 411 Mass. 451, 473 (1991).  Plaintiff has not alleged that he entered into a contractual relationship with  Neugeboren, Shinagel, Lambert, Greene or Andrews in their individual capacity.  For that reason, alone, Count VII of the amended complaint should be dismissed as to Individual Harvard Defendants.[17]

As to Harvard, Plaintiff has not adequately pled the existence of a contract between Harvard and Plaintiff that included terms implicated by the grievances alleged in the amended complaint.[18]  Notwithstanding such pleading deficiency, this claim must fail because Plaintiff has affirmatively alleged that the objective of his studies at HES were realized.  It has been held that the implied covenant of good faith and fair dealing exists so that the objectives of the contract may be realized. *Ayash v. Dana-Farber Cancer Inst,*, 443 Mass. 367, 385 (2005).  Plaintiff paid tuition with the expectation of being educated. Plaintiff, however, does not allege that he was denied an education at HES. To the contrary, Plaintiff affirmatively alleges that he thrived academically and graduated from the HES in 2012. *See* Section F of this brief, *supra.* Stated differently, Plaintiff has affirmatively alleged that he, in fact, received the fruits of the alleged educational contract he had with Harvard.  For such reason, Count VII fails to state a claim.

---

[17] Additionally, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff is required to plead and prove, as to each defendant, the specific intent of each defendant to deprive the plaintiff of the fruits of the contract. *Birbiglia v. Saint Vincent Hospital, Inc.*, 427 Mass. 80, 87 n. 5 (1998).  No such allegation as to the intent of Neugeboren, Shinagel, Lambert, Greene or Andrews is made in Count VII. In fact, such persons are not even mentioned by name in Count VII. For this additional reason, Count VII should be dismissed.

[18] To sustain a claim for breach of contract under Massachusetts law, a plaintiff must plead: (1) the existence of an agreement between the parties supported by valid consideration; (2) that the plaintiff was ready, willing and able to perform; (3) that defendant's breach has prevented the plaintiff from performing; and (4) that the plaintiff was damaged. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) *citing Singarella v. City of Boston*, 342 Mass. 385, 173 (1961); *Petricca v. Simpson*, 862 F. Supp. 13, 17 (D. Mass. 1994). It is insufficient for a plaintiff to merely allege that the facts demonstrate a breach of a contractual relationship. *Doyle*, 103 F.3d at 194-95. It has been held that "[i]t is essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." *Pollock v. New England Tel. & Tel. Co.*, 289 Mass. 255, 194 N.E. 133, 136 (1935). The plaintiff in the instant case, however, has failed to meet his burden to plead such matters. To invoke school policies as contractual terms, the plaintiff must plead and prove the existence of definite promises by the school that would induce reliance by the plaintiff on such policies. *See Guckenberger v. Boston Univ.*, 974 F.Supp. 106, 150 (D.Mass. 1997). He has failed to do so. Merely referencing the general existence of policies is insufficient to plead the existence of a binding contract that includes such policies as enforceable terms. For such additional reason, this Count should be dismissed.

Finally, a claim for breach of the implied covenant of good faith and fair dealing is a claim that sounds in contract. Intangible injuries, such as damage to reputation, hurt feelings, and physical and emotional distress are not recoverable under this contract-based theory of liability. *McCone v. New England Tel. & Tel. Co.*, 393 Mass. 231, 234 (1984); *Pocaro v. Chen*, 2005 Mass. Super. LEXIS 660 (Mass. Super. Ct. 2005) (emotional distress damages and reputational injury not recoverable in claim for breach of implied covenant of good faith and fair dealing). Such non-recoverable injuries, however, are the only injuries alleged in Count VII. Thus, Plaintiff has failed to allege a compensable injury arising from any breach of the implied covenant of good faith and faith and fair dealing.   For all of these reasons, Count VII should be dismissed for failing to state a claim.

**H.**     **Count VIII for Violation of c. 93A Fails Because Harvard was not Conducting Trade or Commerce with Respect to any of the Facts Alleged**

This count is alleged solely against Harvard, a charitable institution. *See* Massachusetts Constitution, Chapter V, Section I, Article I. Mass. Gen. Laws ch. 93A, §2 makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "The purpose of G. L. c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace." *Darviris v. Petros*, 442 Mass. 274, 2778 (2004) *citing Poznik v. Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 53 (1994). Universities and other charitable institutions, such as Harvard, do not engage in "trade or commerce" (and, thus, are not subject to Chapter 93A) when they engage in activities in furtherance of their core mission, as opposed to activities undertaken in a business context. *See Brodsky v. New Eng. Sch. of Law*, 617 F. Supp. 2d 1, 12-13 (D. Mass. 2009) *citing Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998); *Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1 (1997). To determine whether the

21

circumstances of a particular case arose in a business context, courts assess "'...the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties....'" *Linkage Corp.,* 425 Mass. at 24 (*citing Begelfer v. Najarian,* 381 Mass. 177, 191 (1980)).

The facts alleged involve the core functions of Harvard as a charitable institution regarding education, policies, and procedures; not actions in the commercial marketplace. Bald, conclusory allegations that Harvard engaged in "false advertising" or "deceptive marketing" are insufficient to state a claim. Plaintiff has failed to identify what "marketing" Harvard engaged in that amounts to a deceptive act or practice. The alleged "concealment" of policies and procedures is not a commercial transaction. Am. Compl. ¶287. There is no explanation as to how Harvard's alleged failure to inform students of the opportunity to vote for a 2012 student association (HESA) constitution constitutes a commercial transaction. Id. ¶288(h). Plaintiff has not alleged how Harvard "lured" him to become a student and then reneged on an unspecified promise. Id. ¶288(k). Harvard's conduct of student affairs is a core component of its charitable purpose, and Chapter 93A's governance of "trade practices" does not reach it.

**I.     Counts X (Violation of the Mass. Civil Rights Act) Identifies No Substantive Basis for a Claim**

Count X of the amended complaint is styled as a claim under the Massachusetts Civil Rights Act, M.G.L. c. 12, §11I (the "MCRA"). It is not clear what specific rights the plaintiff alleges to have be violated. In fact, Count X is entirely skeletal and lacks any factual allegations. Furthermore, Count X does not identify any conduct by Neugeboren, Shinagel, Lambert, Greene or Andrews that serves as the basis for a claim under the MCRA. The gratuitous inclusion of these individuals in this claim is an abuse of the judicial process and should be sanctioned by the Court. Additionally, Plaintiff does not identify any person who was acting as an agent or employee of Harvard when committing the unspecified conduct that serves as the basis for Count

22

X.  Harvard cannot be held vicariously liable for the conduct of students – even when such

students are engaging in school-sponsored extracurricular activities such as student government.

*Kavanagh*, 440 Mass. at  198 (2003) (university not liable for on-field assault committed by

scholarship athlete during intercollegiate athletic match).  Conclusory allegations that

unspecified individual students colluded with unspecified HES administrators does not satisfy

Plaintiff's burden of pleading.

Finally, Courts have repeatedly held that the MCRA was not intended to create "a vast

constitutional tort." *Bell v. Mazza*, 394 Mass. 176, 182 (1985).  To the contrary, the Legislature

"explicitly limited the [MCRA's] remedy to situations where the derogation of secured rights

occurs by threats, intimidation or coercion." *Bally v. Northeastern Univ.*, 403 Mass. 713, 718

(1989).  The Legislature intended that even a direct deprivation of a plaintiff's secured rights

would not be actionable <u>unless</u> it was accomplished by one or more of the three elemental means

set forth in the statute. *Buster v. George W. Moore*, 438 Mass. 635, 646 (2002).  Thus, even a

state actor's direct violation of a person's rights does not by itself involve threats, intimidation or

coercion and thus does not implicate the Act. *Longval v. Commissioner of Correction*, 404 Mass.

325, 333 (1989); *Pheasant Ridge Assocs. Ltd. Partnership v. Burlington*, 399 Mass. 771, 781

(1987).  Even assuming, then, that Plaintiff's conclusory allegations of discrimination, breach of

confidentiality and defamatory statements implicate protected constitutional rights (which they

do not), such alleged conduct does not trigger liability under the MCRA. *Id.*

It is possible that the plaintiff means to allege that the defendants violated the MCRA by

not curtailing the blogging activities of his fellow students. In addition to not implicating a

protected right, regulating speech in an academic environment lies amply within the bounds of

academic freedom that institutions of higher learning enjoy in determining whom to enroll and

setting forth requirements of study. *See Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 226-27 (1985). More fundamentally, Plaintiff has not alleged the occurrence of a single threat or act of intimidation or coercion committed by any of the Harvard Defendants that was designed to impact Plaintiff's exercise of a legal right. For such reasons, Count X of the Complaint should be dismissed for failing to state a claim.

## I.    Count XI, Civil Conspiracy, Fails to Plead Any Conspiratorial Aim or Action in Furtherance Thereof

There are two types of civil conspiracy: (1) two or more defendants, acting in unison, have some peculiar power of coercion over the plaintiff that they would not have had if they had been acting independently, and (2) there is a common design or agreement between two or more persons to commit a wrongful act, and an act in furtherance of the agreement. *See Kurker v. Hill*, 44 Mass. App. Ct. 184, 188-89 (1998) *citing Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1563-64 (1st Cir. 1994). The first is a "very limited cause of action in Massachusetts." *See Aetna Cas. Sur. Co.*, 43 F. 3d at 1563 (citations omitted); *see also Fleming v. Dane*, 304 Mass. 46, 50 (1939) ("instances of conspiracy which is in itself an independent tort are rare and should be added with caution."). The second derives from "concerted action," whereby liability is imposed on one individual for the tort of another. *Kurker*, 44 Mass. App. Ct. at 188 (citations omitted). The complaint is unclear as to which theory is alleged, but presumably it is the second theory because Plaintiff alleges that "Defendants, acting in concert in furtherance of their scheme, committed unlawful acts and encouraged and enabled one another to do so...." Comp. ¶309.

Under either theory the complaint fails to state a claim for civil conspiracy. The first theory fails because the amended complaint does not allege what Plaintiff was coerced to do, and does not allege that the "defendants" had a "peculiar power of coercion" over Plaintiff in any

particular respect. As for the second theory, the amended complaint does not allege the existence of a common design or agreement among the otherwise unidentified "defendants" to commit a wrongful or tortious act in furtherance of the agreement. Plaintiff, furthermore, has failed to allege "with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *See Kadar Corp. v. Millbury*, 549 F.2d 230, 233 (1st Cir. 1977) (citations omitted). Count IX does not state what "scheme" is at issue or which of the numerous "defendants"[19] acted in concert. For example, the amended complaint does not state upon which individual(s) liability should be imposed for the tort of another individual, or which individual allegedly committed the tort.  All that is pled in this Count are formulaic, conclusory allegations directed in a rotisserie manner against all of the defendants.  Mere recitals of elements necessary to establish a civil conspiracy claim are, however, insufficient to state a claim for relief. *See Galiastro v. Mortgage Elec. Registration Sys.*, 467 Mass. 160, 174 (2014) (civil conspiracy count failed to state a claim); *Okoli v. Okoli*, 81 Mass. App. Ct. 381, 392 (2012) ("civil conspiracy count failed to state a claim).  Such pleading is completely insufficient to state a claim or to put any defendant on notice of the basis for the purported claim.  For the reasons set forth herein, Count XI fails to state a claim and should be dismissed.

**J.    Count XII, (Violation of FERPA and Invasion of Privacy (breach of contract & defamation))[20] – FERPA Offers no Private Right of Action; The Remaining Theories are Vague and Unsubstantiated**

(1)    Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g.

---

[19] In addition to the six Harvard Defendants, Plaintiff has also sued six other individually named defendants, John and Jane Does, and "Affiliated Companies of ExtensionStudent.com".
[20] Plaintiff styles Count XII as "Violation of FERPA and Invasion of Privacy (Breach of Contract & Defamation)." Theories related to "breach of contract" and defamation" are discussed herein with respect to other counts. It suffices to say, however, that as there is no actionable violation of FERPA or "invasion of privacy," neither could be the basis for any breach of contract or defamation claim.

It is axiomatic that "FERPA does not confer a private right of action. *Frazier*, 276 F.3d 52, 67 (1st Cir. 2002); *See also Langadinos v. Bd. of Trs. of the Univ. of Mass.*, C.A. No. 12-11159, 2013 U.S. Dist. LEXIS 140767 at *49 ("In addition, FERPA does not create any rights enforceable through other statutes. Gonzaga Univ. v. Doe, 536 U.S. 273, 290, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002) (finding that FERPA did not create enforceable rights under Section 1983.)"). That being the case, Count XII fails to state a claim to the extent that it is premised upon and alleged FERPA violation.

(2)    Invasion of privacy

The basis for the "invasion of privacy" count is that certain <u>unidentified</u> school records were disclosed by <u>unidentified</u> individuals. Am. Compl. ¶¶313-14. Plaintiff does not cite a Massachusetts statute, but the allegation is presumably premised on M.G.L. c. 214, §1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy."). To assert a claim under c. 214, §1B, Plaintiff must expressly allege that the defendants committed an "unreasonable, substantial, <u>and</u> serious interference with his or her privacy." *Transamerica Ins. Co. v. KMS Patriots,* 52 Mass. App. Ct. 189, 195-96 (2001) (emphasis supplied), *citing Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 517-19 (1991). The allegations are devoid of any facts to support the bald allegation that the school records allegedly disclosed caused an unreasonable, substantial, and serious interference with the Plaintiff's privacy. Plaintiff does not allege what school records were disclosed, who disclosed them, to whom they were disclosed or how the disclosure harmed the plaintiff. According to the amended complaint, Plaintiff had a *summa cum laude*-level GPA during most of his time at the HES. Crediting that allegation, it is difficult to discern how the alleged release of such information could harm Plaintiff. More to the point, conclusory and non-

specific allegations direct in a scatter-shot manner at 13 defendants – without any effort to differentiate between defendants or to even identify the specific actionable conduct committed by even one defendant fails to state a claim and fails to satisfy the plaintiff's burden of pleading. This allegation should be dismissed as to all Harvard Defendants.

**K.**     **Count XIII (Interference with Contract and Advantageous Relations) Must be Dismissed as the Plaintiff Fails to Allege Any Specific Contractual or Advantageous Business Relation Which Has Been Harmed**

Intentional interference with contractual relations and intentional inference with advantageous business relations are actually two separate causes of action, but the elements of these torts are "substantially similar." *Cavicchi v. Koski*, 67 Mass. App. Ct. 654, 657 (2006). To prevail in a claim for interference with advantageous business relations, a plaintiff must plead and prove that: (1) plaintiff had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct. *See Id.* To prevail in a claim of tortious interference with contractual relations, the plaintiff must plead and prove that: (1) plaintiff had a contract with a third party; (2) the defendants knowingly induced the third party to break that contract; (3) the defendants' interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendants' actions. *See Id.* In either instance, the amended complaint is utterly devoid of facts that satisfy these elements with respect to the Individual Harvard Defendants.[21]

The most glaring failing in this pleading is that it does not allege facts that suggest that the plaintiff had contract or business relationship with any third party. "To prove intentional interference with a contract or business relationship, [a plaintiff] must show that [the defendant]

---

[21] Harvard is not named as a defendant in Count XIII.

interfered with <u>specific third parties</u> who either had existing contracts or with which [the plaintiff] contemplated a business relationship with economic benefit." *Thrifty Fin. Servs. v. People's Serv. Ins. Co.*, 20 Mass. L. Rep. 199, 2005 Mass. Super. LEXIS 546, at *18 (Middlesex Super. Ct. Oct. 25, 2005) (emphasis added). This is an indispensable element. It is insufficient to allege "interference only with its general efforts to compete for prospective customers in the market at large." *Guest-Tek Interactive Entm't, Inc. v. Pullen*, 731 F. Supp. 2d 80, 87 (D. Mass. 2010); *see also Boyle v. Douglas Dynamics, LLC*, 292 F. Supp. 2d 198, 213 (D. Mass. ) ("[T]he prospective relationship cannot be unrealistically remote."). Plaintiff's allegation that he possessed "a prospective economic advantage in the marketplace" is, as a matter law, insufficient to state a claim for tortious interference. For such reasons, Count XIII fails to state a claim and should be dismissed.

**L.     <u>Count XIV (Irreparable Injury) Refers to No Valid Cause of Action</u>**

This count alleges "irreparable injury", and purports to seek injunctive relief. Am. Compl. ¶¶338-39. There is no such cause of action and injunctive relief is a remedy - not a cause of action. This Count should be dismissed as to all Harvard Defendants. *See Payton v. Wells Fargo Bank, N.A.*, 12-11540, 2013 U.S. Dist. LEXIS 27692, *18-19 (D. Mass. 2013); *Unitrode Corp. v. Linear Tech. Corp.*, 11 Mass. L. Rep. 145 (Mass. Super. 2000) (Botsford, J.).

**M.     <u>Count XV ("National Origin Discrimination") is Duplicative of Count III ("Race Discrimination") and Likewise Must be Dismissed</u>**

Count XV fails to identify any common law or statutory source. Claims for national origin discrimination are cognizable under 42 U.S.C. § 2000d (Title VI) and § 1981, but the conclusory assertions in paragraphs 340-54 offer nothing more than has already been discussed in Section C., above. The facts alleged are insufficient to state a plausible claim for relief.

N.    **Count XVI, (Bullying/Cyber-Bullying, Cyber-Harassment and/or Cyber-Stalking Violations) Refers to a Criminal Statute for which No Private Right of Action Exists**

The basis for Count XVI is a criminal statute, G.L. c. 265, §43A ("criminal harassment"), and private citizens do not have standing to initiate criminal actions. *Cichocki v. Massachusetts Bay Comm. College, at al.*, C.A. No. 2012-10728, 2013 U.S. Dist. LEXIS 27953, *29 (D. Mass. 2013) (private citizens do not have standing to bring claims per c. 265, §43A because it is a criminal statute); *see also Mellen v. UMass Mem'l Med. Ctr., Inc.*, C.A. No. 09-2675, 2010 Mass. Super. LEXIS 181, *1-2 (Mass. Super. 2010); *Harris v. Pepe*, C.A. No. 98-1691, 2000 Mass. Super. LEXIS 547, *5 (Mass. Super. 2000). This count should be dismissed on that basis alone.

The factual focus of this count appears to be the messages placed on the internet, which are the same messages that form the basis of Plaintiff's other counts for defamation and discrimination. The Harvard Defendants incorporate their arguments above by reference herein, in support of their argument that this count should be dismissed. *See* Section A, (3), *supra*. Plaintiff does not allege that any of the Harvard Defendants actually placed any of the allegedly offending posts on the internet; and universities are not liable for the acts of their students. *See Kavanagh*, 440 Mass. at 198 ("We reject the proposition that the doctrine of respondeat superior renders schools liable for the acts of their students."). And even if, *arguendo*, any of the Harvard Defendants could be considered a "provider" or a "user" of the web page at "extensionstudent.com", the Harvard Defendants still could not be liable for posts placed on that web page by others pursuant to the Communications Decency Act ("CDA"). *See* 47 U.S.C. §230(c)(1), (e)(3); *Universal Comm. Systems, Inc.*, 478 F.3d at 422 (allowing motion to dismiss per the CDA); *Delle v. Worcester Telegram & Gazette Corp.*, 29 Mass. L. Rep. 239, *supra* (allowing motion to dismiss because "the T&G cannot be held liable for the statements of a third

party on the comments section of its website."). For such reasons, Count XVI fails to state a

claim.

**O.      Count XVII, Intentional Infliction of Emotional Distress, Fails to State a Claim**

      To make out a claim of intentional infliction of emotional distress, plaintiff is required to

show (1) that defendants intended, knew, or should have known that their conduct would cause

emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused

emotional distress; and (4) that the emotional distress was severe. *See Polay v. McMahon*, 468

Mass. 379, 385 (2014) (citations omitted) (affirming allowed motion to dismiss intentional

infliction of emotional distress claim). "Liability cannot be predicated on 'mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that

the defendant has acted with an intent which is tortious or even criminal, or that he has intended

to inflict emotional distress, or even that his conduct has been characterized by "malice," or a

degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Id.*

(citations omitted). Merely parroting the requisite elements of the claim is insufficient to state a

claim for which relief may be granted. *See Kurker v. Hill*, 44 Mass. App. Ct. 184, 193-94 (1989)

(affirming allowed motion to dismiss intentional infliction of emotional distress claim).

      In his verbose amended complaint, other than parroting the elements of the claim, the

Plaintiff merely incorporates his previously alleged litany of insults (perceived or actual), rude

conduct, political maneuvering and petty grievances  to which he claims he was subjected – none

of which rise to the level of extreme and outrageous conduct.  Furthermore, Plaintiff has alleged

no conduct by any of the Harvard Defendants that could serve as the basis for such a claim of

intentional infliction of emotional distress.  In essence, Plaintiff alleges that he felt insulted by

comments made by fellow students lurking on a privately-operated blog site and was offended

that HES did not intervene in this intramural dispute and was further irked by the fact that his

agenda as student government president was not supported by school administrators.   Such

matters could serve as the definition of "petty oppressions, or other trivialities" which, as a

matter of law, cannot serve as the basis for a claim of intentional infliction of emotional distress.

Such claim should be dismissed.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILING TO COMPLY WITH RULES 8(a), (e), AND 10(b).

This Court has discretion under Mass. R. Civ. P. 41(b)(2) to dismiss the action "for

failure of the plaintiff . . . to comply with [the Civil] [R]ules . . . ." *See Mmoe v. Commonwealth*,

393 Mass. 617, 621 (1985); *see also Driscoll v. Board of Trustees of Milton Academy*, 70 Mass.

App. Ct. 285 (2007). Such discretion extends to permit a Court to dismiss a complaint that does

not meet the "short and plain statement" pleading requirement of Rule 8(a). *Id.* The Supreme

Judicial Court wrote in *Mmoe*:

> The defendants are entitled to a proper exercise of that discretion.  A judge must
> consider whether the amended complaint is so verbose and confusing that it fails
> to give the defendant "fair notice of what the plaintiff's [claims are] and the
> grounds upon which [they rest]."

*Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in original)).

In *Driscoll, supra*, the Court of Appeals affirmed the trial court's exercise of its

discretion to dismiss a "verbose and confusing" complaint. *Id.* at 299 ("It is very difficult to link

particular factual allegations to particular claims, as each count is sketchily described ...."). The

Court in *Driscoll* noted that the complaint spanned thirty-three pages and included 126

paragraphs. The amended complaint in this case, in contrast, spans <u>sixty-two</u> pages and includes

<u>366</u> numbered paragraphs, many of them with alphabetical sub-paragraphs. The verbose,

redundant, and argumentative nature of the amended complaint unduly frustrates the Harvard

Defendants' ability to decipher and respond. *See Galiastro v. Mortgage Electronic Registration Systems, Inc.*, C.A. No. 2010-678, 2015 Mass. Super. LEXIS 66, *3 (Mass. Super. 2015) (dismissing the fifty-nine page, single space, and 453 paragraph complaint per Rule 8, and finding it "unnecessarily verbose, redundant, and argumentative."); *Harvard University v. Goldstein*, C.A. No. 96-1020, 1996 Mass. Super. LEXIS 321, *4-5 (Mass. Super. 1996) (dismissing the counterclaim per Rule 8).

Here the Harvard Defendants are in the awkward position of having to review a verbose, complicated tangle of fact allegations, and make judgments on Plaintiff's behalf as to what conduct he intends to challenge; which defendant is alleged to be involved the alleged act or omission; and what legal theory is being advanced. The claims need not be professionally presented, but at a minimum they must be apparent on the face of the amended complaint, so that the defendants can file a complete and meaningful responsive pleading. Plaintiff's *pro se* status does not exempt him from compliance with the Rules. "Although some leniency is appropriate in determining whether a *pro se* complaint meets the requirements of those rules, the rules bind a *pro se* litigant as they bind other litigants." *Mmoe,* 393 at 620 (citations omitted). The amended complaint should be dismissed per Rules 8 (a), (e), and 10(b).

<u>CONCLUSION</u>

WHEREFORE, the Defendants, the President & Fellows of Harvard College (misnamed in the Amended Complaint as "Harvard Extension School/Harvard University"), Robert H. Neugeboren, Michael Shinagel, Huntington Lambert, Shirley R. Greene, and Margaret C. Andrews, respectfully request that this Honorable Court:

A. Dismiss all Counts of the Amended Complaint against each of them for failure to state a claim upon which relief can be granted pursuant to Mass. R. Civ. P. 12(b)(6);

B. Dismiss the Amended Complaint for failure to comply with Mass. R. Civ. P. 8 (a), (e),

and 10(b);

C. Dismiss the Amended Complaint as to Margaret C. Andrews for insufficient process and

insufficient service of process pursuant to Mass. R. Civ. P. 12(b)(4), and (5); and

D. Grant such further relief as it deems just.

Respectfully submitted,

| | |
|---|---|
| **CERTIFICATE OF SERVICE**<br><br>I hereby certify that on this day a true copy of the within document was served upon the attorney of record for each party by mail/~~hand~~.<br><br><br>DATED: 7/9/15 | **DEFENDANTS, PRESIDENT & FELLOWS OF HARVARD COLLEGE** (misnamed in the Amended Complaint as "Harvard Extension School/Harvard University"), ROBERT H. NEUGEBOREN, MICHAEL SHINAGEL, HUNTINGTON LAMBERT, SHIRLEY R. GREENE, AND MARGARET C. ANDREWS,<br>By their Attorneys,<br><br><br>John P. Coakley, BBO# 558685<br>William P. Mekrut, BBO# 654350<br>Stephen D. Coppolo, BBO#670342<br>MURPHY & RILEY, P.C.<br>101 Summer Street<br>Boston, MA  02110<br>(617) 423-3700<br>jcoakley@murphyriley.com<br>wmekrut@murphyriley.com<br>scoppolo@murphyriley.com |