UNITED STATES FEDERAL COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL DOCKET NO: 16-CV-10105

FILED
IN CLERKS OFFICE
2016 MAR 8 PM 5 02
U.S. DISTRICT COURT
DISTRICT OF MASS.

ANDRE BISASOR
PLAINTIFF,

V.

DANSLAV SLAVENSKOJ, ET AL,

DEFENDANTS

# EMERGENCY MOTION TO STAY PROCEEDINGS OR IN THE ALTERNATIVE TO EXTEND TIME TO OBJECT TO MOTION TO REMAND; AND FOR SANCTIONS

I Andre Bisasor, the plaintiff in the above-mentioned case, hereby request that this Court grant a motion to stay proceedings or in the alternative an extension of time for Plaintiff to object to Harvard defendants motion to remand as well as a motion for sanctions as outlined below. Grounds are as follows:

## MOTION TO STAY PROCEEDINGS

### Preface

1. [NB: I am not a lawyer and I am pro se at this juncture. My understanding is that my statements and arguments are to be construed liberally in my favor as much as possible]

2. [NB: I am filing this as an emergency motion because I believe the deadline to respond is either today or tomorrow i.e. the motion to remand was filed with this court on February 23, 2016 and I think there are 14 days to respond from that date].

3. [NB: I just received advice that I should request a motion to stay given the situation with the trustee and my Chapter 7 case, as further described below.]

### ABBREVIATED PROCEDURAL HISTORY

4. On June 19, 2015, I served a civil lawsuit and complaint on the Harvard defendants (and others) for the Suffolk Superior Court. It is a multi-party lawsuit.

5. Between June and August 2015, certain procedural issues were routinely addressed in state court regarding the multi-part lawsuit.

6. On August 27, 2015, I filed a chapter 13 case in Bankruptcy Court.

7. As a result, an order of relief was entered and an automatic stay was enacted by operation of law.

8. I subsequently filed a suggestion of bankruptcy in the Suffolk superior court. As I was pro se, I was advised by the superior court clerk that this would result in a stay of proceedings in the Suffolk Superior Court case.

9. On September 4, 2015, Judge Robert Gordon entered a stay of all proceedings in the Suffolk Superior Court pending a final disposition or order from the Bankruptcy court.

10. Judge Gordon also stayed action/decision on every individual piece of pending items in the Superior Suffolk Court.

11. On September 11, 2015, the lead Defendant Danslav Slavenskoj filed a motion to lift the stay.

12. On September 17, 2015, Judge Gordon denied the motion to lift the stay and reiterated that the stay is in effect pursuant to his previous order. ["Emergency Opposition (P#48) Treating this submission as a Request for Reconsideration of the Court's decision to stay the Plaintiff's action pending further direction from the Bankruptcy Court, the request is DENIED. (Robert B. Gordon, Justice). Dated 9/15/15 Notices mailed 9/16/2015"] *[handwritten: SEE Exhibit D]*

13. At the end of September 2015, the superior court rotation schedule was about to cause a change in judges from Judge Robert Gordon to Judge Peter Lauriat.

14. Harvard defendants cleverly waited until the new judge was rotated-in and then on October 1, 2015, sought to ask for a motion to lift the stay (essentially repeating the motion submitted by Danslav Slavenskoj) in a blatant attempt at judge-shopping. Judge Gordon already ruled on the issue of the stay and then reinforced it by denying a motion to lift the stay. For Harvard to wait until there was a change in Judges to refile or repeat essentially the same motion to a new judge (which was already denied by a prior judge), is nothing but an attempt to circumvent the ruling of the first judge. This is manifestly unfair and bespeaks the kind of gamesmanship that Harvard lawyers so moralistically chide. This is not the first time they engaged in such tactics. 1) They did so in state court when they tried to sneakily get their request for permission to file one single

memorandum for all Harvard defendants to judge without notifying me that there were doing so. By the time I found out about it, it was too late and the judge already granted the motion, 2) they similarly tried to do the same thing regarding opposition to a motion for default that I filed. They clearly seek to take advantage of my being pro se and of my being untrained in the law.

15. On or about the first week of October 2015, I called the Suffolk Superior Court and spoke with the Session C court clerk (Beatriz) and I asked if I needed to respond to Harvard's repeat motion. The Session C clerk emphatically told me that Judge Gordon already ruled twice on this matter and that the case was stayed and will remain stayed until further order from the bankruptcy court. She told me that I did not need to worry about any more motions from Harvard or about responding to it. The case was stayed and that was final, she said.

16. During this time, I was simultaneously embroiled in the midst of intense litigation regarding a landlord-tenant dispute. This landlord-tenant litigation eventually continued into the bankruptcy court. Eventually, the landlord and I agreed to enter into settlement in the bankruptcy court. As part of that agreement, I agreed to move out of the apartment and the landlord agreed not to evict, and to settle claims that I had against the Landlord in amount totaling over $100,000 with $43,000 as a direct cash payment component to me and my wife. [NB: The TRUSTEE AND THE BANKRUPTCY Court have to approve the settlement]

17. While I was in the process of transitioning from my prior residence and seeking to establish new residence, I was not receiving my mail because it was on hold at the post office and the post office made errors including not holding all my mail resulting in a batch of mail missing during that period of time. Also, the apartment made errors with my mail in getting it misplaced or otherwise causing them to be returned. Overall, during the period of November and December 2015, problems occurred with my getting mail.

18. On November 11, 2015, Judge Peter Lauriat suddenly and out of blue (after sitting on the motion for about 6 weeks) decided to reverse Judge Gordon and granted a lifting of the stay imposed by Judge Gordon.

19. I was not aware of the order reversing the stay as I was not getting my mail during this time and I did not keep up with checking the Suffolk court docket because the clerk told me that I did not have to worry about my Suffolk Superior Court case until my

bankruptcy was concluded and that Harvard motion would not be countenanced. This statement by clerk Beatriz appears to be substantiated by the fact that Judge Lauriat did not rule on Harvard's motion for 6 weeks i.e. after Harvard filed its repeat motion on October 1, 2015. Then suddenly out of the blue, Judge Lauriat issued a ruling on November 11, about a month and a half later after Harvard filed its repeat motion.

20. Immediately following the holidays, on January 6, 2016, I filed a chapter 7 bankruptcy case in Federal Court, converting from my chapter 13 case. My circumstances had changed and I was no longer able to follow the Chapter 13 plan. Hence the need to convert to Chapter 7. As a result, an order of relief pursuant to my Chapter 7 filing was entered by the automatic operation of law.

21. By the time I discovered that the stay was lifted in Suffolk Superior Court by Judge Lauriat and that a hearing was scheduled for January 26, 2016, I was already knee-deep into dealing with a withdrawal of my bankruptcy attorney and being left on my own to address several related pending litigation issues in the bankruptcy court including a bankruptcy appeal that my lawyer also withdrew from. As a non-lawyer, it is very difficult for me to figure out how to essentially practice law much less the intricacies of bankruptcy law and bankruptcy appeal law. I previously had an attorney in my bankruptcy case but he withdrew from my case. He did not want to convert my chapter 13 to a chapter 7 because he was concerned that his fees would be discharged in the process. A conflict of interest resulted and a breakdown in the attorney-client relationship ensued.

22. After consultation with a federal court clerk and others, I was advised that the Suffolk superior court action can be removed to the federal court. Given the confusion in the state court regarding whether a stay should be applied to my case given my bankruptcy, it seemed also appropriate that the matter be removed to federal court and/or to bankruptcy court which has original nonexclusive jurisdiction to determine whether a stay should be applied to my civil case under my special circumstances.

23. Hence, I began to research the relevant statutes and then I proceeded to confirm the correct procedures with the Suffolk Superior court, speaking with several court employees including Samantha Leeks who is the key personnel responsible for processing removals in the Suffolk Superior Court. This process took a couple of weeks

into January 2016, then I contacted the Session C clerk (Beatriz) for my case and advised her that I was going to remove the case by the end of the week of January 18, 2016. This was the week prior to when the hearing was scheduled for the following week on January 26, 2016.

24. [NB: So this was not a gamesmanship situation on my part as Harvard speculates. Harvard's counsel chose to ignore the fact that I am a pro se minority who is trying to learn the law. I don't have a law degree and I don't have a law firm backing me. I am also completely stretched thin in litigating crucial issues related to my home and in dealing with a bankruptcy all at the same time. Harvard's counsel appears unable to imagine what it is like for a pro se African-American who is not wealthy to try to his best manage these legal matters on my own and the concomitant stress that goes with it, while also maintaining a family and making a living. Instead Harvard's counsel projects ulterior motives where there are none and in fact without even taking the time to confer with me in order to get the facts.]

## FACTS FOR MOTION TO STAY OR EXTENSION OF TIME IN THE ALTERNATIVE

25. As a result of my conversion of my chapter 13 case to chapter 7 case in early January, 2016, my pre-petition civil lawsuit involving the Harvard defendants (and others) became the property of my bankruptcy estate.
26. The chapter 7 bankruptcy trustee is at least tentatively the real party in interest.
27. The trustee has yet to determine if he will pursue or abandon the case.
28. The chapter 7 bankruptcy case is still in its infant stages as there has been no 341 creditors meeting as yet.
29. It is my understanding that only the trustee can prosecute or move this case forward unless he abandons the case back to me.
30. Additionally, please note that I do not have an attorney at this point neither in my bankruptcy case or my civil lawsuit with the Harvard defendants. I previously had an attorney in my bankruptcy case but he withdrew from my case. He did not want to convert my chapter 13 to a chapter 7 because he was concerned that his fees would be discharged in the process. A conflict of interest resulted and a breakdown in the attorney-

client relationship ensued. My circumstances had changed and I was no longer able to follow the Chapter 13 plan. Hence the need to convert to Chapter 7.

31. I am currently seeking to secure counsel for my bankruptcy case and the bankruptcy court has granted me time to do so. However, even if I do secure bankruptcy counsel, it is not automatic that I will find one who will also be able to advise or represent me on the civil lawsuit given the intricacies and the specialized areas of law involved with my civil lawsuit. I therefore will need time to also secure counsel for this civil lawsuit case.

32. Either way, I cannot prosecute this civil lawsuit case on my own at this juncture because I first need to coordinate with the trustee and I need time for the trustee to look at the case and determine if he will pursue it or abandon it so that I can pursue it.

33. The trustee is the real party in interest and so there is a changing of the parties that is influx.

34. This is solid ground to grant a stay.

35. Moreover, while I am in bankruptcy, I am unable to properly prosecute this case on my own (aside from my pro se status) as it is a strain on my time and resources that are already being focused on and expended in the bankruptcy case.

36. Moreover, Harvard should have sought a lifting of the stay from the bankruptcy court itself in the first place. Instead Harvard sought a strategy of judge shopping in the state court as outlined previously. It is evident that Harvard wanted to avoid dealing with the bankruptcy court or the federal court at all costs because it believes this is a less hospitable forum i.e. forum shopping.

37. Yet Harvard has the temerity to accuse me of forum shopping when Harvard is the one who has sought to circumvent, undermine and overturn the ruling of Judge Gordon in the Suffolk superior court believing that Judge Gordon was not hospitable towards them.

38. Harvard has twisted the record in this way and in other ways. For example, Harvard has told untruths about my motivation for filing bankruptcy. It also told untruths in saying I was evicted. Harvard has read the bankruptcy court record and knows fully well that a settlement was reached with the landlord and that I was not evicted. Harvard presumably has done so in order to try to negatively influence this Court in viewing me in a light most unfavorable. Harvard also knows fully well that the $32,000 that was in dispute with my Landlord was due to a rent withholding situation due to my apartment being

condemned by the state (for fear of catastrophic failure) and my (and my wife) having to be displaced to a temporary smaller apartment for over a year. Harvard also fully knows that the Landlord has in fact since not only agreed to waive the $32,000 in rent but to also pay me and my wife $43,000 in additional cash as compensation for my legitimate counterclaims in order to bring the entire litigation to an end. Yet Harvard disingenuously made no reference to any of this in order to again cherry-pick or to present misleading points to skew this court's view of me.

39. Also in failing to meet and confer, Harvard has violated local rule 7, in bad faith, in order to put through these inaccurate and misleading arguments to this Court, without the benefit of having me correct them before they committed it to paper in their motion to remand.

40. Other factual points that this Court should be aware of include:

    a. Due to a number of procedural issues in the case including a stay imposed by Judge Gordon, the procedural posture of the case is still in its infancy stages. No answer has been filed by any defendant. No discovery or depositions have taken place. No substantive rulings have yet occurred in the case. Not all the parties have yet been able to attain counsel including the plaintiff as well as two of the defendants. Moreover, not all of the defendants have been served and a stay was placed on the procedural aspects of the due to the problems locating or identifying certain defendants who have committed tortious acts anonymously and have yet to be identified through discovery or court order.

    b. Moreover, please note that all defendants have not been served. For example, Jennifer Webb, who has moved out of the state, has not been effectively served as yet though I have mailed the complaint to her last known address and it has been returned to me in the mail as not picked up. I am uncertain if she is avoiding service or if she has moved yet again. I will require the permission of the court to serve her in alternative ways such as by email or social media. Additionally, John and Jane Doe have not been served because they are not yet identified because the defendants have hidden/not disclosed the identity of John and Jane Doe who participated anonymously or through pseudonyms on defendants' online forum/website. I will need discovery or a court order in order to get access to

    these identities. It is unclear if these defendants will prefer to stay in federal court or not. No attempt has been made by counsel to at least contact Jennifer Webb as they should have her current address since she is an alumni of Harvard Extension School.

c. Also, given the infant stages of the civil lawsuit case, it is theoretically possible that there still could be counterclaims filed against me because no Answers have been filed as yet by any defendants including those served and those not yet served. It is therefore necessary that the case be stayed until the bankruptcy case itself has been disposed of or a discharge occurs or until the chapter 7 case is closed. This will likely take a few more months and if it pleases the court, I request that the case be stayed for 6 months, until the bankruptcy discharge occurs in a few months from now or otherwise until the trustee intervenes or abandons the case.

## ARGUMENT FOR MOTION TO STAY OR EXTENSION OF TIME IN THE ALTERNATIVE

41. I hesitated to even file this response but my understanding is that I can at least file a request for a stay or an extension in order to preserve the case.

42. I am not certain that I even have the ability to file a response to the motion to remand until the trustee decides how to proceed. Grounds for this concern is as follows:

a. When a debtor files a voluntary petition for bankruptcy protection, a bankruptcy estate is created consisting of certain property owned by the debtor before he or she filed for bankruptcy. Property of the bankruptcy estate is broadly defined and encompasses all legal and equitable interests of the debtor in property as of the commencement of the case. This broad definition includes potential causes of action of the debtor arising from prepetition events. In a proceeding under Chapter 7, a trustee is appointed to be the representative of the estate. As the representative of the estate, the Chapter 7 trustee is vested with the property of the estate, including prepetition causes of action, to liquidate that property for the benefit of the creditors. As a result, courts generally recognize that the Chapter 7 trustee alone is vested with the exclusive power to assert legal claims on behalf of

    the estate, including debtor's prepetition causes of action. Therefore, a debtor that has filed for bankruptcy protection under Chapter 7 likely would lack standing to bring causes of action based on prepetition events after he or she has commenced a bankruptcy proceeding, because the cause of action is property of the bankruptcy estate and vested in the Chapter 7 trustee. Exceptions to this general rule do exist. Of note, a Chapter 7 trustee can abandon causes of action back to a debtor if the Chapter 7 trustee believes a cause of action is of inconsequential value to the estate

  b. Since the cause of action is property of the Debtor's bankruptcy estate, the bankruptcy trustee is the sole representative of the estate and the only party with authority to continue with the action or consider a settlement. 11 U.S.C. §323. The case trustee will decide whether to continue as plaintiff in the civil action. The trustee will inquire as to whether the potential recovery would make a "meaningful distribution" to the Debtor's creditors.

  c. Section 541 of the Bankruptcy Code broadly defines what property belongs to the bankruptcy estate as 'all legal or equitable interests of the debtor in property as of the commencement of the case.' Once a debtor files for bankruptcy, any unliquidated lawsuits become part of the bankruptcy estate, and, even if such claims are scheduled, a debtor is divested of standing to pursue them upon filing his petition. Under federal law, the filing of a bankruptcy petition is an assertion of the jurisdiction of the bankruptcy court over all the assets and property of the alleged bankrupt.

  d. Fed. R. Civ. P. 17 is also pertinent. Rule 17(a)(3) states, in part: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Here, the trustee is the real party in interest. See Wieburg, supra, 272 F.3d at 308. Therefore, only the bankruptcy trustee has standing to pursue a claim.

43. Hence the proper course here is to afford a reasonable time and to afford the trustee the opportunity to intervene in this action, ratify it, or abandon the claim. See, e.g., Wolfe v. Gilmour Mfg. Co., 143 F.3d 1122, 1126-27 (8th Cir. 1998).

44. Moreover, allowing the trustee to intervene is reasonable in light of the fact that I am currently unrepresented and do not have counsel.

45. Therefore, I request a stay be granted to allow the trustee time to do the above. In the event this Court does not grant a stay, I request that this court in the alternative afford plaintiff at least 120 days to allow trustee's joinder, intervention, agreement authorizing continuation of the action and to be bound by the result, or abandonment. See ICON Group, Inc. v. Mahogany Run Development Corp., 829 F.2d 473, 478 (3rd Cir. 1987).

## OTHER REASONS FOR A STAY OR EXTENSION OF TIME IN THE ALTERNATIVE: OBLIGATIONS FOR WORK

46. I have key obligations for work coming up in the next couple of months that involves speaking/training and travelling overseas. I need at least until July 2016 to get past these critical work obligations to get things back on track, after my filing bankruptcy.

47. One key purpose for the code is to allow a debtor an opportunity to rebuild and get over past setbacks. I need this opportunity to do so in this critical time immediately following the filing of bankruptcy. If the court desires, I would be happy to furnish proof of these work engagements under seal or in camera so as to not jeopardize these engagements.

48. After July 2016, I will definitely be able to focus time and resources towards prosecuting the case or to assist the trustee with prosecution of this case as a key witness and party to the action.

49. It would be a harm to me to have to choose between my case and damaging my ability to make a living.

## MOTION FOR SANCTIONS

50. According to federal court rules, a party must first attempt to meet and confer and narrow or clarify the issues before filing a motion with the court. The requirements for each are spelled out by local rules.

51. Harvard chose to ignore these rules by failing to meet and confer. There was no emergency. Harvard waited 28 days before notifying me of its intent to file a motion to remand. And when it first notified me of this intent, it did so by email in a vague manner directed towards the other defendants with me simply cc'd. No request was made to meet and confer with me. Harvard only asked for the assent of the other defendants. This email

was sent on February 18, 2016 at 7pm which is after business hours notifying that they intended to file the motion by noon the next day. That is not even 24hrs notice. *SEE Exhibit A*

52. Then on the morning of February 19, Harvard lawyer William Mekrut placed a call to my phone number at or about 10am, leaving a message. In that message, for the first time does Mr. Mekrut mention the need to meet and confer before filing the motion to remand.

53. I emailed Mr. Mekrut at 1:30pm that same day saying: *"Mr. Mekrut: I just got your message that you left today. Please note that I intend to oppose your motion. However, I would like to speak with you to have a chance to narrow the issues. I am tied up this afternoon but I could talk to you on Monday. Please let me if this is agreeable to you."* *SEE Exhibit B*

54. Instead of calling me back or emailing me, Mr. Mekrut hurries to submit his motion that same day eventhough he received my email requesting to meet and confer.

55. There was no emergency and he could have waited on Monday February 22 to meet and confer as required by the rules. He did so because he really had no intention of meeting and conferring with me but wanted to put on the façade of doing so. There is no reason why Mr. Mekrut could not have waited until Monday February 22 to meet and confer, given his short notice to me about the matter and given that he waited 28 days to notify me of such. He did not even give me half a day to respond. He purposefully provided a short timeline hoping that I would not have to respond and then when I did respond within the same day by mid-day, he ignored my response claiming in his motion that "we were unable to meet and confer before he filed the motion". This is such a blatant disregard of the rules that it should go without some sanction. He clearly knew what he was doing and did it blatantly trying to circumvent both the spirit and the intent of the law. *SEE Exhibit C*

56. Thus Harvard blind-sided me by filing its motion to remand without warning just before the weekend began on Friday evening of February 19, 2016. He could have let me know that he was going to still proceed with filing the motion on Friday (giving me a chance of responding once more with an alternative option to meet and confer) but he did not do so.

57. In arguing that Harvard should be sanctioned, I rely on Converse, Inc. v. Reebok Int'l Ltd., 328 F. Supp. 2d 166, 170 (D. Mass. 2004). In Converse, one of the parties filed motions, without first conferring with counsel. Id. at 171. The motions included "extensive legal memoranda and affidavits." Id. Additionally, counsel included a Local

Rule 7.1(a)(2) certification in the motion after simply leaving a voice mail for opposing counsel thirty minutes prior to filing, in what the district court found to be a bad faith, "deliberate choice to disregard the rules." Id. at 170, 172 (internal quotation marks omitted). Similarly in this case, Harvard acted in bad faith or deliberately choose to disregard Local Rule 7.1(a)(2). For the foregoing reasons, my request for sanctions should be granted, and Harvard's motion to remand should either be denied or sent back to Harvard to redo it after it has followed the meet and confer rule. Harvard should also pay a monetary sanction if the court deems it proper.

58. Harvard has demonstrated bad faith, and my rights have been prejudiced as result. I have not been allowed a chance to narrow the issues and to ensure that Harvard counsel did not submit untrue statements regarding me, matters upon which they had no proper knowledge and/or that they simply speculated on. It has allowed me less time to prepare a response.

59. It is also noteworthy that the attorneys at Riley & Dever P.C. (representing defendants Pollock, Arora, and Harding) have also submitted a similar motion to remand but in that case, they have not even bothered to try to contact me whether by phone or by email to meet and confer. They should also be sanctioned for this blatant conduct that violates the federal court rules.

## CONCLUSION

60. Wherefore, in summary, I request the following:
    a. that the Court grants a stay of proceedings for at least 6months to allow the Trustee an opportunity to review, investigate, ratify, join or abandon the case. If the trustee abandons the case back to me, I will need time to complete my Chapter 7 bankruptcy and conclude related matters and to seek counsel to represent me on this case;
    b. that if the Court chooses not to grant a stay that it, in the alternative, grants an extension of time to respond to the motion to remand for 6 months in order to allow for me time to coordinate/find out if the trustee plans to pursue the case or to abandon it back to me and if so, to allow me time to seek and arrange for

counsel to represent me going forward so that my rights are adequately protected in this matter;

c. that this Court holds the Harvard defendants and their counsel accountable for their attempt to flagrantly flout the rules of this Court (which prejudiced me) as their attorneys are among the most seasoned lawyers in all of Boston and should have known/done better.

d. that this Court holds attorneys for Riley & Dever P.C. accountable as well since they have not even attempted to meet and confer with me at all.

WHEREFORE, I hereby humbly request this Honorable Court grant my request and/or other relief that the Court deems just and proper.

Respectfully submitted,

*Andre Bisasor*
Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: March 8, 2016