UNITED STATES FEDERAL COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL DOCKET NO: 16-CV-10105

| | |
|---|---|
| ANDRE BISASOR<br>PLAINTIFF, | )<br>)<br>) |
| V. | )<br>) |
| DANSLAV SLAVENSKOJ, ET AL<br>DEFENDANTS | )<br>)<br>) |

## REBUTTAL TO DEFENDANTS' OPPOSITION [ECF# 27 AND #28] TO PLAINTIFF'S MOTION FOR STAY PENDING APPEAL [ECF #23 AND #24]

I, Andre Bisasor, the Plaintiff in the above named case, hereby rebut the Harvard Defendants' opposition as follows (also incorporating hereby all prior documents/papers that I have submitted to this court):

### A) Harvard has mischaracterized the procedural history.

1. First, I would like to address or clarify a few items regarding the procedural history as recounted by Harvard.

2. The Harvard Defendants have stated in their opposition [ECF #27] that they had opposed my initial stay request [ECF #15] on the grounds of the *"already prolonged nature of these proceedings, as well as their desire for an expeditious remand and resolution of the case on its merits."* Harvard has also tried to cast aspersions on me as it relates to this but Harvard has twisted the facts as follows:

   a. The proceedings have only started since June 19, 2015, then there was a stay imposed by Judge Robert Gordon in September 2015. That stay was in effect for a couple of months in the fall of 2015 until November 2015. This was the Judge making a reasoned determination that a stay should be applied and/or imposed on my case (i.e. the Judge's ruling was adverse to Harvard). Then, after the Christmas holidays, the case was transferred to federal court in January 2016.

   b. By referencing the filing date of November 2014, Harvard's intention is to mislead this court into thinking that the proceedings actually begun in November 2014. Nothing could be further from the truth.

1

c. In November 2014, I filed a placeholder complaint in order to preserve the statute of limitations on certain issues germane to this case but I did not serve the complaint nor did I notify Harvard about the initial complaint filed. During that time, I was in the midst of trying to exhaust all internal channels for redress inside Harvard first and was trying to give Harvard every chance possible to be reasonable and to address the matter, and if they had done so, I would have allowed the 90 days for service of process to simply expire and/or voluntarily dismissed the case. However, Harvard had been intransigent in responding to my concerns and so before the 90 days was expired, I asked the court for additional time to try to legal counsel as I was pro se. The superior court agreed.

d. Then during the winter months of January and February 2015, there was a period of unusual tumultuous weather with several weeks-long weather-related state of emergencies including several closings of the court. As a result, I again asked the court for additional time for service of process. The superior court agreed.

e. By the time April 2015 came, Harvard's Dean Huntington Lambert finally agreed to have a settlement meeting (after several months of intense effort on my part) but he indicated he could not meet with me right away as he had travel plans and a very busy schedule that would not allow him to meet until several weeks later. So I informed the superior court of this development for the potential for resolution and requested a final extension of time to serve process until June 19, 2015, to which the court agreed. However, when his secretary provided dates for a meeting, they just happened to fall right after the deadline for service of process (June 26, 2015). I tried to ask Dean Lambert's secretary to move the meeting to an earlier date but Dean Lambert' secretary said he could do no earlier. So I agreed to the meeting date set which was June 26, 2015 but proceeded to serve the complaint on June 19, 2015 as instructed by the court. Ultimately, at first, I did not suspect that Dean Lambert did this by design (i.e. so as to try to force me to forego serving the complaint and thus miss the court's deadline for service) because Dean Lambert later gave some indication that he did not even know about the November 2014 initial placeholder filing until served with an amended complaint on June 19, 2015. The above chronology represents the full truth and nothing but the truth as to why the matter did not become active until June 19, 2015. **(See Exhibit 1 - State Court Docket).**

2

f.  Moreover, because I amended the complaint in June 2015, the prior Nov 2014 initial
filing was a nullity. Thus, for all practical intents and purposes, this matter only became
active since June 19, 2015 since Harvard was not involved at all in any proceedings
until June 19, 2015. If the superior court granted me a few additional months to serve
process on defendants and thus to begin the case, then that is between me and the state
court and is of no moment or concern on the part of Harvard since plaintiffs are allowed
time to serve process and to prepare to move the case forward once complaint is served.

g.  Additionally, during the period of July and August 2015 (after the complaint was served
and the case effectively became active), there were several procedural issues that had to
be sorted out in state court including but not limited to:

   i.  Service of process on several other defendants who could not be located.

   ii.  Also, when I amended the complaint on June 19, 2015, I added a few more
defendants, which granted me an additional 90 days to serve these defendants
(i.e. until late September 2015). Also, there were issues of default that arose
because more than one defendant failed to file an Answer by the court's
deadline, which resulted in default against at least one defendant and led to
another default motion, which was still pending (before the case was transferred
to the federal court).

   iii.  More importantly, Defendants Danslav Slavenskoj and Defendants Arora and
Pollock requested at least two months or more extensions of time to research my
claims (claiming there were complex and/or novel, etc.) and thus an extension of
time to file an Answer with the court.

   iv.  As a result, several of the defendants' conduct in this case contributed to the so-
called "prolonging" of the proceedings in state court. Yet because of the
multiple defendants involved (some of whom are out of state), the proceedings
have not been unusually prolonged with all things being considered. Moreover,
the intervention of Judge Gordon to apply the automatic stay to my case for
several months cannot be used as an argument that the case has been
"prolonged" because the stay created a procedural/administrative "time-out"
with no further actions being taken or acted upon in court during the period of
the stay.

3

v. The stay was then lifted by Judge Peter Lauriat in November 2015. A mentioned in prior documents, I did not get an opportunity to oppose Harvard's motion to lift the stay because the superior court session clerk (Beatriz) told me that I did not have to respond to any more motions because Judge Gordon has ruled twice on this issue and there will not be a lifting of stay until I get a discharge in bankruptcy court or until further order from the bankruptcy court.

vi. So I hope the court will take note of this and of this naked attempt by Harvard at omitting these key facts and at manipulating and mis-framing the perceptions of this court. **See Exhibit 1-State Court Docket.**

3. Furthermore, as stated in a prior document, Harvard forced this matter into court when one of their Deans had scheduled a meeting to resolve/settle the matter but it was later canceled, apparently on advice of Harvard's counsel, because I had served notice of the lawsuit (which I had to do in order comply with a court's order do so by the required date). It is well-known that notice of a lawsuit is not a compelling reason to cancel settlement talks especially since I had already served Harvard with a 93A demand letter several months prior. **See prior Exhibits attached to memorandum of support for ECF #24.**

4. Also, there are other parties in this case that are not yet heard such as Jennifer Webb. Additionally, other such defendants may disagree with the request for remand. In fact, I am requesting permission from the court to use alternative means to serve Jennifer Webb since she is not locatable by a regular postal mailing address (NB: A stay would allow time for all defendants to be served and to be brought into the equation).

5. Harvard has a made a big deal about wanting an expeditious "resolution on the merits". Yet this is technically misleading because Harvard is not at this juncture seeking resolution on the merits of my case. They are seeking a resolution on the basis of the form of my complaint i.e. a dismissal on the basis that my complaint is not well-written or well-pleaded. Harvard has not provided an answer to my allegations, they have not taken any position on the substance of the complaint, other than blanket denials. Harvard is hoping for a quick dismissal based on pleading technicalities and not on whether my allegations are true or has any evidence to support them. They are playing a technical legal game in trying to get a quick dismissal so that they can avoid answering the charges and avoid discovery. Harvard is also exploiting the sense that there are pro se "wackos" out there who might file meritless complaints. Yet I am sure this court can discern that I am NOT some "wacko" but that I am in fact a sensible citizen who,

though having an education (including from Harvard), is not trained as a lawyer and may not perfectly make legal arguments as a lawyer would or could. Yet Harvard's elitist/arrogant attitude comes through as they try to signal to this court that my case is trash and should be thrown out summarily without any real consideration of the merits. Yet the justice system is also supposed to be accessible to regular citizens who are unrepresented and the courts are supposed to ensure that such citizens are not railroaded by the likes of elitist lawyers who want us to believe that all big corporations are "angelic" and can never do wrong or violate the law.

6. Moreover, if the case goes forward (either in federal court or in state court), it could last for another two or three years or more. Yet Harvard is acting like it knows for certain that all of my claims will be dismissed, which is very presumptuous, given the high bar for dismissal on pleading technicalities of a pro se complaint. Furthermore, a motion to dismiss (particularly the one that Harvard did) is not in actuality a request for an adjudication on the merits but a request for an adjudication on the form/style of my complaint and so it is disingenuous for Harvard to act as if there will be some imminent adjudication on the merits. Harvard has made other inaccurate statements regarding this matter and I reserve the right to address them at later time.

7. Yet if Harvard truly desired an expeditious resolution on the merits, it would not seek a remand back to state court because it will take longer to resolve in doing so than if the matter simply were allowed to go forward in federal court.

   a. The case is in an infant stage. There has been no Answer provided by any of the defendants including the Harvard Defendants, no discovery or depositions has been taken, and not all of the defendants have been served or has entered an appearance and not all of the defendants have secured counsel. There has been no case management or scheduling or status conference. The procedural posture of the case is in a very early stage procedurally. Also, there were some pending motions that had not been ruled on in state court as yet, including but not limited to: Plaintiff's Motion for Default against Harvard Defendants, and Harvard Defendants Motion to Dismiss.

   b. Therefore, there is no time benefit to Harvard in remanding this case back to state court given the embryonic stage of the case. So Harvard's argument for an "expeditious resolution" of the case appears to run counter to its stated reasoning for wanting a remand.

   c. There must be some other reason why Harvard would embrace further delay in remanding the case back to state court.

i. On information and belief, it appears Harvard wants to "judge-shop". Harvard was not satisfied with the adverse ruling it suffered when Judge Gordon ruled to grant me a stay both by application of the automatic stay and by imposing a stay based on Judge Gordon's inherent authority to do so on equitable or justice grounds. **(See Exhibit 1- State Court Docket).**

ii. [NB: On August 27, 2015, I had filed a chapter 13 bankruptcy after an intense landlord-tenant dispute that arose from the condemnation by the state of Massachusetts of the elevators in my home for fear of catastrophic failure due to the building sinking into ground. On September 3, 2015, the superior court clerk inadvertently alerted me to the fact that if I had filed bankruptcy, that I would be entitled to a stay based on a suggestion of bankruptcy].

iii. So, on information and belief, the defendants apparently devised a scheme in first coordinating with Defendant Danslav Slavenskoj so that Mr. Slavenskoj would submit a request to lift the stay imposed by Judge Gordon. Then when Mr. Slavenskoj was denied, Harvard then orchestrated submission of a repeat or similar motion asking to lift the stay right at around the time when Judge Gordon was to rotate out of the Suffolk Superior Court and replaced by Judge Peter Lauriat. SEE EXHIBIT 11 - SLAVENSKOJ'S MOTION

iv. [Harvard argues that it had to wait until 10 days before filing its motion to lift the stay with the state court because of Rule 9A but this explanation ignores the fact that Harvard could have submitted the motion either before or at the same time that Mr. Slavenskoj did. Note carefully that according to the state court docket, Judge Gordon issued the stay on 9/3/15. Mr. Slavenskoj submitted his motion to lift the stay as an emergency opposition on 9/11/15. Judge Gordon denied the request to lift the stay on 9/17/15. Then Harvard sent/served me an email copy of its similar motion to lift the stay at the end of the day on 9/17/15 after Harvard saw Judge Gordon's ruling earlier that day **(See attached Exhibit 2– Email of Harvard Motion To Lift Stay)**. Note that even though Harvard claims in this email that they put the motion in the mail on September 14, there is no evidence that this was done and it is inconsistent with the fact that they were emailing the motion on 9/17/15. Harvard then submitted to the court its similar motion to lift the stay on 10/1/15 after Judge Gordon rotated out.

Therefore, Harvard did nothing for two weeks after Judge Gordon issued a stay when it could have submitted its own motion expeditiously after the 9/3/15 stay order. At the very least, it is clear that Harvard wanted to see what Judge Gordon would do regarding Mr. Slavenskoj motion to lift the stay before serving/filing its own similar motion to lift the stay].

v.  Harvard knew that Judge Gordon was about to cycle out and waited until the right moment when Judge Peter Lauriat would rotate in. Harvard would like us to believe that it did not know or anticipate that a different judge was just about to rotate in, when they filed/submitted their repeat motion i.e. that somehow this was just a neat set of coincidences. This strains credulity even for the most simple-minded.

vi.  Furthermore, even if Rule 9A did partially explain why Harvard took so long to file a motion to lift the stay, it is clear that Mr. Slavenskoj submitted a motion that was similar in substance to what Harvard was later to submit and that it was denied [NB: Slavenskoj argued in his motion that "*the automatic stay only bars actions against the debtor and that actions brought by the plaintiff should not be affected by the automatic stay*" quoting several cases such as In re White (9th cir. 1995), In re Merrick (9th cir. 1994), In re Way (9th cir. 1998). This is very similar to the arguments made in Harvard's motion]. Yet, it was clear from Judge Gordon's ruling on Mr. Slavenskoj motion to lift the stay that he had no intention of reversing his ruling and that his decision to apply/impose a stay was meant to apply to all defendants in the case for as long as I was in bankruptcy.

vii.  It would have been an exercise in futility for Harvard to try the same arguments again if in fact Judge Gordon would be the one to review their motion to lift the stay. So Harvard caught a so-called lucky break when their repeat motion to the lift the stay landed on the desk of Judge Peter Lauriat instead of Judge Gordon. I can't imagine that Harvard had no sense or anticipation of this.

viii.  So why would Harvard be so interested in having Judge Peter Lauriat relook at Judge Gordon's ruling?

1.  It gave the Defendants another "bite at the apple" but with a different sitting judge in the same session. This spared them from having to do an appeal or a motion for reconsideration explicitly. **This is a disadvantage**

to me as a lone plaintiff because the defendants can one-by-one line up to submit the same or similar motion on the same issue (that the court has previously denied) without doing an appeal or a motion for reconsideration. This is manifestly unfair because Harvard exploited this feature of a multi-defendant lawsuit to its advantage and **because if Harvard had not exploited this loophole, my case would still be under a stay by Judge Gordon in superior court to this day**. [NB: I have evidence that the defendants have been coordinating their moves and have planned certain moves to try to make me look bad or to inundate me with a barrage of papers so that I can't possibly respond effectively in a short period of time. I also have further evidence that Harvard is in effect representing the interests of all of the defendants both those who are represented and those who are not, even though Harvard argues that they are not to be held responsible for the actions of the other defendants. This is also manifestly unfair].

2. I have since learned that Judge Peter Lauriat is/has been affiliated with Harvard (i.e. a teaching affiliation). **See Exhibit 3 – Profile on Judge Peter Lauriat Showing Teaching Affiliation with Harvard.** So it is reasonable to conclude that perhaps Harvard wanted Judge Lauriat to preside over my case, presumably because Peter Lauriat is or has been affiliated with Harvard whereas Robert Gordon has no such past or current Harvard affiliation. I am not sure whether or not Harvard believes that a Harvard-affiliated judge would be more empathetic to its perspective or not. But I also have since learned that when Judge Peter Lauriat rotated-in around the end of September 2015, and then subsequently when he reversed Judge Gordon and lifted the stay imposed by Judge Gordon some time in or around November 2015, Judge Lauriat somehow managed to be scheduled to remain on for 6 months when in fact every judge is normally rotated every 3 months, which meant he would not only preside over the lifting of the stay (from October 2015 through December 2015) but also during the period when the pending motions had to be scheduled for hearing in the Spring 2016 (from

January 2016 through March 2016). This was an anomaly and a highly unusual occurrence]. **See Exhibit 1 – State Court Docket.**

    d. Either way, it is reasonable to conclude that Harvard gained a benefit in having Judge Peter Lauriat overturn his colleague's (Judge Gordon) ruling and presumably Harvard is hoping that if the case is remanded to state court, Judge Peter Lauriat will be the one to preside over any motions or hearings instead of Judge Gordon. Please note that I am not necessarily saying that Judge Lauriat is incapable of fair adjudication because of the Harvard teaching affiliation, but I am saying that the likely reason that Harvard is so bent on having the case remanded back to state court is on the hope that Judge Lauriat presides on the case and the hope that Judge Lauriat will be on their side. I would not be surprised if this were Harvard's reasoning because otherwise it makes little sense for Harvard to fight so hard for a remand to state court since if this case goes forward in federal court, it would potentially get to a resolution on the merits quicker than if it were kicked back to state court. Please note that my raising this point is not unreasonable because recently in another discrimination/retaliation case filed against Harvard by Kimberly Theidon, the judge recused herself because her husband was a professor at Harvard. **(See Exhibit 4 - Order of Recusal).** If Judge Peter Lauriat continues to have a teaching affiliation with Harvard, then the issue of at least a perceived bias would at least be theoretically ripe for more scrutiny (NB: 28 US Section 455(a) makes it clear that the issue is not whether a judge believes he or she is capable of impartially presiding over a case but rather, the question is whether a judge's impartiality might be questioned from the perspective of a "reasonable person").

8. Moreover, why does Harvard care so much where this matter is resolved? It is my case. I filed it. I have the right to determine where it is heard and since the bankruptcy allows me the option of having it heard in federal court, then I have the right to have it heard in this court. The plaintiff's desire for venue should normally be respected and given first consideration. So it is not as if Harvard as a defendant is losing some major right in not having this case heard in state court (in fact, if you review Harvard's litigation history, they in most cases are the ones to remove plaintiff cases filed in state court to federal court. See Angel Hernandez vs Harvard (Federal Case #:12-CV-11978). So why all of a sudden is it that they now prefer state court to federal court? In fact, it is well-known that big corporations and institutions prefer to defend against plaintiff cases in federal court because it is perceived as a more hospitable forum).

Furthermore, given the fact that my case includes federal questions, I could have easily filed it in federal court initially. So the big dust up that Harvard is making over where the case is heard or resolved, lacks any real explicit compelling foundation or logic.

**B) Harvard has challenged the jurisdiction of the Court of Appeals to hear my appeal. This argument fails on several grounds:**

9. It is without dispute that I have standing to appeal because I have standing to sue in the first instance and I was adversely impacted by the district court judge's ruling. According to the Supreme Court, "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." Appellate jurisdiction depends on whether the appellant has been aggrieved by the judgment or order that is being appealed.

10. It is without dispute that the locus of appeal is correct. The notice of appeal should properly designate the court of appeals for the circuit geographically encompassing the district court in which the suit was filed, which in this case is the First Circuit.

11. It is without dispute that I have followed the proper procedure in filing the appeal. Rule 3 and 4 of Federal Appellate Procedure requires a notice to be filed with the clerk of the court that rendered the judgment or order, and the notice must "specify the party or parties taking the appeal"; "designate the judgment, order or part thereof appealed"; and "name the court to which the appeal is taken."

12. It is without dispute that I have met the requirements for timeliness of the notice of appeal. In civil cases, the notice of appeal must be filed within thirty days after entry of the order.

13. If this court dismisses my appeal without allowing the court of appeals an opportunity to hear the matter, it would take away from me my right to appeal which is both a violation of my due process rights and constitutional rights.

14. If the court had made a ruling on the motion to remand prior to my filing a motion to stay, then there would likely be little or no basis for an appeal as that is ruled out by the rules of procedure. However, there is nothing in the rules of procedure that rules out an appeal on a motion to stay or for a motion for extension of time/continuance.

**C) The First Circuit Has Jurisdiction to Hear This Interlocutory Appeal, and the Appeal Should NOT Be Dismissed**

15. The Motion for Stay Pending Appeal should be allowed as the Court of Appeals does have jurisdiction to consider an interlocutory appeal of this Court's denial of a motion to stay and for

sanctions. Accordingly, there is adequate basis to further stay this matter pending the resolution of the appeal.

16. Harvard argues that appeals are permitted only from final judgments of the district court. But this is not correct. Appeals can be heard on an interlocutory basis under exceptions such as the Collateral Order doctrine, the Forgay doctrine and the "Death Knell" doctrine, to name a few, all of which do not require that appeals be from final judgments.

17. Harvard argues that "*Section 1292(a)(1) provides an immediate right of appeal for "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions. But that neither the denial of the Plaintiff's request for a stay, nor of his request for sanctions, constitutes an order granting, continuing, denying, or otherwise relating to, an "injunction."* Yet Harvard ignores the fact that the Appeals Court has considered a denial of a stay that precedes a motion to remand to be a denial of injunctive relief. Harvard also ignores the fact that my motion to stay also includes a request to apply the automatic stay to my case and it is well established that a denial of application of the automatic stay is considered denial of injunctive relief.

18. Harvard argues that "*the United States Supreme Court held that a district court's order refusing to stay federal litigation due to the pendency of state court litigation between the same parties was not an order denying an injunction that is immediately appealable under 28 U.S.C. § 1292(a)(1). Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 275 (1988).*" But yet, Harvard has misapplied this argument because it is not analogous to my situation. This does not apply. There is no state court litigation pending in state court. The matter has been removed to federal court. [NB: Harvard in fact in its footnote recognizes, with obfuscatory begrudging, that the Gulfstream case actually buttresses my argument].

19. **Appeal is proper under Section 1292:** Under Section 1292 (A)(1), the Fifth Circuit has noted, "Given the procedural posture of this case, we feel it is appropriate to exercise our discretion and review the petitioner's motion to substitute counsel. Absent the exercise of our discretion, the petitioners will be deprived of any meaningful opportunity to have their motion reviewed".

    a. An order that does not expressly deny an "injunction" may still be appealable under section 1292(a)(1), however, if the order has the "practical effect" of refusing an injunction and meets the two-prong test outlined in Carson v. American Brands, Inc., 450 U.S. 79 (1981): (1) the order has the potential to have serious, perhaps

irreparable consequences; and (2) the order can only be effectively challenged by immediate appeal.

    b. Other examples of similar cases where certain stay orders were deemed to be denial of injunctive relief and appeal was deemed warranted include orders granting or denying stays on equitable grounds (Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 287 (1988)) as well as orders staying or refusing to stay district court's own proceedings.

20. Harvard also argues that "*ordinarily, a decision by a district court to stay litigation before it pending developments in a different action involving the same issues is not appealable.*" Yet, my case is not analogous to Harvard's reference here because my situation is not one where there are "pending developments in a different action involving the same issues". My case involves a case that was transferred from state court to federal court and is now closed in the state court. It no longer exists in state court. Therefore, Harvard's argument here fails. (**See Exhibit 5 - Screenshot of Final Disposition of State Court Docket**)

21. Harvard further argues that "*Such a highly discretionary 'stay' decision, is neither 'final' nor equivalent to an 'injunction.' It thus provides no basis for an appeal under either § 1291 or §1292(a).*" Yet the denial of the stay is final for purposes of an appeal in federal court and it is equivalent to an injunction particularly because it involves denial of the application of the automatic stay, among other things. So it is incorrect for Harvard to say that "*given that no "injunction" was involved in the Court's March 31, 2016 Electronic Order [ECF # 19], no interlocutory appeal should lie from that Order, and the attempted appeal provides no basis for staying these proceedings.*" No injunction was given but a denial of an injunction was done. My request for a stay is the functional equivalent of an injunction.

22. Harvard has also ignored the critical question/issue of "When and where would I be able to appeal these decisions, if not now and if not here?" Harvard argues that they are not final judgments. But Harvard could not be arguing that I don't have the right to appeal in an absolute sense. Obviously, I have the right to appeal. **So Harvard could only be arguing that I don't have the right to appeal as of yet or at this time until such time that the case is closed and/or the case has ended.** But if the case is remanded to state court, the case would become closed in the federal court and thus would be immunized from appeal thereafter. Harvard has refused or neglected to address this issue because there is no way around the force of the

compelling/inevitable conclusion that must result from tackling this question i.e. that an interlocutory appeal is warranted at this juncture.

23. However, even if it were correct to say that there was no denial of injunctive relief or that the denial of the stay was not equivalent to a denial of an injunction, there are still other grounds from which an interlocutory appeal lies from the Court's March 31st order as mentioned above.

24. Accordingly, there are adequate bases for jurisdiction for the Plaintiff to appeal the Court's March 31st Order, and there are good reasons for this Court to stay further proceedings in this action pending the "outcome" of my appeal. Harvard only sees it from their jaundiced perspective and not the objective perspective that a court of appeals would bring to this matter.

**D) Fed. R. Civ. P. 62(c) is applicable to my situation, contrary to Harvard's assertions, as well as other rules/statutes that grant adequate bases for appeal and a stay pending appeal.**

25. Harvard argues that "*Rule 62(c) of the Federal Rules of Civil Procedure as the procedural basis for his request for a stay*" does not apply, but Harvard is wrong because it is applicable.

26. Harvard goes on to argue that "*Further, the text of this section suggests that it is intended to protect the rights of the party opposing the appeal, not the rights of the appealing party. Fed. R. Civ. P. 62(c) thus provides no basis for a stay*". This is a tortured interpretation of the text and is taken out of context. It is clear that the entire section is intended to apply to either party. For instance, section (g) of Rule 62 further states "*Appellate Court's Power Not Limited. This rule does not limit the power of the appellate court or one of its judges or justices: (1) to stay proceedings—or suspend, modify, restore, or grant an injunction—while an appeal is pending; or (2) to issue an order to preserve the status quo....*". This shows that nothing in Rule 62 is intended to limit the application of this section to only one party versus another.

27. However, even if this section were limited in some way, there are several more important bases for my arguments as mentioned previously and as further outlined below.

**E) Appeal is proper under the collateral order doctrine**

28. The most common, and the most expansive, jurisprudential exception to the final judgment rule is the collateral order doctrine. Pan E. Exploration Co. v. Hufo Oils, 798 F.2d 837, 839 (5th Cir. 1986).

29. Under the Collateral Order Doctrine, the Supreme Court has fashioned the collateral order doctrine in a discrete line of cases interpreting the 18 U.S.C. § 1291 requirement for a "final decision." Under this expansive interpretation of the statute, an order is labeled final and appealable even though the ruling does not terminate the entire action or even any significant

part of it. The apparent finality is that the order is a final determination of the particular issue in question. Appeal is allowed if and only if: (1) the matter involved is separate from and collateral to the merits; (2) the matter is too important to be denied effective review; (3) review later by appeal from a final judgment is not likely to be effective; and (4) the matter presents a serious and unsettled question. The leading case is Cohen v. Beneficial Industrial Loan Corp. where the court stated: *"This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."*

30. [NB: The matter raised by my appeal also affects everyone who face these circumstances i.e. whether a pro se litigant, who filed chapter 7 bankruptcy, is required to prosecute his case when a chapter 7 bankruptcy trustee has become the real party in interest in that case, whether a pro se litigant should be forced to engage in multi-forum litigation while trying to wrap-up a chapter 7 bankruptcy and whether the automatic stay applies to a situation of unusual circumstances and immediate adverse economic consequences such as mine].

31. The Supreme Court has recognized a *"class of collateral orders which do not meet this definition of finality, but which are nevertheless immediately appealable under § 1291."* Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996). The Supreme Court has also articulated a three-prong test to determine whether an order that does not finally resolve litigation is nonetheless appealable under section 1291. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

   a. First, the order must "conclusively determine the disputed question". Under this first prong, the Supreme Court has observed that there are two kinds of non-final orders: those that are "inherently tentative," and those that, although technically amendable, are "made with the expectation that they will be the final word on the subject addressed." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 n.14 (1983). The latter category of orders meets the first prong of the collateral order doctrine. Judge Casper's March 31st order meets this prong of the test as her denial of the stay and the automatic stay is clearly expected to be the final word on the subject addressed.

   b. Second, the order must "resolve an important issue completely separate from the merits of the action". Under the second prong—that the issue be separate from the merits—the Court has described it as a "distillation of the principle that there should not be

piecemeal review of 'steps towards final judgment in which they will merge.'" Moses H. Cone, 460 U.S. at 12 n.13 (quoting Cohen, 337 U.S. at 546). Under this test, it is clear that Judge Casper's March 31st order denying the stay/automatic stay is separate from the merits of my case (i.e. discrimination/retaliation, defamation, and other torts).

    c. Third and finally, the order must be "effectively unreviewable on appeal from a final judgment." Richardson Merrell Inc. v. Koller, 472 U.S. 424, 431. It is clear that Judge Casper's March 31st order meets this criterion because if this court remands the case, it will never be appealable in either state court or federal court.

32. The following examples of orders (including abstention-based stay, dismissal, and remand orders) that have been deemed appealable under the collateral order doctrine and that show that my case/issues are appealable: **a) Under Colorado River abstention.** Moses H. Cone, 460 U.S. at 9 (abstention-based stay order); **b) Under Burford abstention.** Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (abstention-based remand order); **c)** Under Pullman abstention. Moses H. Cone, 460 U.S. at 9 & n.8 (citing Idlewild Liquor Corp. v. Epstein, 370 U.S. 713 , 715 (1962)); **d) Pre-remand decisions** made by a district court if that decision is "separable" from the remand order and independently reviewable through a mechanism such as the collateral order doctrine. Dahiya v. Talmidge Int'l, Ltd., No. 02-31068, 2004 WL 1098838 (5th Cir. May 18, 2004) (citing City of Waco v. United States Fid. & Guar. Co., 293 U.S. 140 (1934); Heaton v. Monogram Credit Card Bank, 297 F.3d 416, 421 (5th Cir. 2002); Doleac v. Michalson, 264 F.3d 470, 486 (5th Cir. 2001); Arnold v. State Farm Fire & Cas. Co., 277 F.3d 772, 776 (5th Cir. 2001); Linton v. Airbus Industrie, 30 F.3d 592, 597 (5th Cir. 1994); Angelides v. Baylor Coll. of Med., 117 F.3d 833, 837 (5th Cir. 1997)); Soley v. First Nat'l Bank, 923 F.2d 406, 410 (5th Cir. 1991); see also In re Benjamin Moore & Co., 318 F.3d 626 (5th Cir. 2002) (addressing the separable order doctrine to determine if collateral order doctrine conferred jurisdiction on the court to review the order of remand in a mandamus proceeding). **e) Orders remanding action to state court.** McDermott Int'l, Inc. v. Lloyds Underwriters, 944 F.2d 1199 (5th Cir. 1991).

33. In fact, in the footnote on page 6 of its opposition [ECF #27], Harvard inconspicuously buries and deemphasizes reference to the collateral order doctrine and grudgingly recognizes (but still tries to obfuscate) that this is legitimate grounds for my appeal in this situation.

    a. In the footnote, Harvard quotes Cady vs Walsh saying "To be immediately appealable under this doctrine, "an order must '[1] conclusively determine the disputed question,

[2] resolve an important issue completely separate from the merits of the action [the 'separability requirement'], and [3] be effectively unreviewable on appeal from a final judgment".

b.  Yet Harvard misquotes the clear intent of Cady vs Walsh by further stating as a conclusion that the "**plaintiff** failed to conclusively determine any question" when the criteria just set out in Cady vs Walsh (which Harvard just quoted) is that the "**order** conclusively determines the disputed question", not the plaintiff. This shows the logical sleight of hand by Harvard and is a sign that this court should read closely and not take Harvard's arguments, references and interpretations at face value but should scrutinize them to ensure they are not misquoting or taking/twisting things out of context. The fact is that the court's March 31st order conclusively determined the question of whether a stay should apply based on the automatic stay, as well as based on other grounds including but not limited to the issue of the standing and role of a Chapter 7 trustee to prosecute this case, and whether a sanction is applicable in the context of a pre-remand order, among other things.

c.  Harvard goes on to argue in its footnote on page 6 of its opposition [ECF #27] that there is "no important issue at stake", when it is clear that the issue of the applicability of the automatic stay under the circumstances is an important issue among several other things (NB: There are several important issues at stake including but not limited to the fact that the denial of the stay effectively prevents the trustee to have enough time to join the case and make the legal arguments in this court. This court should benefit from having a competent lawyer make the arguments and at this juncture, the trustee is likely my only shot at having a lawyer make these arguments at the present time. There is a judicial economy that will result from allowing the trustee sufficient time to ratify as the real party in interest. There are also additional arguments that I made for a stay based on extenuating circumstances, and based on the need for a continuance, etc.).

d.  Harvard then finally argues that "there is no important separable right likely to be lost [by me] based on the denial of the stay", when it is clear that the denial of the stay will result in my losing the right to appeal if the case is remanded to state court. To be separable, the decision must meet two criteria. First, the decision must have preceded the remand order in logic and in fact such that the decision was made by the district

court while it had control of the cause. (Dahiya v. Talmidge Int'l, Ltd). Second, the decision must be "conclusive," i.e., "functionally unreviewable in state courts".

e. In fact, Harvard blatantly ignores the big pink elephant in the room outlined by its quote of Cady vs Walsh i.e. the criteria that the order *"[3] be effectively unreviewable on appeal from a final judgment."* It is without dispute that if the case is remanded to state court, the court's March 31st order is effectively unreviewable on appeal.

f. Moreover, the issues at stake are separable from the underlying merits of the action in that the issue of the automatic stay is not an issue in my underlying civil rights case. It is totally separable and no further ruling in the case will address this issue or other issues raised in my appeal or motion to stay pending appeal. Therefore, by Harvard's own footnote reference to cited authority and criteria, the collateral order doctrine applies to my situation and grants more than adequate basis for my appeal to go forward and for my request for a stay pending appeal to be granted.

g. Please note also that Defendant Danslav Slavenskoj has asserted what appears to be **counterclaims in his Special Motion To Dismiss dated August 31, 2015**. As a result, this is further reason for application of the automatic stay (SEE EXHIBIT 10) *(IN SLAVENSKOJ'S SPECIAL MOTION)*

34. [NB: In terms of procedure for taking an appeal under the collateral order doctrine: *"an appeal taken under the collateral order doctrine is subject to all the usual appellate rules and time periods, including Rule 4 of the Federal Rules of Appellate Procedure."* United States v. Moats, 961 F.2d 1198, 1203 (5th Cir. 1992); see also Byrd v. Corporacion Forestal y Industrial de Olancho S.A., 182 F.3d 380, 386 (5th Cir. 1999) (*"While we said in Moats that appeals taken pursuant to the collateral order doctrine are subject to all of the usual appellate rules governing interlocutory appeals, we also specifically identified Rule 4."*). A party seeking to appeal under the collateral order doctrine should follow the appeal procedures under FED.R. APP. P. 4 that apply to appeals "as of right" from traditional final judgments (e.g., invoke the appellate court's jurisdiction by filing a notice of appeal in the district court within the time specified by FED. R. APP. P. 4). I have followed the procedures outlined by Rule 4 and thus I have properly invoked the appellate court's jurisdiction as is applicable under the collateral order doctrine].

## F) Appeal is proper also under the "Death Knell" Doctrine and the Forgay Doctrine.

35. Under the "death knell" doctrine, a case is final when a party is "effectively out of court." Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 715 (1962); see McKnight v. Blanchard, 667

F.2d 477, 479 (5th Cir. 1982). The doctrine provides that any decision forcing a plaintiff out of a court, in effect, sounds the "death knell," making it final for purposes of appeal (see Coopers & Lybrand, 437 U.S. at 465-69). Given that the March 31st order will effectively lead to my case being kicked out of federal court and no longer appealable, if it is remanded back to state court, then my appeal of the March 31st order clearly meets this criterion.

36. In Moses H. Cone (as referenced earlier), the Supreme Court held that Idlewild's reasoning was limited to abstention or similar doctrines where all or an essential part of the federal suit goes to a state forum. (See Aronds, 123 F.3d at 300). Further, the Fifth Circuit has stated that the death knell exception is specifically **limited to cases where the order requires all or essentially all of the suit to be litigated in state court**. See Aronds, 123 F.3d at 300 (citing United States v. Garner, 749 F.2d 281, 288 (5th Cir. 1985), and Kershaw v. Shalala, 9 F.3d 11, 14 (5th Cir. 1993)). This shows that the Death Knell doctrine is intended specifically to apply to situations where a pre-remand order back to state court is being appealed such as in the instant case.

37. Under the Forgay "hardship–irreparable injury" exception, the Forgay doctrine, or, as it is sometimes called the "hardship and irreparable injury" exception to the final-judgment rule, grew out of Forgay v. Conrad, 47 U.S. (6 How.) 201 (1848) and allows for appeability when there will be irreparable injury to the appellant. As has been established in several places elsewhere in this document and in prior documents submitted by me, the denial of the stay and a remand back to state court will create much hardship for me and will make less convenient my ability to prosecute this case given my limited resources as an individual pro se plaintiff who just filed for chapter 7 bankruptcy. The litigation in state court carries with it the inability to use ECF to submit documents or to view entries/filings (which will increase my costs in having to travel to court to file or view documents and/or increases my costs of having to serve all of the multiple defendants copies of every paper I file which can cost hundreds of dollars and which I don't have the ability to pay continually throughout this litigation), the lack of a program that offers court-sponsored professional mediation by an attorney, the lack of a program that allows for the appointment of counsel, etc.

38. Overall, by kicking this case out of federal court, I will suffer tremendous hardship both financially and in terms of convenience. By denying a stay, it forces me to have to spend time trying to prosecute this case on my own while also dealing with a recently filed chapter 7 bankruptcy, while having to work and take care of my family. A stay will allow me an opportunity to clear the bankruptcy process first (which will only take a few more months

before a discharge is able to be granted). Based on the foregoing, my appeal clearly meets the criterion for application of the forgay doctrine exception.

**G) There is Ample Basis for Stay Under Fed. R. App. P. 8(a)(1)(A) or the Court's Inherent Authority to Manage its Docket**

39. Harvard argues that a "*pro se Chapter 7 debtor is free to discuss this litigation with the trustee regardless of whether this matter is pending in federal district court or in state court, and is not precluded from doing so now*", but this argument fails.

   a. Harvard ignores the fact that the Chapter 7 trustee is more likely to pursue this matter if in federal court, the fact that trustee is best positioned to make legal arguments before this court and the fact that the trustee needs time to review the case to determine if he will pursue it or abandon it to me. My conferring with him does not obviate the need for time for him to investigate this matter.

   b. Furthermore, it is not simply about discussing something with the trustee. It is allowing the trustee adequate time to take a position regarding the case and to investigate to determine if this case could result in a meaningful distribution to my estate. Given the complexity of my case along with the multiple defendants and claims involved, naturally the trustee will need a reasonable amount of time to look into this matter.

   c. Also, pending resolution of my appeal, further proceedings in this action would be inefficient for the parties and the Court, and would be highly prejudicial to me as well as the trustee as the real party in interest, especially if the appeals court rules in my favor. Ruling on a remand order in particular would be inappropriate especially if the Court of Appeals reverse this Court's March 31st order and if remand has taken place.

   d. Moreover, the trustee is not my lawyer. I can't just call up the trustee and discuss matters with him like that. Certain procedures have to be followed and certain designated times to interact with the trustee are in place. Moreover, the chapter 7 case is in an infant stage and the trustee has just recently set an application to employ allowing the matter to be fully explored, which was just approved by the Bankruptcy Court. All of these things take time and process, which opposing counsel knows. This is one of the reasons why a stay is in order because of the peculiar and specific rules and processes that govern a chapter 7 bankruptcy, all of which will impact the ability of the trustee and/or myself from moving this case forward, if accommodation is not allowed. **See Exhibit 6 – Ruling on Trustee Application to Employ.**

e. Moreover, Rule 17 of Fed. R. Civ states that "*The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.*" This suggests that it is reasonable for the court to allow ample time for a real party in interest to ratify, join or be substituted in to the action. In this case, that real party in interest is the chapter 7 bankruptcy trustee. My initial request for a stay (ECF #15) was partly predicated upon the need to allow a reasonable time for the trustee to join the case or abandon it back to me. My stay pending appeal is partly predicated on whether this court should have allowed a stay in order to allow joinder by the real party in interest.

40. Harvard goes on to argue that "*The Plaintiff again requests that the Court take his personal litigation and non-litigation work commitments into account in ruling upon his latest stay request. The Court has previously heard and rejected this argument—except to the extent the Court magnanimously gave the Plaintiff until April 15, 2016 to oppose the Harvard Defendants' Motion to Remand, a deadline which the Plaintiff did not meet. The Plaintiff's attempt to file a non-meritorious appeal does not make this argument any more reasonable*". Because this Court did not issue an opinion with its March 31s order, it is unclear why the denial was issued and so it is speculative for Harvard to posit that this Court rejected all of my arguments. It is at least theoretically possible that this Court accepted some but not all of my arguments at that time. Neither Harvard nor myself knows, only this Court knows. Moreover, the issue here in my motion for stay pending appeal is not simply about whether this court rejected some of my arguments made in my initial request for a stay (ECF #15), nor simply about my work or litigation commitments but it is about the fact of an appeal that needs to be heard by the court of appeals and the fact that if this court rules on the motion to remand in an adverse way to me prior to the appeal being considered, then I would suffer irreparable harm. Moreover, it is important to note that this court did not grant my request for a continuance/extension based on my unusual/extenuating circumstances. The federal rules of civil procedure require that at least 14 days be allowed after any order is given, and presumably this is why the court ordered the two-week deadline. Either way, a two-week deadline was tantamount to a denial of my request because I was in the middle of a professional engagement where I literally had no time to reply during that time (which I can provide proof of and which I

have offered to provide proof of previously). This is precisely why my appeal is warranted because I can prove that an accommodation was needed just like if any lawyer requested an accommodation due to schedule conflicts. I should not be treated lesser than would any lawyer making the same request. I believe the court of appeals will agree on this point, especially once I am allowed to tender proof.

41. Harvard further argues that *"Third…the First Circuit lacks jurisdiction to consider the Court's March 31, 2016 appeal on an interlocutory basis, and therefore the fact that the Plaintiff has filed a notice of appeal should not lend him any weight in favor of a stay of these proceedings".* This is a clear example of circular reasoning by Harvard. It uses the argument for why the First Circuit lacks jurisdiction under Section 62 and section 1292 and applies it to a lack of jurisdiction argument for Rule 8 of the Fed. R. App without showing why Rule 8 does not allow for an appeal or a stay pending appeal based on my circumstances. Again, this is logical sleight of hand as Harvard avoids having to the address the clear authority granted under Rule 8 for my appeal/stay pending appeal. In other words, even if a stay was not authorized based on Rule 62 or Section 1292, it does not automatically follow that an appeal/stay pending appeal is not authorized under a different statute such as Rule 8.

42. Harvard does nothing more than offer circular reasoning and then the sums it up with a circular conclusion that *"There is simply no basis for the Court to exercise its general grant of discretion or invoke Fed. R. App. P. 8(a)(1)(A) to issue a stay of these proceedings."* It has not provided any argument based on the text of Rule 8 as to why Rule 8 does not apply. Therefore, this should be taken as a tacit concession that Harvard has no argument against the use of Rule 8 of Fed. R. App for a stay pending appeal and that I do have a right to appeal and there are sufficient bases for the Court to issue a stay pending appeal under Rule 8.

43. Moreover, the notes section under Rule 8, states that: *"Notes of Advisory Committee on Rules— 1967 Subdivision (a). While the power of a court of appeals to stay proceedings in the district court during the pendency of an appeal is not explicitly conferred by statute, it exists by virtue of the all writs statute, 28 U.S.C. §1651. Eastern Greyhound Lines v. Fusco, 310 F.2d 632 (6th Cir., 1962); United States v. Lynd, 301 F.2d 818 (5th Cir., 1962); Public Utilities Commission of Dist. of Col. v. Capital Transit Co., 94 U.S.App.D.C. 140, 214 F.2d 242 (1954). And the Supreme Court has termed the power "inherent" (In re McKenzie, 180 U.S. 536, 551, 21 S.Ct. 468, 45 L.Ed. 657 (1901)) and "part of its (the court of appeals) traditional equipment for the*

*administration of justice." (Scripps-Howard Radio v. F.C.C., 316 U.S. 4, 9–10, 62 S.Ct. 875, 86 L.Ed. 1229 (1942)).*

44. This shows that it is ultimately up to a court of appeals to make the final decision as to whether an appeal is properly taken and whether a stay pending appeal is warranted. This is reinforced by the fact that this statute encourages an appellant to first seek a stay in the district and then seek a stay in the appeals court (if denied by the district court) but also allows a provision where the appellant could simply by-pass the district court altogether and request a stay pending appeal directly with the appeals court. This establishes the appeals court's total preeminence and authority over and above the district court on this issue. Moreover, I could exercise my right to go directly to the appeals court in asking for a stay pending appeal (on grounds that this court could simply deny my stay request and then immediately remand the case back to state court, as the defendants have now asked for in their opposition), but instead **I am relying on the integrity of this court in allowing me the opportunity to first request a stay in the appeals court, if in fact this court denies my request for a stay pending appeal, before ruling on the remand motion.**

45. Also, the Supreme Court has stated that: "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).

46. The First Circuit has further explained that: "as a general rule, the filing of a notice of appeal 'divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal.'" United States v. Brooks, 145 F.3d 446, 455 (1st Cir. 1998) (quoting United States v. Mala, 7 F.3d 1058, 1061 (1st Cir.1993)); see also United States v. Hurley, 63 F.3d 1, 23 (1st Cir. 1995) (explaining that a district court retains jurisdiction to decide matters "not inconsistent with the pendency of the appeal").

47. One key issue arising from my appeal is whether proceeding with matters in which certain parties would have a right to participate touches upon or involves an appeal that will decide the parties' right to intervene. The U.S. District Court for the District of Maine, in Maine v. Norton, 148 F. Supp. 2d 81 (D. Me. 2001), held that it must stay discovery and all other pre-trial matters pending the resolution of an appeal of its order denying intervention to various individuals. This Court's March 31st order has effectively denied the right of the trustee to

intervene and join this case while it is in federal court, if in fact the case is remanded back to state court. The trustee is entitled to a full participatory role in the ongoing development and progress of this case as the real party in interest/intervenor. This issue touches on the Court's jurisdiction to proceed in the face of the assertion of the appellate court's jurisdiction.

48. Harvard finally argues that "*Since Plaintiff filed suit in Massachusetts Superior Court in November 2014, his litigation strategy appears to be a study in delay tactics meant to avoid a decision on the merits. The instant "appeal" is another attempt at delay. And in the course of filing paper after paper seeking delay after delay, Plaintiff has mischaracterized the arguments of the Harvard Defendants and made inaccurate statements and representations about them.*"

    a. Harvard again is trying to mislead this court regarding the procedural history as stated before. Harvard failed to disclose to you that other defendants have requested extensions of time, that Harvard itself misled me into thinking that a settlement meeting was on the table, but apparently it wanted me to wait until my deadline to serve process expired before having a settlement meeting with me, that Judge Robert Gordon issued a stay that lasted several months until it was reversed by Judge Peter Lauriat. These facts undermine Harvard assertions and shows that Harvard is trying to twist the record in order to create a negative framing so this court becomes biased against me. Harvard has not been truthful and this court should take with a grain of salt Harvard's attempts to attack me. It shows desperation that Harvard would stoop to this level.

    b. Moreover, contrary to the Harvard's allegations and insinuations, I am not here and now simply seeking a delay (a term which Harvard intends in the most negative and pejorative connation) but I am in fact seeking a stay based on legitimate legal principles afforded by the rules of procedures and by statute. There is a difference, especially in the context of a bankruptcy scenario, where a stay is not considered a delay in the technical sense of the word. Seeking a stay (or even a continuance) are acceptable legal operations based on certain parameters, and for Harvard to characterize them as simply "delay" does a disservice to genuine attempts to resolve certain issues that necessitate a stay or a continuance, such as when an appeal is pending. Such circumstances might include when a litigant or witness or attorney is sick, when a litigant or witness or attorney has to be out of state due to longstanding prior work or schedule conflicts, when there is a period of inclement weather or emergencies such as terrorism, or when certain kinds of appeals are pending.

c. And I am not simply seeking a stay at this juncture, but I am seeking an appeal/stay pending appeal. In order for my appeal to be heard, then a stay must be granted otherwise the appeal will become moot if a remand takes place. This is not only sound reasoning but common sense and it is also backed up by statutory provisions. It is ironic that Harvard itself has sought delays or stays in other proceedings when it is to its advantage (**See Exhibit 7** ~~Harvard's~~ **Request for Delay in Another Discrimination Lawsuit**).

d. Moreover, if Harvard believes I mischaracterized their arguments then they should point them out rather than issue a blanket denial. In my amended motion I provided back-up and proof of much of my assertions with exhibits, so I would be curious to find out what Harvard feels is a substantive or substantial mischaracterization (not simply semantical). By refusing to identify what these are, Harvard leaves it to the imagination as to what these fundamentally inaccurate statements that I purportedly made are.

e. Moreover, the issue of a stay was once decided by Judge Robert Gordon who in his reasoned opinion thought that a stay was applicable, warranted and justified. Harvard did not get Judge Gordon himself to reverse his opinion based upon Harvard's arguments. Instead Harvard got another judge to reverse Judge Gordon in the same superior court session by exploiting a loophole related to the rotation of judges every three months. Judge Robert Gordon presumably still has the same view that a stay should be applied both by application of the automatic stay and by application of the court's inherent power to impose a stay. I therefore stand on solid ground, with full backing of a well-respected Suffolk Superior Court judge, when I declare to this court that I believe a stay is warranted and that the automatic stay applies to this case. In attempting to trivialize my request for a stay as nothing more than a delay tactic, Harvard not only insults me but also insults the intelligence and competence of respected superior court Judge Robert Gordon. In Harvard's own words in its opposition [ECF #16] to my initial motion to stay [ECF #15], Harvard insinuated that Judge Gordon is less than competent or confused, which is a disparagement of Judge Gordon by Harvard. Harvard has gone down this this low road rather than take the more reasonable and honorable position that reasonable minds might disagree on the issue. And this is one of the core elements of my argument for the need for the First Circuit to

review this issue i.e. that at least two judges have disagreed with each other and rendered opposing decisions in my case.

    f.   Harvard also misstates/mischaracterizes the facts in saying that I have filed *"paper after paper seeking delay after delay"*. In this court, I have asked this court for a stay on two occasions: one was the initial stay request [ECF #15] and the second was the request for a stay pending appeal [ECF #23-24]. Harvard's assertion implies that there have been numerous such requests to this court, which is manifestly untrue.

49. Harvard also argues that *"This Court afforded Plaintiff additional time to oppose the Motion for Remand through April 15, 2016. Instead of using that time to file an opposition, Plaintiff has filed an appeal and an eleven page motion seeking a stay pending the appeal, filling those pages with rehashed arguments already denied as well as mischaracterizations of the Harvard Defendants' arguments. Enough is enough. There is no good reason for further delay."*

    a.   The court denied my request for an extension of time up until at least July 30, 2016.

    b.   During the two-week period through April 15, 2016, I was completely unavailable due to a longstanding conflict for a multi-day professional/work commitment. I specifically mentioned my conflict to the court and offered to provide proof under seal or in camera, but the court effectively denied my request and offer. This is an example of an order that was not an explicit denial but was effectively or practically a denial.

    c.   A stay pending appeal must by definition state what the issues are that are being presented for appeal, why the appellant believes the court made an error and why it meets the criteria for a stay pending appeal. Harvard's snide remark about my "rehashing arguments already denied" is therefore ridiculous in the context of a stay pending appeal. This is what an appeal entails, i.e. rehashing arguments, and this is what we will both be doing in the court of appeals. Harvard is therefore being disingenuous on this point [NB: Federal Appellate Procedure Rule 8 (a) (1) states that a party must ordinarily move first in the district court for a stay of the judgment or order of a district court pending appeal. Rule 8 (a) (2) (B) (i) also states that such a motion must also include the reasons for granting the relief requested and the facts relied on. Therefore, the rules of procedure actually call for an appellant to present, in a motion for stay pending appeal, the arguments already denied by the district court].

    d.   Harvard's chiding remark about "enough is enough" contains the sense of paternalistic/elitist disdain. It smacks of a sense of entitlement and of throwing a temper

tantrum as if to say my rights and arguments are not to be taken seriously by this court because I am a pro se plaintiff. Harvard is entitled to oppose my motion but it can do so without such histrionics. Such remarks should not be countenanced by this court.

e.  Harvard finally states in summary fashion that *"there is no good reason for further delay"*. My entire motion for stay pending appeal and this rebuttal lays out the good reasons for a stay pending appeal. Harvard again is entitled to oppose my motion but it is a bit patronizing to simply quip that no good reasons for a stay has been proffered.

f.  For example, the reason for a more limited stay is to allow the Court of Appeals an opportunity to determine if a stay should be granted. Furthermore, the rules of appellate procedure envisions a scenario where the appellant first seeks a stay in the district court and if denied, to then seek a stay in the court of appeals.

g.  Moreover, appealability under the collateral order doctrine must be determined *"without regard to the chance that the litigation might be speeded"*. (Digital Equip., 511 U.S. at 868). Therefore, Harvard's argument about wanting an expeditious remand should not cloud the determination of appealability under the collateral order doctrine.

## H) Harvard is wrong about the issue of the sanctions.

50.  The Harvard Defendants further pointed out in their opposition that they *"had not—as Plaintiff alleged—violated Local Rule 7.1, because the Harvard Defendants had sought Plaintiff's assent prior to moving for remand, and the Plaintiff advised he would oppose remand. See id. at 3-4."* Yet Local Rule 7 appears to be about conferring. Harvard offered to confer and when I asked to confer, they rejected my request to confer. That is a fact. In fact, to show their bad faith, Harvard then acquiesced to my request to confer after they sent the motion to remand in. This is proof of bad faith. If Harvard's counsel felt that they already conferred why then follow-up to confer after the motion was already sent? Harvard is trying to be slick. **See Exhibit 8 – Harvard's Counsel Emails Relating To Motion To Remand.**

51.  Regarding the issue of sanctions, the district court's order to deny the motion for sanctions is a final judgment because there will be no opportunity to appeal if the motion to remand is decided against me. If I don't appeal it now, it will never be appealed. Ordinarily, I could wait until the case is tried or decided as a whole in federal court but since the motion for sanctions is collateral to the motion to remand, then I will not be afforded an opportunity to appeal the decision if the motion to remand goes against me. The denial of my request for sanctions is thus appealable on an interlocutory basis because it is part of a collateral order and thus provides

justification for a stay pending appeal. This is especially true because I requested in my motion for sanctions that the motion to remand be denied on the basis of a calculated deliberate attempt to circumvent local rule 7. If the court of appeals agrees that such a sanction would be warranted, then the issue of the denial of the motion for sanctions become germane to the denial of a separable right and to motion to remand itself. Because these issues are inter-linked, then it comes under the collateral order doctrine and is thus appealable. Moreover, contrary to Harvard's assertions, I am not simply making a request for a **renewed stay**. I am also adding additional arguments that buttress the need for a stay and I have ultimately expanded the request for a stay to be based upon the rights conferred during the process of an appeal.

52. Harvard's contention is that it did not violate local rule 7 because I stated in an email that I intended to oppose their motion to remand. Yet it appears that local rule 7 does not envision a simple email but a more substantive discussion to narrow the issues and to come to some agreement if possible. This is especially true where a request to discuss the matter is made, as I did. Yet Harvard sought to rebuff and circumvent my request to confer and discuss the issues by rushing to submit the motion to remand without any discussion with me, and then afterwards acting as though conferring could take place after the motion to remand was submitted to the court. The only reason why Harvard tried to follow-up to have a meeting to discuss the already submitted motion to remand is because Harvard knew it violated the requirement to have a substantive discussion or conferring before submitting the motion.

53. Even if Harvard is not wrong about the issue of sanctions, there are still adequate grounds regarding the denial of the stay/automatic stay and continuance and regarding the pendency of appeal for a stay to be issued as argued elsewhere in this and other documents that I filed.

54. Moreover, Harvard has only attempted to address the motion for sanctions against the Harvard defendants but is silent on the motion for sanctions against Defendants Arora, Harding and Pollock. This at least shows that my motion for sanctions has merit even if it only applies to the Defendants Arora, Harding and Pollock. There is no basis to deny a motion for sanctions against Defendants Arora, Harding and Pollock when they completely and deliberately refused to contact, write, email, call or confer with me in any way and have not even attempted do so at all. What defense is there to this deliberate violation of local Rule 7 by the seasoned attorneys at Riley and Dever PC law firm? So even if assuming *arguendo* that no sanctions were warranted against Harvard (which I don't agree), then it does not mean that sanctions were not warranted against Defendants Arora, Harding and Pollock. No-one has provided an answer to

or addressed this issue and therefore it stands to reason that on this issue alone I have substantive grounds for appeal. I am confident that the Court of Appeals will agree that this was an egregious violation and that some sort of sanction was warranted as it relates to Defendants Arora, Harding and Pollock Motion to Remand submitted to the court on March 23, 2016. **See Exhibit 9 – Motion to Remand By Defendants Arora, Harding and Pollock.**

55. Furthermore, in its motion to remand, Defendants Arora, Harding and Pollock did not certify that an attempt to confer was made, which is conclusive evidence that no attempt to confer was made at all. This is especially egregious because Defendants Arora, Harding and Pollock did confer with Harvard on the motion to remand (i.e. they initially refused to decide on whether to assent to Harvard's motion to remand until Harvard filed its motion to remand with the court, after which they filed their own motion to remand). So defendants knew that conferring was required but refused to confer with me but instead only conferred with Harvard.

## I) In sum, Harvard is just plain wrong on the following issues:

56. Harvard apparently has asked that this appeal be dismissed. But Harvard ignores Rule 27 (c) of the federal rules of civil procedure which states: *"c) Power of a Single Judge to Entertain a Motion. A circuit judge may act alone on any motion, but may not dismiss or otherwise determine an appeal.."* Therefore, Harvard cannot ask this Court to dismiss this appeal. Furthermore, 28 U.S.C. § 47 provides that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him". Morever, a motion for stay filed in the court of appeals normally will be considered by a panel of the court. FED. R. APP. P. 8(a)(1)(D).

57. The appeals court has stated: *"an order, otherwise nonappealable, determining substantial rights of the parties which will be irreparably lost if review is delayed until final judgment may be appealed immediately under section 1291."* United States v. Wood, 295 F.2d 772 (5th Cir.).

58. Harvard has ignored the wisdom and precedent set by the Supreme Court in avoiding extremes that are too strict and would ignore the need for immediate review of orders with serious and direct consequences, in terms of irreparable injury to rights that cannot be restored effectively by a later appeal.

59. Harvard cites finality as a condition of review but both the Court of Appeals and the Supreme Court has been departed from this condition when observance of it would practically defeat the right to any review at all. (Cobbledick v. United States).

60. The Courts have entertained appeals of orders that otherwise might be deemed interlocutory, when the controversy reached a point where a losing party would be irreparably harmed if review were unavailing. (Republic Natural Gas Co. v. Oklahoma).

61. The key factor, that has guided the courts in their struggle to devise a formula that will encompass all situations and at other times to take hardship cases out from under the rigidity of previous declarations, has been whether there is a danger of denying justice. Also, the courts have declared that a concern for expeditiousness cannot come at the expense of justice.

62. Moreover, the power to appeal should be left to the court of appeals. That is the point of having a court of appeals. If an appellant's attempt to appeal can be simply be nixed by the district court before it has the chance to be heard by the court of appeal, then that would deny the right to appeal. My understanding is that the right to appeal is a fundamental right of our justice system and to deny me that right would be a violation of my right to due process and my constitutional rights. Harvard clearly has no respect for my right to appeal and the tone of their opposition bespeaks an attitude of paternalistic/elitist disdain. Harvard wants a flagrant act of brute force by this court to prevent my right to appeal to a higher court.

63. I pray the court will not oblige Harvard's attempt to take away my right to appeal by denying my reasonable request for a stay and/or temporary administrative stay pending appeal.

WHEREFORE, I hereby humbly request this Honorable Court grant my request for a stay pending appeal as outlined in ECF #24 and/or other relief that the Court deems just and proper.

Respectfully submitted,

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: May 20, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this date, upon information and belief, the Court's ECF system will serve an electronic copy of the foregoing upon the following counsel of record:

William Mekrut

Murphy & Riley P.C.

101 Summer Street

Boston, MA 02110


Joseph P. Dever, Esquire

Riley & Dever, P.C.

Lynnfield Woods Office Park

210 Broadway, Suite 101

Lynnfield, MA 01940-2351


I further certify that on this date, I caused a copy of the foregoing to be served upon each of the following non-ECF registered parties:


Ken Vedaa, pro se

16970 Highland Cir

Paeonian Springs, VA 20129


Danslav Slavenskoj, pro se

2 Greenough Ave., #8

Boston, MA 02130

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: May 23, 2016