UNITED STATES FEDERAL COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL DOCKET NO: 16-CV-10105

| | |
|---|---|
| ANDRE BISASOR<br>PLAINTIFF, | )<br>)<br>) |
| V. | )<br>) |
| DANSLAV SLAVENSKOJ, ET AL,<br>DEFENDANTS | )<br>)<br>) |

**MOTION FOR LEAVE OF COURT TO FILE A REPLY TO HARVARD DEFENDANTS'
OPPOSITION [ECF #34] TO PLAINTIFF'S MOTION FOR APPLICATION OR
RECOGNITION OF THE AUTOMATIC STAY [ECF #31] AND TO EXCEED 20 PAGES**

I respectfully request leave to file the attached reply and to exceed 20 pages. In support of this motion,

I state the following:

1.  On June 9, 2016, Harvard filed an opposition to my motion for application or recognition of the
    automatic stay. In it, Harvard references new arguments that I did not have a chance to address
    previously. Harvard's opposition also misconstrues the real basis for my automatic stay request,
    among other things, and it also disregards certain key elements that show that the automatic
    stay is applicable and warranted. Moreover, Harvard also referenced a number of incorrect or
    inaccurate statements that could prejudice this court, in addition to also mischaracterizing my
    arguments and misquoting cases or cherry-picking quotes out of context from cases while
    neglecting to point out the quotes from those same cases that provide exception or that actually
    support my points.

2.  Since Harvard has made these new arguments and assertions, I therefore have reasonable
    grounds to address those issues and those arguments in the attached reply.

3.  I believe that one of the standards for granting a leave to file a reply is whether the party
    making the reply would be unable to contest matters that were presented to the court for the

first time by opposing counsel in their opposition. Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).

4.  Also, because I am not a lawyer, and not accustomed to making these legal arguments in court, I require a little leeway in being able to develop my arguments, quote statutes, cite cases, and present material in a persuasive and effective way. And in order to do so and to try to match the skill and expertise of top-trained lawyers for Harvard, I needed more space to do so. I hope that this court will allow substance over form on this occasion as these issues touch upon a very critical matter. Harvard also packed a number of case references into their opposition and their arguments that are of a technical nature, especially for a pro se plaintiff. I needed more space [25 pages] to unpack these references i.e. only 5 additional pages.

5.  Further, because I did not have a chance to address these new arguments or assertions in my previously filed motion, and if this court denies my stay requests and remand the case to state court, then I will not have another forum in which to address them if I cannot file the attached reply here.

6.  Therefore, a proper reply is required to ensure that this Court has adequate information to address the issues inclusive of the new arguments or assertions raised in Harvard's most recent opposition.

7.  Hence, I hereby ask permission to file a reply for which leave is hereby requested.

WHEREFORE, I hereby humbly request this Honorable Court grant my request and/or other relief that the Court deems just and proper.

Respectfully submitted,

*andre Bisasor*

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: June 22, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this date, upon information and belief, the Court's ECF system will serve an electronic copy of the foregoing upon the following counsel of record:

William Mekrut

Murphy & Riley P.C.

101 Summer Street

Boston, MA 02110


Joseph P. Dever, Esquire

Riley & Dever, P.C.

Lynnfield Woods Office Park

210 Broadway, Suite 101

Lynnfield, MA 01940-2351


I further certify that on this date, I caused a copy of the foregoing to be served upon each of the following non-ECF registered parties:


Ken Vedaa, pro se

16970 Highland Cir

Paeonian Springs, VA 20129


Danslav Slavenskoj, pro se

2 Greenough Ave., #8

Boston, MA 02130

*Andre Bisasor*

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: June 22, 2016

UNITED STATES FEDERAL COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL DOCKET NO: 16-CV-10105

| | |
|---|---|
| ANDRE BISASOR | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) |
| DANSLAV SLAVENSKOJ, ET AL, | ) |
| DEFENDANTS | ) |
| | ) |

## REPLY TO OPPOSITION BY HARVARD DEFENDANTS TO PLAINTIFFS MOTION FOR APPLICATION OR RECOGNITION OF THE AUTOMATIC STAY

I, Andre Bisasor, the Plaintiff in the above named case, hereby rebut the Harvard Defendants' opposition as follows (also incorporating hereby all prior documents I have submitted to this court):

## A. THE AUTOMATIC STAY CAN & DOES APPLY TO THE PLAINTIFF'S PREPETITION CLAIMS (AS WAS RECOGNIZED BY SUPERIOR COURT JUDGE ROBERT GORDON)

1. Harvard argues that the "*automatic stay provision in 11 U.S.C. § 362(a) does not apply to prepetition claims brought by the debtor.*"

    a. This is not always true. It can apply to claims brought by the debtor under certain circumstance including if counterclaims are brought, if there are unusual circumstances, if there are immediate adverse economic consequences and if the prosecution of the claim by the debtor would require that he go into debt to do so, and if it involves arbitration.

    b. A close examination of In re Critical Fork Coal Corp. (Virgina,1982) reveals that: "*Further, the debtor is prohibited from incurring debt, other than in the ordinary course of business, without approval of the court after notice and a hearing. See 11 U.S.C. § 364(b). The debtor's continuance of litigation, or any judicial proceeding, incurs a debt that is generally not within the ordinary course of the debtor's business. The debtor may not, therefore, pursue that proceeding in any fashion without approval of this Court. In short, it appears that the filing of a petition for relief in this Court effectively stops any further action in proceedings involving the debtor pending in other courts, regardless of whether the debtor is plaintiff or defendant.*" SEE EXHIBIT 3

1

c. Based on In re Critical Fork Coal Corp., it is clear that the automatic stay applies to cases initiated by a plaintiff-debtor, where the plaintiff-debtor has to incur a debt to pay for legal fees, costs associated with transactions with the court or with the defendants such as serving and filing of papers, and costs associated with the expenses of conducting discovery or a trial. Because I would have to incur debt in order to prosecute my case, then the stay should apply. This is the clear reading of section 364 of the code as articulated by the 9th Circuit.

d. Otherwise, because of lack of resources, a debtor could simply not respond and let a case default (whether due to lacks of funds or legal error) and then the trustee would lose the ability to prosecute the case. Similarly, in my case, I am trying to preserve the case for the trustee and I am trying to preserve the status quo so that the trustee, who has the resources and the knowledge to prosecute this case can have time to ratify/join the case. Harvard wants to block this from happening clearly because it would rather fight me in court, a lone under-resourced black male pro se defendant, versus a well-funded and legally skilled federal trustee. This is obvious. Harvard would absolutely not be prejudiced if a stay is entered until my bankruptcy discharge or until the trustee has had a proper chance to ratify/join the case. See Delpit v. CIR, 18 F.3d 768 (9th Cir. 1994) ("*However, the trustee's right to appeal a Tax Court judgment can be fully preserved only if all existing appeals are stayed. Otherwise, the debtor might default on its appeal for any number of reasons (e.g., lack of funds, legal error), and thus deprive the trustee of its ability to prosecute an appeal on the debtor's behalf.*")

e. Another example that supports my argument is related to arbitration proceedings initiated by the debtor. The scope of the automatic stay is broad and covers all proceedings against a debtor, including arbitration. In Acands Inc. v. Travelers Cas. & Sur. Co. (2006), the 3rd circuit found that "*the automatic stay applied to the arbitration*" even though it was initiated by the debtor, that "*the arbitration award is invalid because it diminishes the property of the estate*" and that "*the panel's award violates the automatic stay and is therefore void ab initio. See Maritime Elec. Co., 959 F.2d at 1206.*" It is important to note that initially the District Court in this case held that the automatic stay did not apply because the arbitration was an action initiated by the debtor. But the 3rd circuit court reversed stating that although "*defenses, as opposed to counter-claims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and the defendant in the bankrupt's suit is not, by opposing that*

2

*suit, seeking to take possession of it. . . . ",* that therefore *"to avoid interfering with the broad purposes served by the automatic stay, it was necessary for the arbitration proceeding to halt as soon as the scope of the parties' submissions supported an award that could diminish [the] estate. By continuing beyond this point, the proceeding violated § 362(a)(1), and the panel's deliberations and the resulting award are therefore void."* This shows that the correct way to analyze whether the anti-slapp motion is a counterclaim or an action against the debtor subject to the automatic stay is not to focus on whether the plaintiff debtor initiated the lawsuit but whether at a certain point in the proceeding, a certain action is taken that extracts or seeks to extract a monetary award from the debtor.

    f.   This is also backed-up by examples of tax court proceedings. In Delpit v. CIR (9th Cir. 1994), the court found that: *"The mere fact that a debtor "initiates" an action in Tax Court is not dispositive; we must examine the proceedings as a whole to determine whether they are in fact initiated "against the debtor." See In re Bloom, 875 F.2d 224, 226 (9th Cir.1989) (holding that a motion by a creditor to strike a pre-bankruptcy action violates the automatic stay even though the debtor initiated the proceeding and was the plaintiff)."*

    g.   [NB: Although the statute does not explicitly address actions brought by the debtor, it also does not rule out extension of the stay to actions brought by the debtor when circumstances warrant it. Because it is silent on the issue, it does not mean that there are not circumstances under which it would apply as shown in the above examples.]

    h.   Also, Harvard claims that *"There is no support in the text of § 362(a) for the Plaintiff's argument that the automatic stay should be applied because if he were to prevail, this would theoretically benefit his creditors."* Yet there is case law that contradicts this assertion. See Matter of S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987) stating that: *"We also are of the opinion that our decision that Eastway's state court action is stayed by section 362(a)(3) carries out the general policies of the Bankruptcy Code….Its action is based upon allegations that if proven would benefit all of S.I.A.'s creditors, i.e., making more assets available to satisfy S.I.A. debts….Thus, not to stay Eastway's action would promote the first-come-first-served unequal distribution dilemma that the Bankruptcy Code and In re MortgageAmerica sought to prevent."*.

2.   Harvard also states*: "Further, while the automatic stay is intended to give the debtor a "breathing spell from his creditors, ",* what the Plaintiff at bar seeks is a breathing spell from prosecuting his own lawsuit against the twelve identified non-debtor defendants….Section 362(a) does not forestall*

*non-debtor defendants in a prepetition suit from opposing a debtor's claims against them...persons whom the debtor has sued are not prevented by the stay from protecting their legal rights...All that the Harvard Defendants are seeking to do is to defend themselves and to bring this matter to an expeditious resolution."* My response is:

a. The automatic stay is intended to provide a breathing spell from the financial pressures that drive the debtor into bankruptcy. It also provides a breathing spell to allow the real party in interest to join the case. See In re Merrick (BAP 9th Circuit (1994)), ("*The trustee contended that § 362 affords time for evaluation of the estate's assets and determination of the proper course of action relative thereto. If such time is needed, the trustee may seek a discretionary stay from the bankruptcy court pursuant to § 105.*"). One of the things that I have been attempting to do is to seek a stay because "such time is needed" (as shown above) for the trustee to evaluate the lawsuit and determine whether to join or abandon the case. Since the trustee has not yet acted on this case, I am allowed to seek a stay to preserve the status quo to allow him a reasonable time to do so. This is the clear meaning of the above cited case and it removes any doubt as to whether seeking a stay under these circumstances is somehow impermissible or unwarranted or procedurally incorrect.

b. [NB: Harvard makes mention of the number of defendants as 12. Please note that 6 of the defendants are employees/administrators of Harvard and these effectively represent one defendant Harvard. John and Jane Doe defendants are yet to be identified through discovery because the defendants have taken steps to conceal the identities of these defendants who have operated through pseudonyms on their school-affiliated website. The other 4 defendants are students/former students who have engaged in related torts against me while either being affiliated with the school, representing the school in some official capacity or otherwise working for the school AND where the school knew of these torts and did nothing in deliberate indifference or consorted with them in the committing to these torts.]

c. I am not seeking to prevent defendants from opposing my lawsuit or to prevent them from protecting their legal rights. I am seeking a stay until my bankruptcy is completed, until the trustee ratifies/joins or abandons the case or at least for discrete period of time wherein I can clear scheduling conflicts that include overseas work commitments. This does not prevent the exercise of any rights of the defendants. If anything, it only defers them until a discrete period of time in the future.

d. [NB: Again the phrase "expeditious resolution" as used by Harvard is "code" or a "dog whistle" for wanting a quick dismissal of my lawsuit and all of its claims. Harvard is not entitled to a quick dismissal simply because it wants an "expeditious resolution". First, it has to overcome every element of my lawsuit as being devoid of legal validity and it has to overcome my request to amend the complaint which is pending before the state court prior to the stay order entered by Judge Gordon. If Harvard fails to achieve that, then I am entitled to employment of judicial process and to due process in moving the case forward through discovery, depositions, and then later on, through trial. In the meantime, Harvard is not entitled to an expeditious resolution if in fact the automatic stay applies to my case which is the right of every debtor who seeks protection under the federal bankruptcy code and if in fact I am entitled to an appeal of the denial of the automatic stay, among other things. Harvard seems to wants to be "above the law" and to not have to submit to the lawful exercise of my rights as afforded to me by law.]

e. Additionally, please note that there are several objectives intended by the bankruptcy code and the automatic stay provision. By simply quoting one or two of those objectives, Harvard is trying to ignore the fact that there are other objectives of the code intended as well such as: not dissipating the assets of the debtor or his estate, relieving the debtor of crushing financial pressures giving him a chance to reorganize or get on his feet, and giving the trustee time to investigate the matters related to the debtor assets including whether to ratify/join or abandon a pre-petition lawsuit, and protecting the debtor from having to engage in multi-forum litigation, etc.

   i. According to Maritime vs United Jersey Bank (3rd Circuit): "*The automatic stay serves several purposes. First, it gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions. Id. <u>The stay permits a bankrupt to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy.</u> Second, the stay protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors. Id. In other words, the stay "protect[s] the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors.*"

5

ii.   Moreover, in Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., (3d Cir.1982), it states: "*In explaining the purpose of the automatic stay, the House Report accompanying the Bankruptcy Reform Act of 1978 states: The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to <u>attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy</u>.*"

iii.   Moreover, when Congress authorized the new Bankruptcy code in 2005, "*Under the new Code, relief from a stay must be authorized by the Bankruptcy Court to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, <u>in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor</u>.*"

iv.   Similarly, Delpit v. CIR, 18 F.3d 768 (9th Cir. 1994) states: "*The automatic stay allows debtors, during the period of the stay, "<u>to be relieved of the financial pressures that drove [them] into bankruptcy</u>." Id. at 6297. Accordingly, Section 362 is "extremely broad in scope" and "should apply to almost any type of formal or informal action against the debtor or the property of the estate." 2 Collier on Bankruptcy ¶ 362.04, at 362-34 (15th ed. 1993) (emphasis added).*"

v.   In addition to protecting relative positions of creditors, the automatic stay is <u>designed to shield Chapter 7 debtor from financial pressure during pendency of bankruptcy proceeding</u>. (See In re Stringer (1988, CA9 Cal) 847 F2d 549, 17 BCD 1169, 19 CBC2d 233, CCH Bankr L Rptr P 72297.)

f.   Therefore, it is clear that "to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy" or "in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor" is one of the main objectives of the automatic provisions of the bankruptcy code and that clearly stated purpose is something that Harvard keeps ignoring. Harvard only wants to focus on the other purposes but ignore this one, when it is clear that Congress intended multiple purposes of the automatic stay. "To be relieved of the financial pressures that drives a debtor into bankruptcy" has nothing to do directly with creditors or an analysis of the rights of the

creditors. It also has nothing to do directly with the trustee's management of the estate. It has to with the debtor's financial situation. This means that Congress intended the automatic stay to protect or shield the debtor specifically from further financial ruin or distress i.e. pressure points that drove him into bankruptcy in the first place. It would be inimical to the intent of congress for a debtor to file bankruptcy, only to be made worse off than if he never filed bankruptcy at all. Bankruptcy was not intended to punish debtors or to be punitive for debtors. It was meant to be rehabilitative; it was meant to provide the debtor an opportunity to regain his financial footing or to reorganize his financial affairs so that he can improve his financial situation. Congress never intended for the bankruptcy process to drive a debtor further into financial ruin or despair. Hence, the automatic stay provision that deals directly with the explicit intent of congress to "relieve the debtor of the financial pressures that drive him into bankruptcy". This is also not only consistent with the clear meaning of the above words, it is also consistent with the spirit/context of what was intended by the code and it is also consistent with logic, equity and the interests of justice.

g. Harvard quotes Judge Posner's reasoning to buttress its argument but in doing so Harvard misconstrues the main idea behind Judge Posner's comments. This main idea is that "*given the freedom for the debtor or the trustee to prosecute the debtor's claims, an equitable principle of fairness requires a defendant to be allowed to defend himself from the attack without imposing on him a gratuitous impediment in dealing with an adversary who suffers no correlative constraint. In other words, the automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate*." This is taken from the Notes of Committee on the Judiciary, S.Rep. No. 989, 95th Cong., 2nd Sess., 82-83 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868.7. This clearly signals a concern about a scenario, where the plaintiff is able to make motions, move his case forward, etc., while the defendants' hands are tied behind their back without the ability to defend themselves. It is obvious that such a scenario would be manifestly unfair. Yet this does not apply to my situation or to what I am asking of the court. In my situation, I am seeking not to one-sidedly "tie the hands" of defendants specifically, but I am seeking to stay both my and the defendants' activities altogether at the same time for a discrete period of time until my discharge is complete or until the trustee has had a reasonable time to join the case.

h. The intent behind these 'Committee on the Judiciary" statements appears to be an attempt to balance the equities regarding a plaintiff-debtor who wants to continue to prosecute his

case against the defendants, but also wants to stop the defendants from defending themselves. This would not be fair. However, this is not the situation at bar. I am simply seeking to stay ALL litigation, both my side and the defendants side i.e. the whole thing. This creates no inequities for or prejudice to the defendants.

i.   Thus, being prevented from protecting their legal rights is not the same as allowing a stay based on the changing of the real party in interest, or based on assertion of counterclaims or based on hardship/extenuating circumstances or based on depletion of the debtor's estate.

j.   Harvard appears to be seeking a more hospitable forum via remand to state court as explained in previous motions. Yet even if the case is remanded, the state court cannot dismiss this case because it has to allow the real party in interest an opportunity to ratify or join the case, which is mandated by MRCP Rule 17 *("every action shall be prosecuted in the name of the real party in interest. No action shall be dismissed…. until a reasonable time has been allowed…for ratification of commencement of the action by, or joinder or substitution of, the real party in interest"*). So either way, whether this case remains in federal court or is remanded to state court, there will be no immediate resolution of any motion to dismiss until the trustee has been afforded a reasonable time to join/ratify the case. Harvard is sidestepping/ignoring the fact that there exists a change in the real party in interest. Harvard is acting as though the trustee as the real party in interest does not exist. Harvard is still treating me as if I am still the real party in interest.

k.   For clear confirmation of this, See Bostanian v. Liberty Savings Bank (Court of Appeal, Second District, Division 5, California,1997), which states: "*Under federal decisional authority, a <u>Chapter 7 debtor may not prosecute on his or her own a cause of action belonging to the bankruptcy estate unless the claim has been abandoned by the trustee.</u> (Griffin v. Allstate Ins. Co. (C.D.Cal.1996) 920 F.Supp. 127, 130; In re Price (Bankr.N.D.Ga.1994) 173 B.R. 434, 440; In re Davis (Bankr.N.D.Ind.1993) 158 B.R. 1000, 1002; Harris v. St. Louis University (E.D.Mo.1990) 114 B.R. 647, 648-649; see Vreugdenhil v. Hoekstra (8th Cir.1985) 773 F.2d 213, 215.). Federal Rule of Civil Procedure 17 (28 U.S.C.), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7017 (11 U.S.C.), requires that "[e]very action shall be prosecuted in the name of the real party in interest." <u>The trustee controls the bankruptcy estate, therefore, she or he is the real party in interest with standing to sue.</u> (Griffin v. Allstate Ins. Co., supra, 920 F.Supp. at p. 130; In re Davis, supra, 158 B.R. at p. 1002.)...absent*

8

*abandonment of the claim by the trustee, a debtor out of possession has no standing to prosecute a cause of action which has passed to the bankruptcy estate….we respectfully disagree with those cases which suggest (because the opinion fails to reveal the chapter under which the bankruptcy petition was filed) or hold that a Chapter 7 debtor has standing to continue to prosecute a pending cause of action which has become property of the estate…[T]he debtor may not pursue the cause of action on his or her own unless the cause of action has been abandoned by the trustee…it is the trustee who must prosecute the action, not the debtor."* SEE EXHIBIT 2

l. Hence, based on the above, it is clear that I cannot prosecute a case for which I am not really the real party in interest. The statute requires that every action be prosecuted in the name of the real party in interest. Allowing the real party in interest adequate time and opportunity to join the case does not prevent Harvard or anyone from defending themselves.

3. Harvard also states*: "Mr. Slavenskoj is entitled to defend himself against the Plaintiff's claims notwithstanding the Plaintiff's bankruptcy. Martin-Trigona, 892 F.2d 578; Getty Petro. Mktg., Inc., 2012 U.S)."* My response is:

   a. Mr. Slavenskoj is entitled to defend himself but he did not have to assert a counterclaim. He certainly has the right to assert a counterclaim but a counterclaim is not a defense. Moreover, though he is perfectly entitled to assert a counterclaim, that assertion of a counterclaim entitles me to application of the automatic stay.

   b. The assertion of a counterclaim triggers operation of the automatic stay provision. Its impact is far reaching; and the rule operates to restrain, without application by the debtor, the commencement or continued prosecution of any proceeding directed against the debtor or his property. The provision is not without its limitations, however. The rule cannot abridge or modify any substantive right. (See 28 U.S.C. § 2075; In re Williams, 422 F.Supp. 342, 344 (N.D.Ga.1976)). It can, nonetheless, operate to defer the exercise of a given right, particularly where equity requires it. (See Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.). This means that the stay does not take away the right to defend himself but the stay only the defers the exercise of the right.

   c. Harvard cites certain cases but only give part of the picture. Yet these same cases show that there are exceptions to Harvard's argument. See Martin-Trigona citing In re Critical Fork Coal Co., 18 B.R. 422, 424 (Bankr.W.D.Va.1982): *"It holds that costs incurred by the*

*bankrupt in a lawsuit that he prosecutes after entering bankruptcy are post-petition debt and hence require the permission of the bankruptcy court to incur, 11 U.S.C. § 364; from which the court concluded that there can be no proceedings in the case — it must in other words be stayed — without judicial authorization.*"

d.  It is one thing to defend oneself but it is quite another thing to assert counterclaims of abuse of process. In fact, it could be argued that Slavenskoj has not sought to merely defend himself. If that was his intention, he would have filed a Rule 12b motion to dismiss or filed an Answer. No. Instead what Slavenskoj did was use an obscure statute to prosecute counterclaims by asserting that I myself did something wrong against him or interfered with his rights and he in fact is the victim. He employed a special statute that would allow him to assert that I was attempting to deprive him of his rights, that I invaded his rights, that I retaliated against him causing him harm and that I essentially committed an abuse of process and other wrongdoing.

**B. HARVARD HAS MISCONSTRUED WHAT THE ANTI-SLAPP MOTION IS. AN ANTI-SLAPP ACTION IS A COUNTERCLAIM OR IS AT LEAST AN "ACTION OR PROCEEDING AGAINST A DEBTOR" WITHIN THE MEANING OF SECTION 362.**

4.  Harvard further states that *"There are no counterclaims pending against the Plaintiff. The Plaintiff's argument that responsive pleadings to his amended complaint could carry with them counterclaims is speculation which cannot alter the treatment of his prepetition claims under § 362. The Plaintiff further makes much of pro se Defendant Mr. Slavenskoj Slavenskoj's special motion to dismiss pursuant to the Massachusetts Anti-SLAPP statute, M.G.L. c. 231, § 59H, see Mot. at 11, which Mr. Slavenskoj filed in the Massachusetts Superior Court prior to Plaintiff's Notice of Removal to this Court. Plaintiff's assertion that this motion is actually a "counterclaim" because it could result in the imposition of attorney's fees and costs is unsupported by law or logic."* My response is as follows:

5.  Harvard's argument here betrays a fundamental misunderstanding of my position and of what the anti-slapp special motion is. The anti-SLAPP suit statute was intended to encourage participation in public interest matters and avoid the chilling of such participation through "abuse of the judicial process." The anti-slapp motion is a counter-action against the non-moving party, who brought a lawsuit (against the moving party bringing the special motion) in retaliation for petitioning activity by the moving party, and is essentially an action alleging an abuse of process or wrongdoing committed by the non-moving party who brought the lawsuit.

10

6. Therefore, I am being accused of abuse of judicial process. In filing the antislapp motion, Mr. Slavenskoj is saying that "I abused the judicial process", instead of simply saying that "I have no case". These are accusations that I sought to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances and that I sought to deter a citizen from exercising their right to petition or to punish them for doing so or to intimidate an opponent's exercise of petitioning rights. These are all elements of a counterclaim of wrongdoing. Thus, an Anti-SLAPP action is an abuse of process tort claim. It is purportedly "based on Mr. Slavenskoj's petitioning activity" because he supposedly believes that the activity of my filing a lawsuit against him is itself an illegitimate abuse of process. His anti-slapp motion is also an injunction against me and this evidenced by the fact that the motion carries with an automatic stay on all discovery and prevents me from obtaining any discovery against the defendant that could help me prove my case. The anti-slapp action involves procedures, legal arguments and pleadings (that I now have to research myself or pay a lawyer for) that have nothing to do with Mr. Slavenskoj defending against my actual claims. The things I would have to do to defend against an abuse of process claim, I now have to do to defend against an anti-slapp action.

7. So, I am required to defend myself against these charges, spending time and resources to prove that I did not commit the wrong doing of abuse of process and that my claims are not retaliations intended to stop free speech before a government body.

8. Furthermore, there is a burden-shifting mechanism contained within the anti-slapp statute which essentially puts me in a defensive posture and the concomitant automatic award of attorney fees and costs creates recovery on a claim. If none of this makes the anti-slapp action a claim or counterclaim (however much it might be in disguise) then I don't know what will. (See Halmar Robicon Group, Inc. v. Toshiba Int'l Corp., 127 Fed. Appx. 501, 503 (Fed. Cir. 2005) (automatic stay [operates] as against actions in which debtor is in *defensive posture*) emphasis supplied.)).

9. It well-settled that "counterclaims against the debtor are generally barred". Moreover, in Koolik v. Markowitz, the court held that: *"[S]ince a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than is a plaintiff who is awarded judgment on a claim asserted in the complaint, we construe the term 'action or proceeding'... to include any pleading that asserts a claim on which relief is sought. In this way, the Second Circuit held that an answer that asserts a counterclaim against a plaintiff that becomes a bankruptcy debtor is an "action or proceeding against the debtor" within the meaning of 11 U.S.C. section 362(a)(1), regardless of whether the plaintiff initiated the lawsuit."* Please note that Koolik v Markowitz states that the definition of a

counterclaim is any pleading that asserts a claim on which relief is sought and this by definition is an action or proceeding against the debtor.

10. Even if, assuming *arguendo*, the anti-slapp motion could be parsed out to NOT technically be a counterclaim (on which I disagree), then it is without dispute that the anti-slapp motion is an "action or proceeding against a debtor". This is the key thing because it is the fact that the motion is "an action against the debtor" that actually triggers the automatic stay provisions of the code. So whether we call it a counterclaim or not, it still causes the automatic stay to apply within the meaning of section 362.

11. Please note that a defendant's motion or pleading by itself made in the context of a plaintiff-debtor's lawsuit, can be "an action against the debtor". It need not be a separate lawsuit or proceeding unto itself. (See Howell v. Brozzetti, 240 A.D. 2d 794 (3rd Dep't1997) stating that "*An answer in an action that asserted a counterclaim against a plaintiff that subsequent to the commencement of the suit became a debtor under the Bankruptcy Code, is an "action or proceeding against the Debtor" and subject to the automatic stay, even though the Debtor commenced the suit*." If the pleading of an Answer with a counterclaim can be an action against a debtor, then therefore, the anti-slapp motion by Defendant Slavenskoj by itself is an action against me as the plaintiff-debtor, within the mean of the section 362).

12. Ironically, this anti-slapp motion is itself a SLAPP suit/action against me intended to deter me from my petitioning activity. Mr. Slavenskoj is not a corporation. He did not petition the government and there is no government body involved. By any means his anti-slapp claim is frivolous and intended to harass me and deter me and increase the cost and burden of litigation for me. It was as strategic decision for him to use the statute's automatic stay on discovery to prevent me from gaining discovery from him as it relates to him and other defendants. Mr. Slavenskoj told me specifically that the users of the website in question have contacted him expressing serious concern about the revealing of their identities. Thus, Mr. Slavenskoj has misused this statute. Nonetheless by seeking to do this, he has accused me of wrongdoing and falsely so. He has twisted the purpose of the statute on its head to do exactly to me what the statute was intended to stop. I, as a person of little means and resources, could in no way be the perpetrator of an SLAPP action (which is intended for very narrow circumstances which do not apply to me or this case).

13. In applying the procedural mechanisms of the statute, Mr. Slavenskoj is allowed to significantly interrupt my ability to pursue all of my claims and to stay discovery on all my claims until or unless the Superior Court denies the motion.

14. Please note that Harvard "coincidentally" benefits from the blocking of discovery from Mr. Slavenskoj and the website but yet Harvard wants to move forward its defense against me with essentially having my hands tied behind my back. This would be manifestly unfair and seems to be calculated for unjust tactical advantage.

15. Furthermore, it would be absurd to allow Mr. Slavenskoj to benefit from an automatic stay prohibiting me from conducting discovery while at the same time deny me the benefit of the automatic stay based on it being a counterclaim against me as the debtor.

16. Please note that many courts across the nation are finding that anti-slapp motions are being used in the exactly the same way that SLAP lawsuits are used…to delay litigation, and discovery, and tie up resources of the Plaintiff with frivolous use of the anti-slapp motion. The anti-slapp motion has become a paradoxical form of vexatious litigation where the anti-SLAPP action is used as an effective-counter-action against a plaintiff's use of judicial processes themselves, by accusing the plaintiff of an affirmative act of wrongdoing, namely intimidating or punishing an opponent. Mr. Slavenskoj's purpose in using this motion is to use it as a counterclaim or a counter-action.

## C. DEFENDANTS SLAVENSKOJ ATTEMPT TO SEEK A MANDATORY MONEY AWARD AGAINST ME IS A COUNTERCLAIM OR AT LEAST AN ACTION AGAINST A DEBTOR THAT EITHER TRIGGERS OR VIOLATES THE AUTOMATIC STAY

17. Filing a bankruptcy petition causes an automatic stay of all court proceedings and other acts to collect pre-petition liabilities from the debtor. Pursuant to 11 U.S.C. section 362(a), the filing of a bankruptcy petition stays *(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;….and(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.* In my case, 1) the acts alleged against me, via Mr. Slavenskoj's anti-slapp motion, occurred prepetition. 2) The motion or action by Defendant Slavenskoj's seeks to recover a claim. 3) The motion or action seeks to employ process of a judicial proceeding against me as the plaintiff-debtor.

18. The automatic stay applies to almost any type of formal or informal action against the debtor or the property of the estate. Therefore, it applies to the special motion action regardless of whether it is a formal separate proceeding or whether it is subsumed within another proceeding.

**19.** By electing to file an action under this special statute, Mr. Slavenskoj knowingly and purposefully is seeking to collect, assess and recover a claim with a monetary award against me for alleged acts that occurred pre-petition.

**20.** According to this statute, a money award is awarded automatically to the anti-slapp filer in order to deter the party who brought the legal action from bringing similar future retaliatory lawsuits. The attorney's fees award is designed to reimburse the costs of defending an improper legal action. This is not a contract-based award of prevailing party attorney fees. It is an automatic statutory award of fees in the act itself of filing the motion. The fees are not awarded for conduct I engaged in post-petition. It is awarded for conduct I allegedly engaged in pre-petition i.e. I am being accused of wrongdoing in bringing an improper legal action in retaliation or as a retaliatory lawsuit. Mr. Slavenskoj has asserted that I engaged in retaliation or I sought to muzzle his free speech or that I have sought to engage in some kind of wrongful purpose against him. Given that Slavenskoj is pro se, it is evident that the actual language used on his special motion intends to assert counterclaims. And no matter how frivolous the motion may be, I now have to defend against the merits of Mr. Slavenskoj's charges of retaliation/wrongdoing that have nothing to do with my claim against him.

**21.** According to the legal dictionary, a claim is defined as: "*1) v. to make a demand for money, for property, or for enforcement of a right provided by law. 2) n. the making of a demand (assert a claim) for money due, for property, for damages or for enforcement of a right*." A counterclaim is defined as "*A claim by a defendant opposing the claim of the plaintiff and seeking some relief from the plaintiff for the defendant*." (See http://legal-dictionary.thefreedictionary.com/claim).   Mr. Slavenskoj in his special anti-slapp action has made a legal assertion and demand for money (which makes it a legal claim) and he has used it in the context of opposing my claim against him and he is seeking relief against me as the plaintiff.  This clearly meets the criteria for being a claim/counterclaim.

**22.** Any action taken to collect money or money damages that is pending in a non-bankruptcy court, becomes a claim for bankruptcy purposes. See In re Meyertech Corp., 831 F.2d 410, 417-18 (3d Cir. 1987) (A suit for damages pending against a debtor in a non-bankruptcy court when the debtor files his petition, becomes a "claim" for bankruptcy purposes....without any final determination of the action by the non-bankruptcy court.).

**23.** The automatic stay serves several purposes. It gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions. Mr. Slavenkoj's motion is a collection effort and a harassing action intended to force me to defend against such claims.

**24.** If fees and costs are collected from me by Mr. Slavenskoj, it would undermine the purpose of the protections afforded by the bankruptcy code. For example, what if his fees are $30,000, $40,000 or $50,000? That will completely devastate me as a plaintiff-debtor.

**25.** Moreover, it is well-settled that the seeking of an award of costs against a debtor in bankruptcy, without permission of the bankruptcy court, is in fact a violation of the automatic stay. This is further confirmed by Judge Jones of the 9th circuit when he stated that: "*Even though Gordon may have believed in good faith that seeking an award of costs was not a violation of the stay, a broad application of In re Goodman dictates that it is.*" Note also that in In re Merrick (BAP 9th Circuit (1994)), Judge Jones found that: "*[At] the moment the bankruptcy petition was filed, any further action on a pending motion for pre-petition costs constituted a violation of the stay. The subsequent hearing on the motion and award of fees was a violation of the stay. See 11 U.S.C. § 362(a)(1).].*" These examples clearly contradict Harvard's argument that "*another district court noted the lack of any precedent that even implies that the imposition of attorney fees and costs should be a factor in calculating whether debtor's suits should be stayed during a bankruptcy.*" This is a recurring problem with Harvard's arguments i.e. they at times either misquote the cases they cite or they cherry-pick quotes from a case that support their point but ignore statements *made in that same case* that support my point or contradicts their argument. This illustrates another example why this court should take with a grain of salt any quotes or citations made by Harvard defendants and to scrutinize these references to ensure consistency with their claims.

**26.** Furthermore, there is another key point that Harvard misses in its argument and it is the fact that the mandatory nature of the award of the fees and costs adds further ammunition in conclusively treating the anti-slapp motion as a violation of the automatic stay because the mandatory nature of the award makes a difference in assessing whether the act is an attempt to collect, assess or recover on a claim. See Goodman: In re Chateaugay Corp., 920 F.2d at 187. (The primary difference between proceeding on the basis of the language of § 362(h) on one hand, and civil contempt on the other, is the mandatory nature of an award of damages as to the former compared to the permissive nature of such an award under the latter. Pursuant to § 362(h), an individual injured "shall" recover damages; pursuant to civil contempt, whether damages shall be awarded is discretionary. *This distinction makes a difference in this case* because the bankruptcy court in deciding not to award damages observed that in its view, the violation was "not [sufficiently] egregious" to justify damages). (Emphasis added)

27. The BAP of the 9th Circuit found that the award of fees was in violation of the automatic stay. See In re Merrick (BAP 9th Circuit (1994)) ("*We note that the state court...also granted him an interest in the total costs awarded to all of the defendants, and that these costs were awarded postpetition. Assuming these costs were awarded in violation of the automatic stay...*).

**28.** Moreover, an anti-slapp action against a debtor creates the likelihood that the debtor's estate will be divested of some (if not all) of its assets, if in fact the anti-slapp motion is successful with its automatic award of a money judgement of attorney fees and costs. This is a potential disruption of the administration of the estate and it is precisely the kind of thing that section 362 was designed to prevent. See Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., (3d Cir.1982) (*The potential disruption of the administration of the bankruptcy estate that would be caused by the Association's success in its cross-appeal is precisely the result section 362 was designed to prevent. Since it would be unwise in the circumstances of this case, to stay only one of the two appeals before us, we thus stay both.*)

**29.** Mr. Slavenskoj is attempting to put me in a defensive posture to answer charges of wrongdoing and abuse of process and to collect payment of an automatic money judgment attorney fees and costs. Please note that an automatic award of money under the Massachusetts anti-slapp statute is a different thing than a sanction under Rule 11 (i.e. a Rule 11 sanction is discretionary and need not be a money award).

**30.** The automatic stay is triggered whenever there is an attempt by a party "to exercise control over property of the estate," § 362(a)(3). It is most likely that a contention by a defendant that the debtor owes the defendant fees and costs can be equated with exercising dominion or control over property of the estate.

**31.** Subsection 362(a)(6) uses very broad language and courts generally construe the automatic stay provisions broadly. It applies to formal or informal proceedings against a debtor and it stays "any act to collect, assess, or recover a claim against the debtor that arose before [the filing of the petition]." The attempt to seek money award of fees and costs through an anti-slapp action is an attempt to collect, assess or recover against the debtor. (See Morgan Guar. Trust Co. v. American Sav. And Loan (9th Circuit) (1986). See also, e.g., Coben v. Lebrun (In re Golden Plan of California, Inc.), 37 B.R. 167, 170 (Bankr.E.D.Cal.1984); Wallingford's Fruit House v. Inhabitants of the City of Auburn (In re Wallingford's Fruit House), 30 B.R. 654, 659 (Bankr.D.Me.1983).)

**32.** These provisions stay acts that immediately or potentially threaten the debtor's possession of its property: commencement of judicial proceedings; enforcement of judgments; creation and

enforcement of liens; and setoffs of debts owing to the debtor against claims against the debtor. 11 U.S.C. §§ 362(a)(1), (2), (4), (5), (7) & (8). The activities that are specifically prohibited all involve attempts to confiscate the debtor's property or require the debtor to act affirmatively to protect its interests. It is clear that Mr. Slavenskoj's antislapp motion is an act that requires me to act affirmatively to protect my interests. The anti-slapp action with its attempt to collect an automatic money award interferes with the orderly administration of the estate, the debtor's "breathing spell," and the status quo.

33. The automatic stay prohibits any action that would inevitably have an adverse effect on property of the estate. (See In re Prudential Lines, Inc., 119 B.R. 430 (S.D.N.Y.), aff'd, 928 F.2d 565 (2d Cir.), cert. denied, PSS S.S. Co., Inc. v. Unsecured Creditors, 502 U.S. 821 (1991)). It is without dispute that this anti-slapp action would have an adverse effect on the debtor's estate.

## D. DUE TO THE INTERRELATEDNESS OF THE CLAIMS AGAINST ALL DEFENDANTS, THIS CASE SHOULD NOT BE FRACTIONALIZED. THE COUNTERCLAIMS ASSERTED REQUIRES THAT A STAY BE APPLIED TO ALL DEFENDANTS.

34. Harvard argues that: *Regardless, even were there merit to the Plaintiff's contention that Mr. Slavenskoj's special motion to dismiss constituted a counterclaim against him subject to the automatic stay, the appropriate resolution of the matter would be to stay only that "counterclaim" against the debtor while permitting the remaining claims to proceed. See Pinpoint IT Servs., 491 B.R. at 195; see also Austin v. Unarco Indus., Inc. "* My response is:

35. Contrary to Harvard's assertion, if the anti-slapp motion constitutes a counterclaim subject to the automatic stay, the appropriate resolution is to stay the entire proceedings.

36. Additionally, Harvard should be judicially estopped from making the argument that their case should move forward even though Mr. Slavenskoj asserted a counterclaim because they previously in their motion to lift the stay in state court and in their motion to remand in federal court, Harvard stated that there is no stay because there are no counterclaims. They won prior rulings based on using that position. They, however, apparently did not at the time take into account the fact that counterclaims had been asserted by Mr. Slavenskoj. Hence, they cannot now change their position because the facts do not suit them. Judicial estoppel assures that *"[a] party who has successfully maintained a certain position at a trial cannot in a subsequent trial between the same parties be permitted to assume a position relative to the same subject that is directly contrary to that taken at the first trial.*" See Paixao v. Paixao, 429 Mass. 307, 309, 708 N.E.2d 91, 93 (Mass. 1999) citing Gordon v. Lewitsky, 333 Mass. 379, 381, 131 N.E.2d 174 (Mass. 1955); see also Lydon v. Boston

Sand Gravel Co., 175 F.3d 6 (1st Cir. 1999). Judicial estoppel will apply where the party to be estopped was successful in its first assertion of its inconsistent position. See Paixao v. Paixao, 708 N.E.2d at 93.

37. Citing judicial economy, the Federal Circuit in Robert Tyer & Assocs., Inc. v. Envtl. Dynamics, Inc., expressed "discomfort with staying one while allowing the other to proceed with respect to closely related issues." Another issue significant to the court was that granting appellate review of the debtor's claims would require it to consider issues that were the subject of a stay mandated by statute. For these reasons, the court stayed all claims at issue in the debtor's appeal.

38. By staying the portion that relates to Mr. Slavenskoj, it would prevent me from gaining discovery from Mr. Slavenskoj, which is critical to (for example) determining or confirming the true identities of various anonymous/pseudonymous actors on the school-affiliated website that Mr. Slavenskoj manages, which I have reason to believe include the Harvard defendants. Similarly, I certainly cannot ascertain the true identities of John and Jane doe defendants without such discovery. My complaint states that Mr. Slavenskoj operated a website as a school-affiliated website under the control and guidance of the Harvard defendants and conspired with these Harvard employees to discriminate/retaliate against me. Mr. Slavenskoj portion of the case is thus a critical part of the entire case. Mr. Slavenskoj is the lead defendant in this case.

39. Separating out Mr. Slavenskoj's action or portion of my lawsuit will create prejudice to me if I had to separate my claim against Mr. Slavenskoj and his claim against me. The interrelatedness of my case against Mr. Slavenskoj and my case against Harvard/the other defendants support the need to keep everything in one proceeding. This promotes judicial economy and conserves the resources of the court because many of the issues that will be raised in a proceeding against Harvard will be raised again in a proceeding against Mr. Slavenskoj. Without the stay, there will be needless duplication of proceedings in state and federal court. There will be undue prejudice to me if the Harvard portion of the lawsuit is allowed to continue while Mr. Slavenskoj's portion is stayed.

40. There is also the uncertainty of the course each proceeding may take. i.e. it could lead to inconsistent results. Harvard case could move forward and be disposed of in summary judgment but then Mr. Slavenskoj case moves on thereafter only to find through discovery that Harvard defendants were in fact anonymous/pseudonymous users consorting with Mr. Slavenskoj in the commission of tortious acts. Only Mr. Slavenskoj can reveal the identities of the users of the site who have committed these tortious acts. Without Mr. Slavenskoj, the remainder of the case is "up in the air" and could lead to inconsistent, unjust or bizarre results.

41. Moreover, why is Harvard defending the actions of Mr. Slavenskoj since Harvard has stated that Mr. Slavenskoj is not legally represented by Harvard's counsel? Yet Harvard takes a special interest in trying to make helpful arguments for or on behalf of Mr. Slavenskoj. This wreaks of double-speak. Harvard has clearly taken on the task (howbeit in a surreptitious manner) of helping Mr. Slavenskoj in making arguments to help him as a pro se defendant because Harvard knows that if Mr. Slavenskoj is found liable, Harvard could also be found liable (i.e. Harvard did nothing, in deliberate indifference to my concerns raised, and Harvard controlled and facilitated the website as a school-community web forum).

42. If Harvard wants to defend Mr. Slavenskoj or help Mr. Slavenskoj in his defense, then Harvard should disband with the pretense that Harvard is not inextricably tied to Mr. Slavenskoj. Also, if Harvard wants to maintain its distance from Mr. Slavenskoj, then Harvard should allow Mr. Slavenskoj to speak for himself as the defendant who brought the anti-slapp motion. Given Mr. Slavenskoj pro se status, it is within the realm of possibility that Mr. Slavenskoj intended or intends to file an outright abuse of process or malicious prosecution counterclaim. Harvard needs to stop speaking on behalf of defendants that it claims it does not represent. This is manifestly unfair. Harvard wants to distance itself from less than desirable pro se defendants, disowning the tortious actions they have taken, while also attempting to provide legal assistance and arguments to help these defendants with their pro se defenses. Harvard's attempt to defend Mr. Slavenskoj shows how critical Mr. Slavenskoj's role and connection to Harvard is and why Mr. Slavenskoj's portion of the lawsuit can't be stayed by itself while allowing Harvard's portion to move forward. This would lead to a bizarre, unfair, contradictory result and one that would prejudice the fair administration of justice. Harvard is inextricably tied to Mr. Slavenskoj and Mr. Slavenskoj to Harvard as it pertains to this matter. I cannot prosecute my case against one without the other.

43. Moreover, this would create undue hardship on me as a plaintiff as I would be forced to essentially try to separate cases and then reduplicate costs and efforts in first addressing Harvard's case and then Mr. Slavenskoj's case. Harvard cannot have it both ways. It was all just fine with Harvard when the state court applied its stay rulings to the entire lawsuit but now, when it suits Harvard, it wants the court to apply its stay rulings to only one defendant, Mr. Slavenskoj. Without discovery, it would be unfair to apply the stay rulings to only one defendant at this early stage of the case.

44. Lastly, but no less significant, please note that Harvard has asked for Rule 11 sanctions in its motion to dismiss filed in state court. This also raises the issue of Harvard asserting a counterclaim based on the filing of my lawsuit because Harvard was seeking a discretionary money award from

the state court. This shows that Harvard itself was seeking to assert a claim against me as well. Also, Harvard cannot say there are no counterclaims because the time for formal pleading of counterclaims has not come as yet. This is a unique situation because in many instances like this, the answer has already been filed in the case where there is no question as to whether a counterclaim has or could be filed.

45. Following Harvard's cue, Defendant Vedaa has also threatened Rule 11 sanctions in similar fashion based on the form and style of my pleadings.

46. Given the number of claims, counterclaims, award of sanctions, award of money, being sought by multiple defendants, all of which have put me in a defensive posture, the proper result here is to stay all proceedings at this juncture. Otherwise, any other result would produce near anarchy when the only discernible organizing principle (for those defendants seeking a money award from me via sanctions, counterclaims or special motions, etc.) would be first-come-first-served. See Matter of S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987).

## D. HARVARD WANTS TO BE ABLE TO ATTACK ANY ADVERSE RULINGS IN THIS CASE BASED ON THE FACT THAT I AM NOT THE REAL PARTY OF INTEREST I.E. CIVIL DOUBLE JEOPARDY

47. Additionally, Harvard is seeking to play a game of civil "double jeopardy". They would like for me to continue to proceed with my case and if there are any adverse rulings, it can then reserve the right to challenge the ruling on the grounds that I was not the real party in interest. The purpose of FCRP Rule 17 (and MCRP Rule 17) is to protect parties from this double jeopardy scenario and to prevent defendants from playing both sides of the fence, so to speak.

48. This is why it is imperative that the real party in interest be given ample opportunity to join the case and why I should not be forced to make substantive legal arguments related to the prosecution of this case because the defendants can take a second bite at the apple. They have shown a penchant for doing so, when they successfully took a second "bite at the apple" in state court regarding Judge Gordon's ruling twice regarding the automatic stay.

49. *NB:* In the Fed. R. Civ. P. 17 advisory committee's note (1966)…*it states that the modern function of the Rule is to "protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Id. Essentially, the rule is meant to prevent "double dipping" by both the real party in interest and the underlying plaintiff on whose behalf the real party in interest may act.*

**D. HARVARD AGAIN MISCHARACTERIZES THE FACTS. MY MOTION DOES NOT MERELY SEEK DELAY AND IS NOT BURDENSOME.**

*50.* Harvard finally states that: *"Since Harvard moved to dismiss the Complaint in the Superior Court, instead of opposing that motion, Plaintiff removed the matter to this Court and has since filed nine separate motions and briefs totaling 115 pages (227 including exhibits) in this Court, as well as a purported interlocutory appeal to the First Circuit, all while insisting that he requires a stay of these proceedings because he has too many other demands on his time. The effect is further delay. It is also increasingly burdensome to the Harvard Defendants...".* My response is as follows:

*51.* Harvard apparently does like or want me to avail myself of my legal rights. Harvard should be the only one to do so. So when Harvard wants to remove plaintiff cases initiated in state court to federal court, it can do so with no questions asked because it has a right to remove cases under section 1441. Yet, when I exercise my right to remove a plaintiff case initiated in state court to federal court under section 1452, there is much consternation, recrimination, suspicion, chiding, and "gnashing of teeth". The double standard here is incredible.

*52.* So to put this issue to bed once and for all, please note that the following case law demonstrates clearly the remedies available upon entry of an adverse state court decision pertaining to the automatic stay: *"When a New York State court rules the stay inapplicable, the debtor has two remedies available: The debtor (i) "could have sought a stay of the decision pending appeal" (See CPLR 5519 [c]; cf. CPLR § 460.50), or (ii) "sought relief in Federal Court or the Bankruptcy Court in which he filed his petition." Skripek v. Skripek, supra; see also In re AUFCMP Church, 184 B.R. 207, 216 (Bankr. D. Del. 1995).".* This shows that it is perfectly reasonable and expected that if a plaintiff-debtor encounters an adverse decision pertaining to the automatic stay, he can either appeal the decision in state court or he can remove the case to federal court or bankruptcy to seek relief. It is clear that I as a plaintiff-debtor did not have to take as final Judge Peter Lauriat's decision regarding the automatic stay. It is my absolute and undeniable right to seek intervention of the federal court or bankruptcy court to determine the applicability of the automatic stay, no matter how much Harvard would wish that I did not have that right. And every attempt by Harvard in the past or going forward to cast aspersions upon my decision to seek relief in federal court on this issue should be met with utter rejection and treated as an attempt at hypocritical grandstanding.

*53.* It is well-settled that federal courts have the final authority to determine the scope and applicability of the automatic stay. So again, because federal courts have final authority to decide such issues, I

should not be criticized, attacked, mocked or have my motives called into question simply for exercising that right.

54. [NB: Harvard is being disingenuous and misleading when it states that I filed nine motions in federal court with the implication that all of these motions were attempts at delay or require significant time. So to set the record straight, please note that out of the nine so-called motions that I filed in federal court, one was a motion to waive filing fees, one was a motion to waive appellate fees, one was a motion of notice of change of address, one was a motion for permission to file documents by ECF, another was a motion to cover costs of copying and transferring the state court documents to federal court, one was a correction to request permission to exceed 20 pages, one was a replacement of a motion for which I neglected to include exhibits. Most if not all of these motions are short and quick administrative type motions. So it is misleading for Harvard to create a false picture that these were all substantive type motions and not simply minor/short administrative or corrective type motions which is required in order to meet the basic obligations of my appearance in this court until as such time that the trustee or an attorney is able to take over. I am simply discharging my duties as a plaintiff-debtor who has an obligation to maintain the status quo until the trustee takes over. If anything, the requirement that I discharge these basic administrative duties, on top of dealing with any substantive motions or oppositions from the defendants, is a further argument for why there needs to be a stay until the trustee takes over. Yet Harvard has found a way to chide me for discharging these basic duties including filing a change of address, a motion to file documents by ECF, a motion to transfer files from state court and a motion to waive filing fees, etc.]

55. Regarding the few actual motions that I filed that actually pertain to requests to this court for a stay, I have done these in an attempt to preserve the status quo in order to allow the trustee to take over or to allow for my bankruptcy discharge to first be completed. As I have said before, it is not clear to me whether I even have "standing" to engage in any activity that relates to moving the case forward. My understanding is that only the real party in interest, who is the bankruptcy trustee, has the authority to engage in substantive motion practice and legal argumentation to move the case forward. Furthermore, the trustee as the real party in interest is better equipped to make those legal arguments rather than require me as a pro se plaintiff-debtor to respond to the sophisticated legal arguments made by Harvard in its 166-page motion to remand.

56. So my request for a stay has been largely due to a changing of real party in interest. Therefore, my understanding is that I cannot prosecute this case because it is not my case unless or until the

trustee abandons it to me. If I try to prosecute this case on my own, I would be in violation of the fact that the real party in interest has changed. Moreover, I am not seeking a breathing spell from prosecution of my own case. I am seeking a breathing spell to allow time for the real party in interest to prosecute the case.  Once the trustee takes up the case, there will no more concern about delay. All I am asking is to give the trustee a chance to join/ratify the case which is mandated by Fed. Civ. Rule 17. Yet Harvard wants to move this case to state court before the trustee has a chance to join the case. But still, even if this case moves back to state court, the state court still has to allow the trustee an opportunity to join the case before dismissing it, so what Harvard is asking (i.e. to deny the stay so that it can be remanded to state court so that it can be quickly dismissed in state court) is futile. If I simply stop prosecuting this case, the law requires that neither the federal court nor the state court dismiss a case in which the real party in interest has changed until it has granted that new party in interest a reasonable time to join the case.

57. Harvard has gone to great lengths to try to misconstrue the basis for my request for a stay by failing to include points I made including a stay due to counterclaims and a stay pending appeal, etc.

58. Please note also that a short-term stay is not burdensome to the defendants neither is allowing the real party in interest a reasonable time to join the case as mandated by Rule 17. This is in fact a lawsuit so dealing with the rules and the law that afford me certain rights might be a nuisance or annoyance to Harvard but it is not burdensome in the traditional meaning of the word. Moreover, how much of a "burden" can I be as a lone pro se plaintiff against the $40 billion Harvard corporation, one of the most powerful corporations on the planet. When one thinks about it, this is really ridiculous for Harvard to make such an assertion and it again smacks of the whiny elitist disdain that has characterized much of Harvard's arguments to date.

59. Harvard misunderstands or misconstrues the fact that, even if I did not have any schedule conflict with work commitments, I would still be entitled to a stay based on the automatic stay and based on the need to give the trustee time to join the case, and based on the assertion of counterclaims, as well as based on the right to appeal the denial of the automatic stay among other things. Harvard misconstrues my argument to be ONLY about previous conflicting demands on my time.

60. The key point is that the trustee is more equipped as a lawyer to make legal arguments and so I would have an interest in ensuring that the trustee is allowed to join the case in order to make such arguments. Also, if the trustee abandons the case, I still need a short period of time to complete my bankruptcy and also thereafter to find a lawyer or to amass enough resources to secure legal aid.

61. Beyond that if I am entitled to application of the automatic stay, then I would like to assert that right especially if I will have to defend against counterclaims.

62. [NB: In reference to Harvard statement that I did not oppose the motion to dismiss, please note for the record that I did oppose Harvard's motion to dismiss and this is certified in state court. But immediately after I opposed Harvard's motion, the case was stayed. (See state court docket). After the case was stayed, Harvard's counsel indicated issues with receiving my mail (under rule 9A). But the court clerk stated that nothing more was to be filed or served because of the judge's stay order so I did nothing further as instructed by the court. So literally everything came to a halt with Judge Gordon's stay order. I spoke to the superior court clerk at the time and she told me that once the proceedings resume after my bankruptcy discharge, then all outstanding issues, motions and oppositions, etc., will be will be taken up and sorted out at that time. She even went as far as to say that the court will ask what motions or issues have since been resolved and that the court will reconfirm what motions still need to be heard given the hiatus with the stay. Please keep in mind that there has not even been a case management conference that has taken place with this case as it is still in its infant stages procedurally. However, please note that the state court record shows that Harvard's motion to dismiss was opposed. So it is inaccurate to say the motion was unopposed.]

63. Within my various motions and oppositions submitted to the state court, I have asked for leave of court to amend the complaint so that it is pleaded with more specificity. The court will not dismiss this case on stylistic grounds (as Harvard has charged) because of lack of sufficient specificity, when I have clearly and reasonably asked the court to amend the complaint in order to address any specificity issues. No court will deny my motion to amend and it is wishful thinking by Harvard to presume otherwise. At one point during the state court proceedings, I even asked the defendants for agreement on my doing an amendment but they refused to agree i.e. it appears that they do not want a true adjudication on the merits but that they want a technical legal outcome that avoids any assessment by the court of the evidence, testimony and discovery that will reveal liability on the part of the defendants. They don't even want to answer the complaint because they don't want to be in a position to have to address my charges. I guarantee this court that when I get to put on evidence, I will prove my case as I have witnesses, audio/video-recordings, transcripts, emails, and other hard evidence that shows that Harvard and its employees are liable for wrongdoing alleged in my complaint. I have hard evidence of discrimination/retaliation based on race and religion, among other things. I have irrefutable evidence that will prove lying, deception and scheming by Harvard administrators in their attempts to discriminate, retaliate and defame.

64. My only concern has been my standing to pursue this case given the switching of the real party in interest due to my chapter 7 bankruptcy filing and the applicability of the automatic stay (as recognized by Judge Gordon) until discharge of my bankruptcy case. I am not afraid of the Harvard defendants because I have the truth on my side and one way or another the truth will come out whether through me or through the trustee with my assistance. However, I am concerned about: a) ensuring that I have a fair chance at having my case prosecuted properly, b) having the correct or proper forum to hear my case and c) having the right due process and conditions/resources for the truth to come out in full force. I believe the proper or correct forum is the federal court and the right conditions/resources involve allowing the trustee time to ratify/join or abandon the case and/or allowing me to complete my bankruptcy discharge first over the next couple of months.

65. [NB: I don't have counsel representing me on this case and I am not a lawyer. It is my understanding that my statements and requests should be construed liberally and interpreted in a light most favorable to me. Also, as a result of my being untrained in the law, some of my statements may be in artfully stated or stated with imprecision. Therefore, it is my understanding that the court is required by law to assist me in filling in any gaps or applying the law correctly where my attempt to do so may fall short of the correct language that would have or should have been used by a trained lawyer. It is also my understanding that the pleadings of pro se litigants should be held to less stringent standards than those of lawyers, that courts have typically granted leniency in its policy towards pro se cases, that pro se pleadings are to be considered without regard to technicality and that a judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish (See Jenkins v. McKeithen, (1959); Picking v. Pennsylvania R. Co.; Maty v. Grasselli Chemical Co. (1938); Conley v. Gibson; Puckett v. Cox (1972) (6th Cir.)). I hereby request that this court read my pleadings liberally, and then advise me of any defects (if any) and allow opportunity to cure.].

WHEREFORE, I hereby humbly request this Honorable Court grant my request and/or other relief that the Court deems just and proper.

Respectfully submitted,

*Andre Bisasor*

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: June 22, 2016

25