CASE #: 16-CV-10105

## LIST OF EXHIBITS

1. **EXHIBIT 1 – STATE COURT DOCKET (SHOWING CERTIFICATION RE MY OPPOSITION TO HARVARD'S MOTION TO DISMISS)**

2. **EXHIBIT 2– KEY CASES SUPPORTING MY ARGUMENT REGARDING THE TRUSTEE'S ROLE AND ALLOWING TIME FOR THE TRUSTEE TO JOIN THE CASE AND THAT I DO NOT HAVE STANDING TO PROSECUTE THIS CASE.**

   A) **BOSTANIAN V. LIBERTY SAVINGS BANK (COURT OF APPEAL, SECOND DISTRICT, DIVISION 5, CALIFORNIA, 1997)**

   B) **POSLEY V. CLARIAN HEALTH – JUDGE'S ORDER AND MEMORANDUM (SOUTHERN DISTRICT OF INDIANA 2012)**

3. **EXHIBIT 3 – CASE SHOWING APPLICATION OF AUTOMATIC STAY TO LAWSUITS INITIATED BY DEBTOR**

   A. **IN RE CRITICAL FORK COAL CORP. (VIRGINA, 1982)**

1.   **EXHIBIT 1 – STATE COURT DOCKET (SHOWING CERTIFICATION RE MY OPPOSITION TO HARVARD'S MOTION TO DISMISS)**

| 08/13/2015 | Motion (P#[34] Plff's Request for additional time to respond to Motion to Dismiss ALLOWED all response due no later than 8/23/15 The parties are further directed to exchange currant contact information litigation with special instuctions that may be required to insure service and are reminded that emergency motions are dismissed absent exigant cicumstances going forward strict compliance with Superior Court Rule 9A will be expected (Gordon,J) Notice sent 8/12/15 (entered 8/12/15) | |
| 08/20/2015 | Emergncy request to set aside allowance granted to"The Harvard defts" to file a single memorandum (per their Motion to Dismiss) for the six Harvard defts and to prohibit ex parte communications by the Harvard defts with the Judge | 35 |
| 08/21/2015 | Motion (P#35) DENIED The allowance of Harvard 's motion to present consolidated memorandum of law conferred no "tactical advantage" of any laws upon the defts This was a miniterial motion and promises to assist the Court in its management of this motion -party litigation Going forward all parties are reminded that ex parte motion will not be entertained in the absence of exceptional circumstances The Court further directs the parties to comply with the August 13, 2015 order regarding the exchange of current contact information (Robert B. Gordon,) ) Notices mailed 8/21/2015 (entered 8/20/15) | |
| 08/25/2015 | PROCEDURAL ORDER: The plaintiff is hereby directed, within five days of his receipt hereof, to confirm in writing that his address on file with the Court continues to be his correct mailing address. Unless the plaintiff provides the Court with notice of a changed address, the Court will presume that all postage-paid mail properly addressed to him at the address on file has been delivered and received by him. The defendants are reminded that certified mail is not required for the transmittal of ordinary pleadings. SO ORDERED. (Robert B. Gordon, Justice) Dated: August 24, 2015 Notice sent 8/24/15 | 36 |
| 08/31/2015 | Court received letter from Plaintiff to Hon Robert Gordon regarding letter of Address & Issues Related to August 25 Procedural Order | 37 |
| 08/31/2015 | Affidavit of compliance with Superior Court Rule 9A regarding Plaintiff 's Opposition to Harvard Defendant's Motion to Dismiss | 38 |
| 08/31/2015 | Defendant Ken Vedaa (as amended)'s MOTION to Dismiss (MRCP 12b) Complaint for lack of personal jurisidiction, and failure to state claim for which relief can be granted (w/o opposition) | 39 |
| 08/31/2015 | Affidavit of Affidavit of compliance with 9A | 40 |
| 09/01/2015 | Plff's opposition to deft Ken Vedaa's Motion to Dismiss | 41 |
| 09/01/2015 | Memorandum: in support of plff's opposition to deft Ken Vedaa's Motion to Dismiss | 42 |
| 09/01/2015 | Defendant Danslav Slavenskoj's special emergency MOTION to Dismiss (MRCP 12b) Complaint of Andre Bisasor pursuant to MGL c. 231 Sec. 59h (w/o opposition) | 43 |
| 09/01/2015 | MOTION to Dismiss by President & Fellows of Harvard College (Misnamed in the Amended Complaint as "Harvard Extension School/Harvard University"), Robert H Neugeboren, Michael Shinagel, Huntington Lambert, Shirley R. Greene, and Margaret C. Andrews (without opposition) | 44 |
| 09/01/2015 | Plaintiff Andre Bisasor's emergency MOTIONconcerning Plff directly submitting to the Court plff's opposition to deft Ken Vedaa's motiont o dismiss and a request for sanctions against Ken Vedaa | 45 |
| 09/02/2015 | Suggestion of bankruptcy by Plaintiff, Andre Bisasor | 46 |
| 09/03/2015 | Motion (P#41) The Plff is directed to re-rile his opposition to deft Vedaa's motion to dismiss and to do so in a manner compliant with Superior Court Rule 9A (a)(5) ("unless leave of court has been obtained in advance all memoranda of law and opposition thereto shall not esceed 20 pages") The Plff shall have 14 days to make this filing. (Robert B. Gordon, Justice). Notices mailed 9/3/2015 (entered 9/2/15) | |
| 09/03/2015 | Motion (P#37) All parties are advised that there have not been, and will not be, any exparte communications with the undersigned. All parties are further advised that the addresses they have listed with the Court are the addresses that will be used for all mailings both from other parties and the Court. All mail that is properly stamped and addressed correctly shall be presumed to have reached the intended recepient unless returned to sender. The court will not trpically intertain complaint about un-received mail in these circumstances absent demonstrable cause. Finally, the session clerk | |



## 2.   EXHIBIT 2– KEY CASES SUPPORTING MY ARGUMENT REGARDING THE TRUSTEE'S ROLE AND ALLOWING TIME FOR THE TRUSTEE TO JOIN THE CASE AND THAT I DO NOT HAVE STANDING TO PROSECUTE THIS CASE.

A) BOSTANIAN V. LIBERTY SAVINGS BANK (COURT OF
APPEAL, SECOND DISTRICT, DIVISION 5, CALIFORNIA, 1997)

Not a Legal Professional? Visit our consumer site
Register | Log-In

CASES & CODES     PRACTICE MANAGEMENT     JOBS & CAREERS     LEGAL NEWS     BLOGS     LAW TECHNOLOGY     Search FindLaw

Forms     Lawyer Marketing     Corporate Counsel     Law Students     JusticeMail     Newsletters

FindLaw   Caselaw   California   CA Ct. App.   BOSTANIAN v. LIBERTY SAVINGS BANK

# BOSTANIAN v. LIBERTY SAVINGS BANK

Print          ( · · )                    Font size:     A    A    Reset



### Court of Appeal, Second District, Division 5, California.

### Stefan BOSTANIAN et al., Plaintiffs and Appellants, v. LIBERTY SAVINGS BANK, F.S.B. et al., Defendants and Respondents.

### No. B102938.

### Decided: February 19, 1997

Vic Rodriquez, Los Angeles, for Plaintiffs and Appellants. Shapiro & Miles and T. Robert Finlay, Santa Ana, for Defendants and Respondents.

I.   INTRODUCTION

This matter is presently before this court on a motion to dismiss the appeal, which is not subject to the automatic stay (Shah v. Glendale Federal Bank (1996) 44 Cal.App.4th 1371, 1374-1379, 52 Cal.Rptr.2d 417), for lack of standing in light of a plaintiff's bankruptcy filing.   The question presented is whether a cause of action to set aside a foreclosure sale of the debtor's residence is property of the bankruptcy estate which only the Chapter 7 trustee can pursue.[1]   The motion is by Liberty Savings Bank, F.S.B., and Professional Foreclosure Corporation (defendants) in relation to an appeal by Stefan Bostanian and Salpi Bostanian (plaintiffs).   We conclude plaintiffs have no standing to pursue this appeal.   We grant plaintiffs 30 days from the date this opinion becomes final in which to secure an abandonment by the trustee of the cause of action in the bankruptcy court.

Plaintiffs, husband and wife, were the owners of a single family residence as community property.   The property was subject to a deed of trust in favor of Liberty Savings Bank.   On January 6, 1993, Mr. Bostanian filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.   At no time has Ms. Bostanian filed a petition in bankruptcy.   Liberty Savings Bank, which sought to foreclose on the real property, obtained relief from the automatic stay in bankruptcy.   (11 U.S.C. § 362(a).)[2]   On October 26, 1993, defendants noticed a public auction of plaintiffs' single family residence under the power of sale in Liberty Savings Bank's deed of trust.   The foreclosure sale was completed on April 28, 1994.   On November 10, 1994, plaintiffs filed a complaint alleging the foreclosure sale was improper and seeking to set it aside.   On January 17, 1995, Mr. Bostanian's bankruptcy case was converted from a Chapter 11 proceeding to a Chapter 7 matter. On March 26, 1996, a judgment dismissing plaintiffs' complaint was entered in the superior court.   Plaintiffs have appealed from the judgment of dismissal and from the denial of their reconsideration motion.   Prior to briefing, defendants have moved to dismiss the appeal.

Defendants contend plaintiffs' cause of action is property of the bankruptcy estate which only the Chapter 7 trustee has standing to pursue.   There is no dispute that as a Chapter 11 debtor in possession, plaintiffs had standing to prosecute this action. (§ 1107(a);[3] Fed. Rules Bankr., rule 6009; J & K Painting Co. v. Bradshaw (1996) 45 Cal.App.4th 1394, 1402, fn. 8, 53 Cal.Rptr.2d 496.; California Aviation, Inc. v. Leeds (1991) 233 Cal.App.3d 724, 729, 284 Cal.Rptr. 687.)   As our colleague, Associate Justice Ruben Ortega of Division One of this appellate district, explained in California Aviation, Inc. v. Leeds, supra, 233 Cal.App.3d at page 729, 284 Cal.Rptr. 687: "[It is undisputed the plaintiff] had standing to pursue its [legal malpractice] case . as a chapter 11 debtor in possession.  'With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.'  (Fed. Rules Bankr., rule 6009, 11 U.S.C., italics added.)   Chapter 11 debtors in possession have such standing with or without bankruptcy court approval because they retain possession and control of their assets as part of their bankruptcy court-supervised plans to revive their businesses and satisfy their creditors.   However, the bankruptcy court supervises the liquidation of failed chapter 7 debtors, who can begin or maintain lawsuits in their own name only with the bankruptcy court's and trustee's approval."  (Compare, People v. Kings Point Corp. (1986) 188 Cal.App.3d 544, 548-549, 233 Cal.Rptr. 227 [applying a contrary rule where a trustee was appointed in a Chapter 11 proceeding and assumed all authority in litigation]; and see contra, Tarr v. Merco Construction Engineers, Inc. (1978) 84 Cal.App.3d 707, 712-713, 148 Cal.Rptr. 813 [holding Chapter 11 debtor had no standing to sue].)

FindLaw Career Center

Attorney
Corporate Counsel
Academic
Judicial Clerk
Summer Associate
Intern
Law Librarian

Search Jobs  |  Post a Job  |  View More Jobs

View More

How Clients Find Lawyers
FindLaw has the formula.
Watch the webcast now.
LawyerMarketing.com/Webcasts

FindLaw Newsletters
Get the latest in small business
legal news.
http://newsletters.findlaw.com/

Legally Weird Updates
Subscribe to Legally Weird
Free FindLaw Newsletters
FindLaw.com/Newsletters

However, defendants argue, when the matter was converted to Chapter 7, standing to maintain this lawsuit became vested in the bankruptcy trustee. Further, defendants contend, the Chapter 7 trustee has not abandoned this cause of action; therefore, the Chapter 7 trustee is the only party with standing to appeal. We agree for the following reasons.

## II.  DISCUSSION

### A.  Construction of a Federal Statute

Because we are applying federal statutes, we follow rules of statutory construction enunciated by the United States Supreme Court.   In Kaiser Aluminum & Chemical Corp. v. Bonjorno (1990) 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842, the United States Supreme Court held:  "The starting point for interpretation of a statute 'is the language of the statute itself.   Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' "   The United States Supreme Court has noted that "the statutory language controls its construction" (Ford Motor Credit Co. v. Cenance (1981) 452 U.S. 155, 158, fn. 3, 101 S.Ct. 2239, 2241, fn. 3, 68 L.Ed.2d 744) and that " '[t]here is, of course, no more persuasive evidence of the purpose of a statute than the  words by which the [L]egislature undertook to give expression to its wishes.' "   (Griffin v. Oceanic Contractors, Inc. (1982) 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973.)   In interpreting a statute, the United States Supreme Court has noted:  " 'In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'  [Citations.]   Our objective in a case such as this is to ascertain the congressional intent and give effect to the legislative will."   (Philbrook v. Glodgett (1975) 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525.)   On another occasion, the court stated, "We do not, however, construe statutory phrases in isolation; we read statutes as a whole."   (United States v. Morton (1984) 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680, fn. omitted.)   Further, in interpreting a statute, the Supreme Court has emphasized the importance of avoiding:  "absurd results" (United States v. Turkette (1981) 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246);  " 'an odd result' " (Public Citizen v. U.S. Department of Justice (1989) 491 U.S. 440, 454, 109 S.Ct. 2558, 2567, 105 L.Ed.2d 377); or "unreasonable results whenever possible."   (American Tobacco Co. v. Patterson (1982) 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748.)   Moreover, the Supreme Court has noted, "Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided." (Commissioner v. Asphalt Products Co., Inc. (1987) 482 U.S. 117, 121, 107 S.Ct. 2275, 2278, 96 L.Ed.2d 97.) In Griffin v. Oceanic Contractors, Inc., supra, 458 U.S. at page 571, 102 S.Ct. at page 3250, the court stated: "Nevertheless, in rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling.  [Citations.]"   When a statute is unambiguous, its language cannot "be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process.  [Citation.]"   (West Virginia Univ. Hospitals, Inc. v. Casey (1991) 499 U.S. 83, 98-99, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68.)

### B.  Absent Abandonment, the Chapter 7 Trustee, and not the Debtor, has Standing to Pursue a Cause of Action Which is Property of the Bankruptcy Estate

A trustee in bankruptcy is the representative of the estate. (§ 323(a).) [4]   A trustee in bankruptcy has the capacity to sue and to be sued.  § 323(b).) [5]   Under federal decisional authority, a Chapter 7 debtor may not prosecute on his or her own a cause of action belonging to the bankruptcy estate unless the claim has been abandoned by the trustee.  (Griffin v. Allstate Ins. Co. (C.D.Cal.1996) 920 F.Supp. 127, 130;  In re Price (Bankr.N.D.Ga.1994) 173 B.R. 434, 440;  In re Davis (Bankr.N.D.Ind.1993) 158 B.R. 1000, 1002;  Harris v. St. Louis University (E.D.Mo.1990) 114 B.R. 647, 648-649; see Vreugdenhil v. Hoekstra (8th Cir.1985) 773 F.2d 213, 215.)   Federal Rule of Civil Procedure 17 (28 U.S.C.), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7017 (11 U.S.C.), [6] requires that "[e]very action shall be prosecuted in the name of the real party in interest."   The trustee controls the bankruptcy estate, therefore, she or he is the real party in interest with standing to sue.  (Griffin v. Allstate Ins. Co., supra, 920 F.Supp. at p. 130;  In re Davis, supra, 158 B.R. at p. 1002.)   California Code of Civil Procedure section 367 is to the same effect as the federal rule.   It provides:  "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."  (Code Civ.Proc., § 367.)

There is decisional authority in California which is consistent with federal law.   That is, absent abandonment of the claim by the trustee, a debtor out of possession has no standing to prosecute a cause of action which has passed to the bankruptcy estate.   In Reichert v. General Ins. Co. (1968) 68 Cal.2d 822, 829-830, 69 Cal.Rptr. 321, 442 P.2d 377, the California Supreme Court held in a case involving a debtor who was also the plaintiff:  "The central question in this case is whether the several causes of action pleaded in the second amended complaint are actually vested in plaintiff himself or in his trustee in bankruptcy.   To put it another way:  Has plaintiff shown that he has the right to assert these claims or has such right passed to the trustee?  [¶] Our resolution of the problem turns on the federal statute.   Section 70 of the Bankruptcy Act (11 U.S.C.A. § 110) provides in pertinent part as follows:  '(a) The trustee of the estate of a bankrupt . shall . be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title . to all of the following kinds of property wherever located . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: . (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; .' As will  appear the causes of action which plaintiff attempts to assert fall within the categories described by clauses (5) and (6).   We have concluded, therefore, that they are rights which passed to the trustee upon plaintiff's adjudication in bankruptcy, that they are not actionable claims resident in plaintiff, and that the demurrers were properly sustained.   The judgment of dismissal must therefore be affirmed."

Other decisions are in accord. (Estate of Aldrich (1950) 35 Cal.2d 20, 23, 215 P.2d 724; Danielson v. ITT Industrial Credit Co. (1988) 199 Cal.App.3d 645, 653, 245 Cal.Rptr. 126; Wood v. Lowe (1974) 39 Cal.App.3d 296, 299, 114 Cal.Rptr. 69; Roberts v. Bank of America (1952) 112 Cal.App.2d 823, 824, 247 P.2d 356.) Reichert is the controlling authority on the issue as to whether a debtor out of possession, including one proceeding under Chapter 7, has standing to assert legal claims belonging to the bankruptcy estate.

We respectfully disagree with those cases which suggest (because the opinion fails to reveal the chapter under which the bankruptcy petition was filed) or hold that a Chapter 7 debtor has standing to continue to prosecute a pending cause of action which has become property of the estate. (E.g. Baltins v. James (1995) 36 Cal.App.4th 1193, 1201, fn. 10, 42 Cal.Rptr.2d 896 [debtor may continue to prosecute action]; California Aviation, Inc. v. Leeds, supra, 233 Cal.App.3d at pp. 729-730, 284 Cal.Rptr. 687 [Chapter 7 debtor could continue to prosecute action pending assertive conduct by trustee]; National Secretarial Service, Inc. v. Froehlich (1989) 210 Cal.App.3d 510, 520, 258 Cal.Rptr. 506 [debtor may remain real party in interest pending assertive action by trustee]; ABA Recovery Services, Inc. v. Konold (1988) 198 Cal.App.3d 720, 726, 244 Cal.Rptr. 27 [where trustee in bankruptcy was appointed, debtor could continue to prosecute action]; Robinson v. McGinn (1987) 195 Cal.App.3d 66, 78-79, 240 Cal.Rptr. 423, disapproved on another point in Laird v. Blacker (1992) 2 Cal.4th 606, 617, 7 Cal.Rptr.2d 550, 828 P.2d 691 [filing of Chapter 7 petition while legal malpractice case was pending did not deny plaintiff standing to bring action absent assertive conduct by trustee]; Kaley v. Catalina Yachts (1986) 187 Cal.App.3d 1187, 1193-1196, 232 Cal.Rptr. 384 [debtor could continue to prosecute an action which was pending when bankruptcy petition was filed; trustee is not real party in interest until he or she formally intervenes and is allowed to substitute into pending action]; see Amstone v. Peninsular Fire Ins. Co. (1991) 226 Cal.App.3d 1019, 1023-1024, 277 Cal.Rptr. 260 [debtor is not automatically foreclosed from continuing to prosecute action]; compare J & K Painting Co. v. Bradshaw, supra, 45 Cal.App.4th at p. 1402, 53 Cal.Rptr.2d 496, fn. 8 [Chapter 11 debtor had standing to proceed with cause of action; case cited by the opposing party "concerned an action filed by a debtor under chapter 7 not a debtor in possession under chapter 11."] ) First, those cases are inconsistent with federal law. Second, those cases are inconsistent with Reichert v. General Ins. Co. of America, supra, 68 Cal.2d at pages 829-830, 69 Cal.Rptr. 321, 442 P.2d 377, Reichert is, as we have noted, the controlling California authority. Third, to the extent the courts have relied on Code of Civil Procedure section 368.5 (formerly section 385), that reliance is misplaced. Code of Civil Procedure section 368.5 provides: "An action or proceeding does not abate by the transfer of an interest in the action or proceeding or by any other transfer of an interest. The action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." Section 368.5 does not confer standing on a party who has no right to assert the claim. (Reichert v. General Ins. Co., supra, 68 Cal.2d at pp. 829-830, 69 Cal.Rptr. 321, 442 P.2d 377.) We have found no decisional authority in California outside the bankruptcy arena which holds in effect that Code of Civil Procedure section 368.5 confers standing on a party. A Chapter 7 trustee may be able to continue to prosecute an action in the name of the debtor pursuant to Code of Civil Procedure section 368.5; however, as will be noted, the debtor may not pursue the cause of action on his or her own unless the cause of action has been abandoned by the trustee pursuant to section 554. (See fn. 9, infra.) Stated differently, a bankruptcy trustee could continue an action in the name of the debtor under Code of Civil Procedure section 368.5. However, it is the trustee who must prosecute the action, not the debtor. What the above-referenced cases hold, instead, is that the debtor may continue to prosecute the cause of action unless the trustee takes affirmative steps to intervene. We conclude, to the contrary, that the debtor must take affirmative steps to comply with section 554 concerning abandonment. Until the debtor secures an abandonment of the claim, the debtor lacks standing to pursue it.

C. A Cause of Action Accruing After a Chapter 11 Petition is Filed is Property of the Bankruptcy Estate

Defendants contend a cause of action which accrues subsequent to a Chapter 11 filing is property of the bankruptcy estate which, absent abandonment, only the trustee can pursue. We agree. The commencement of a case under Chapter 11 creates a bankruptcy estate. (Matter of Griseuk (Bankr.M.D.Fla.1994) 165 B.R. 956, 958; In re Acton Foodservices Corp. (Bankr.D.Mass.1984) 39 B.R. 70, 72; contra, In re Durrett (Bankr.D.N.H.1995) 187 B.R. 413, 419; In re Winom Tool and Die, Inc. (Bankr.E.D.Mich.1994) 173 B.R. 613, 622-625; In re Doemling (W.D.Pa.1991) 127 B.R. 954, 955.) The bankruptcy estate is comprised of property including: "all legal or equitable interests of the debtor in property as of the commencement of the case" (§ 541(a)(1)), and "[a]ny interest in property that the estate acquires after the commencement of the case." (§ 541(a)(7).) The scope of section 541 is broad; "property" includes causes of action. (United States v. Whiting Pools, Inc. (1983) 462 U.S. 198, 205, fn. 9, 103 S.Ct. 2309, 2313, fn. 9, 76 L.Ed.2d 515, quoting H.R.Rep. No. 95-595, p. 367 (1977), S.Rep. No. 95-989, p. 82 (1978), 1978 U.S.Code Cong. & Admin.News, at pp. 5868, 6323; In re Wischan (5th Cir.1996) 77 F.3d 875, 877; Jones v. Harrell (11th Cir.1988) 858 F.2d 667, 669; In re Cottrell (6th Cir.1989) 876 F.2d 540, 542; Sierra Switchboard Co. v. Westinghouse Elec. Corp. (9th Cir.1986) 789 F.2d 705, 707-709; Tignor v. Parkinson (4th Cir.1984) 729 F.2d 977, 980-981.) In the present case, plaintiffs' cause of action accrued on April 28, 1994, when the foreclosure occurred, which was after the January 6, 1993, filing of the Chapter 11 petition. Pursuant to section 541(a)(7), the cause of action was property of the bankruptcy estate.

D. A Cause of Action Relating to an Asset of the Estate is Also Property of the Bankruptcy Estate

Even if plaintiffs' cause of action did not become an asset of the bankruptcy estate pursuant to section 541(a) (7), we conclude it became such property under section 541(a)(6). As discussed above, a bankruptcy estate is comprised of property including "all legal or equitable interests of the debtor in property as of the commencement of the case." (§ 541(a)(1).) Pursuant to section 541(a)(6), property of the bankruptcy estate also includes: "Proceeds, product, offspring, rents, or profits of or from property of the estate." Applying the plain language of the federal statute to the present case, we conclude plaintiffs' cause of action is property of the

estate under section 541(a)(6). Plaintiffs had a legal or equitable interest in their residence at the time of the bankruptcy filing. It is undisputed that upon the commencement of Mr. Bostanian's bankruptcy case under Chapter 11, plaintiffs' interest in the real property became vested in the estate. (§ 541(a)(1).) 7 The cause of action for improper foreclosure is a product, proceed, or offspring of plaintiffs' interest in their residence. (§ 541(a)(6).) Therefore, it was also property of the Chapter 11 estate.

Our conclusion finds support in the case of In re Acton Foodservices Corp., supra, 39 B.R. at page 72. The debtor in Acton had a pre-petition interest in a corporation which owned a radio station. The debtor filed a Chapter 11 petition in 1980. The corporation also filed a bankruptcy petition. In 1981, the radio station was sold. The debtor asserted a claim of fraud in connection with the sale. In 1982, the bankruptcy court converted the debtor's Chapter 11 case to one under Chapter 7. The United States Bankruptcy Court for the District of Massachusetts held the fraud claim was property of the Chapter 7 estate and the debtor had no standing to assert it. The court reasoned: any legal or equitable interest the debtor had in the corporation, including the radio station, became property of the Chapter 11 estate in 1980; the cause of action arising from the sale of the radio station was a proceed, product, offspring, rent, or profit of or from the debtor's interest in the corporation which owned the radio station (§ 541(a)(6)); and the cause of action was property acquired by the estate after commencement of the bankruptcy case. (§ 541(a)(7).) Therefore, the cause of action was property of the estate. (Ibid.)

E. Conversion of the Bankruptcy Case from Chapter 11 to 7 Did not Effect any Change in the Property of the Estate

The conversion of the bankruptcy proceeding from Chapter 11 to 7 did not effect any change in the composition of the property of the estate. Section 348(a) states in relevant part: "Conversion of a case from one chapter of this title to a case under another chapter of this title . does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 8 Under the plain language of the statute, the conversion of Mr. Bostanian's bankruptcy proceeding from Chapter 11 to 7 did not change the date the petition was filed. (In re Winom Tool and Die, Inc., supra, 173 B.R. at pp. 625-626.) Under section 541(a)(1), property of the Chapter 7 estate is determined as of the date the Chapter 11 petition was filed. The Tenth Circuit Court of Appeals had held: "[U]pon conversion the assets which are the property of the Chapter 7 estate are determined with reference to the date of filing of the original Chapter 11 petition. [Citations.]" (Patrick A. Casey, P.A. v. Hochman (10th Cir.1992) 963 F.2d 1347, 1350; In re Durrett, supra, 187 B.R. at p. 419.) Therefore, plaintiffs' cause of action for improper foreclosure is also property of the Chapter 7 estate. The fact it once was property of the Chapter 11 estate does not change matters. Because the cause of action is property of the Chapter 7 estate, only the trustee in bankruptcy has standing to prosecute it.

F. The Trustee has not Abandoned this Cause of Action

Plaintiffs argue their residence ceased to be property of the bankruptcy estate when Liberty Savings Bank obtained relief from the automatic stay and foreclosed on it. They conclude: "[T]he property is no longer a part of the [b]ankruptcy estate as defined in section 541 and pursuant to section 362 of the Bankruptcy Code." Plaintiffs' argument misses the point. The issue is not whether the residence is estate property. The residence has been foreclosed upon. The issue is whether the cause of action challenging the foreclosure is estate property. Relief from the automatic stay and abandonment are not synonymous concepts. (In re B.S. Livingston & Co., Inc. (D.N.J.1995) 186 B.R. 841, 858-859 [lifting of automatic stay is not equivalent to abandonment]; Matter of Nebel (Bankr.D.Neb.1994) 175 B.R. 306, 311-312 ["the act of lifting the automatic stay is not analogous to an abandonment of the property"]; In re Gassaway (Bankr.N.D.Miss.1983) 28 B.R. 842, 846 [trustee abandoned real property but automatic stay continued in effect as to debtor]; In re Motley (Bankr.M.D.Ga.1981) 10 B.R. 141, 145 [same].) Relief from the automatic stay did not constitute an abandonment of any interest of the estate in or relating to the real property. (Cf. In re Markey (Bankr.W.D.Mich.1992) 144 B.R. 738, 742 [trustee's rejection of executory land contract does not dispose of bankruptcy estate's interest in any residual rights, i.e., rights of possession and of redemption in any foreclosure].) When Liberty Savings Bank was granted relief from the automatic stay, which is governed by section 362, it was allowed to proceed against the debtors in a foreclosure action. Abandonment, on the other hand, is governed by section 554. 9 Pursuant to that section, a trustee may abandon estate property "[a]fter notice and a hearing," or the court may order abandonment "[o]n request of a party in interest and after notice and a hearing." (§ 554(a), (b).) The Ninth Circuit Bankruptcy Panel has held: "Under Section 541(a) of the Code, all legal and equitable interests of the debtor belong to the estate at the commencement of the case. Thereafter, the debtor may remove some of the property by claiming exemptions under section 522(b). In re Woodson, 839 F.2d 610, 616 n. 8 (9th Cir.1988); Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 708-09 (9th Cir.1986). Title is therefore in the trustee from the beginning and '[u]nless property is abandoned or intentionally revested, title generally remains in the trustee. Abandonment requires affirmative action or some other evidence of intent by the trustee.' In re Berg, 45 B.R. 899, 903 (9th Cir.BAP1984). During the pendency of the case, the notice and hearing requirements of Section 554 must be observed for an 'abandonment' to occur. Sierra Switchboard, supra 789 F.2d at 709 ('. there is no abandonment without notice to creditors')." (In re Hyman (9th Cir.BAP 1991) 123 B.R. 342, 348, affd. (9th Cir.1992) 967 F.2d 1316, 1321.) There is no evidence the trustee has abandoned or has been ordered to abandon the estate's interest in the real property or in the cause of action arising out of that interest. That the trustee is aware of this action and may not have taken any steps to intervene does not constitute abandonment within the meaning of the Bankruptcy Code. (Sierra Switchboard Co. v. Westinghouse Elec. Corp., supra, 789 F.2d at p. 709.)

G. Plaintiffs Have no Standing to Pursue this Appeal

We conclude plaintiffs' cause of action is property of the bankruptcy estate. Further, there is no evidence the Chapter 7 trustee has abandoned the interest in this claim. Absent abandonment, plaintiffs have no standing

to pursue this appeal; the Chapter 7 trustee is the real party in interest with standing to sue. Fairness dictates plaintiffs should be given an opportunity to secure an abandonment by the trustee in the bankruptcy court. They shall have 30 days to do so.

## III. DISPOSITION

Plaintiffs, Stefan and Salpi Bostanian, shall have 30 days from the date this opinion becomes final in which to secure an abandonment of this cause of action in the bankruptcy court pursuant to 11 United States Code, section 554. If plaintiffs fail to timely secure an abandonment and absent any intervening order of this court, the appeal shall be dismissed 31 days from the date this opinion becomes final.

## FOOTNOTES

1.  Chapter references are to the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101-1330. Chapter 7 is found at Title 11, United States Code, section 701 et seq. Chapter 11 is found at Title 11, United States Code, section 1101 et seq.

2.  11 United States Code section 362(a) states, "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-[¶] (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [¶] (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [¶] (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [¶] (4) any act to create, perfect, or enforce any lien against property of the estate; [¶] (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [¶] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; [¶] (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and [¶] (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." All further statutory references are to Title 11 of the United States Code except where otherwise noted.

3.  Section 1107(a) provides, "Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter."

4.  Section 323(a) states, "The trustee in a case under this title is the representative of the estate."

5.  Section 323(b) states, "The trustee in a case under this title has capacity to sue and be sued."

6.  Federal Rules of Bankruptcy, rule 7017 (11 U.S.C.) states, "Rule 17 F.R.Civ.P. applies in adversary proceedings, except as provided in Rule 2010(b)."

7.  Ms. Salpi Bostanian argues she has standing to maintain this appeal because she had an interest in the real property and she has not filed any bankruptcy petition. However, pursuant to section 541(a)(2), the bankruptcy estate includes: "All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is [¶] (A) under the sole, equal, or joint management and control of the debtor." (Italics added.) In other words, "[c]ommunity property assets and their proceeds become part of the bankruptcy estate of the first spouse to file a bankruptcy petition." (Griffin v. Allstate Ins. Co., supra, 920 F.Supp. at p. 130; In re Bartlett (9th Cir.BAP 1982) 24 B.R. 605, 607.) Plaintiffs' residence, held by them as community property, falls within the plain language of section 541(a)(2).

8.  Filing a voluntary Chapter 11 petition constitutes entry of an "order for relief." (§ 301.)

9.  Section 554 states, "(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. [¶] (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. [¶] (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title. [¶] (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."

TURNER, Presiding Justice.

GRIGNON and ARMSTRONG, JJ., concur.

**RESEARCH THE LAW**    Cases & Codes / Opinion Summaries / Sample Business Contracts / Research An Attorney or Law Firm

**MANAGE YOUR PRACTICE**    Law Technology / Law Practice Management / Law Firm Marketing Services / Corporate Counsel Center

**B) POSLEY V. CLARIAN HEALTH – JUDGE'S ORDER AND MEMORANDUM (SOUTHERN DISTRICT OF INDIANA 2012)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| AMELIA A. POSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:11-cv-01511-TWP-MJD |
| vs. | ) | |
| | ) | |
| CLARIAN HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter comes before the Court on Plaintiff Amelia Posley's ("Posley") and

bankruptcy trustee, John Petr's ("Trustee") Motion to Ratify. [Dkt. 41.] Currently, Posley's

lawsuit is captioned "Amelia A. Posley v. Clarian Health, a/k/a IU Health." Subsequent to the

filing of this action, Posley filed for Chapter 7 bankruptcy protection and acknowledges that, in

doing so, the Trustee became the "owner" of her claim. [Dkt. 46 at 1.] Defendant IU Health

(formerly known as Clarian) argues that the Trustee is the "proper plaintiff." [Dkt 43 at 1.] For

all intents and purposes, the parties agree that the Trustee is the real party in interest behind

Posley's Complaint. IU Health argues that Posley's claim should be dismissed because it is not

being prosecuted in the name of the real party in interest, the Trustee. [Dkt. 43 at 4.]

Alternatively, IU Health argues that, if the lawsuit is not dismissed, it must proceed under the

Trustee's name, because he is the real party in interest. [Dkt. 43 at 4-5.] Posley argues that

ratification is proper and the case may proceed as presently captioned. [Dkt. 46 at 3.] For the

following reasons, the Court **GRANTS** the Motion to Ratify.

1

## PROCEDURAL HISTORY

Posley filed her Complaint against IU Health on November 14, 2011. Posley then filed her petition for Chapter 7 bankruptcy on November 29, 2011. Importantly, Posley's Complaint pre-dates her bankruptcy. The Trustee moved to ratify the lawsuit as captioned, in Posley's name, on June 14, 2012. [Dkt. 43 at ¶7.] IU Health objected[1] to ratification under Rule 17 in its reply July 2, 2012. [Dkt. 43.]

## DISCUSSION

The controversy in this case arises from the application of the real party in interest rule found in Federal Rule of Civil Procedure 17. IU Health alleges that Posley seeks to bring this action in her name instead of in the name of the real party in interest – the Trustee – as a strategic move. Posley, however, argues that ratification is a proper course of action in order to comply with the requirements of Rule 17.

### A. Rule 17: The Real Party In Interest

Pursuant to Rule 17, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The Rule also states that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

---

[1] IU Health also filed a Motion to Dismiss for lack of standing, or in the alternative, under the doctrine of judicial estoppel. [Dkt. 9.] Later, IU Health acknowledged that its Motion to Dismiss based on standing is "related, though not identical" to the real party in interest rule. [Dkt. 43 at 4, n.2.] As such, an objection based on the real party in interest under Rule 17 did not occur until IU Health replied to Posley's Motion to Ratify. *See Guynn v. Potter*, 2002 WL 243626, at *4 (S.D. Ind. 2002) (citations omitted). However, even if IU Health's objection were deemed to have been raised in its January 26, 2012 Motion to Dismiss, the Court finds the Trustee's ratification to have been timely and this ruling would be unchanged.

The Court observes that Rule 17 prohibits dismissal until the real party in interest has had a reasonable amount of time to respond to an objection. *Id.* After an objection, Rule 17 expressly allows the real party in interest a reasonable time for ratification, joinder, or substitution. *Id.* IU Health argues that "Federal Rule of Civil Procedure 17 permits such ratification only under circumstance where the party made an honest mistake—not where the incorrect plaintiff was identified for strategic reasons." [Dkt. 43 at 1.] This, however, is an overstatement of the Rule that runs contrary to the guidance from the Advisory Committee. The Advisory Committee Notes state that "[m]odern decisions are inclined to be lenient when an honest mistake has been made." The inclination to be lenient when an honest mistake is made falls far short of prohibiting ratification except when an honest mistake is made.

The Advisory Committee Notes point out that 17(a)(3) was "added simply in the interests of justice." Fed. R. Civ. P. 17 advisory committee's note (1966). The Notes continue on, saying that the modern function of the Rule is to "protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as *res judicata*." *Id.* Essentially, the rule is meant to prevent "double dipping" by both the real party in interest and the underlying plaintiff on whose behalf the real party in interest may act.

Finally, dismissing a case on a technicality, rather than hearing the merits of the issue, rarely serves the best interests of justice. It is also the strong preference of the Court to decide cases on their merits. The Seventh Circuit recognizes "[t]he federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 687 (7th Cir. 2004).

3

### B. Parties' Arguments

IU Health cites to a district court case from Pennsylvania for the proposition that "in order to substitute the trustee as the real party in interest, Plaintiff must first establish that, when he brought this action in his own name, he did so as the result of an honest and understandable mistake." [Dkt. 43 at 3 citing *Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273, 276 (E.D. Pa. 1999).] IU Health argues that this Court has not allowed substitution by the real party in interest when the decision is "strategic and tactical." [Dkt. 43 at 3 (citing *Metal Forming Technologies, Inc. v. Marsh & McLennen Co.*, 224 F.R.D. 431, 436 (S.D. Ind 2004)).] Taken together, IU Health is advancing the theory that Posley is bringing the lawsuit in her own name, rather than in the name of the real party in interest, due to a strategic and tactical decision, not an honest mistake.

IU Health's arguments against ratification overlook several key distinctions between its supporting citations and the case at bar. First, the plaintiff in *Feist* filed his complaint on July 21, 1997, after he filed his bankruptcy petition on January 16, 1997. *Feist*, 100 F. Supp. 2d at 276. Because the existing trustee was the real party in interest at the time the lawsuit was filed, it was obviously a mistake for the plaintiff to file the suit in his own name. Likewise, in *Metal Forming Technologies, Inc.* the plaintiff's assignment of its right to sue occurred on March 28, 2003, before the plaintiff filed his complaint on May 8, 2003. *Metal Forming Technologies,* 224 F.R.D. at 433-434. Both of these cases are distinguishable from the case at bar because the action establishing the real party in interest in those cases occurred **prior** to the filing of the plaintiff's complaint. It was a mistake to file the complaint in the plaintiff's name when the trustee or assignee was undoubtedly the real party in interest.

4

In this case, however, Posley filed her Complaint **before** her bankruptcy petition. This reversed the order of filings compared to *Feist* and *Metal Forming Technologies, Inc.* [Dkt. 46 at 2.] When Posley filed her Complaint, she, and not the bankruptcy Trustee, was the real party in interest. On the date the case was filed, it would have been impossible to file the claim in the name of the Trustee, who eventually became the real party in interest. Posley correctly points out that, "[w]hen Ms. Posley originally file [*sic*] the lawsuit she had to file it in her name." [*Id.* at 3.] At the time of filing, Posley's only choice was to file the lawsuit in her own name. Posley's exercise of her only legal choice was not a mistake, honest or otherwise.

Additionally, when the *Metal Forming Technologies* court applied the "honest mistake" test, it suspected that the real party in interest had engaged in a "sleight of hand" by filing the complaint in the plaintiff's name. *Metal Forming Technologies*, 224 F.R.D. at 437. The court was disinclined to reward such deceit and therefore denied the real party in interest's substitution into the lawsuit. *Id.* Likewise, in *Feist*, the court doubted the plaintiff's motives and held that his mistake was not honest, so ratification was improper. *Feist,* 100 F. Supp. 2d at 280. Again, these facts are distinguishable from the case at bar. Because Posley had no choice but to file her complaint in her own name, it was not a deceitful or strategic decision at the time of filing. Posley filed her claim properly, the defendants objected, and then the Trustee moved to ratify the plaintiff's lawsuit, as permitted by Rule 17.

IU Health also challenges Posley's citation to *Rawoof v. Texor Petroleum Co., Inc.*, but this criticism is misplaced. [Dkt. 43 at 4, n.1.] Posley cited *Rawoof* only for the proposition that "[r]atification is a legitimate way to cure an initial failure to prosecute a case in the [name] of the real party in interest." [Dkt. 41 at 1.] This is a correct statement of law. As discussed previously,

Rule 17 confirms that the real party in interest may ratify, join, or substitute into an action. Fed.

R. Civ. P. 17(a)(3). The court in *Rawoof* held that:

> While it is true that ratification is a legitimate way to cure an initial failure
> to prosecute an action in the name of the real party in interest under FED.
> R. CIV. P. 17(a), here, Rawoof attempted to use it as a means of escaping
> the consequences of the denial of his motion to substitute plaintiffs.

*Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 760 (7th Cir. 2008).  Rawoof's individual

failure to ratify properly does not negate the legitimacy of ratification as a means to cure.

Finally, concerns from both parties about "jury confusion" are premature. [Dkt. 41 at ¶ 7;

Dkt. 43 at 5.] First of all, the Court is accustomed to lawsuits by Trustees. Additionally, should

the present case lead to a jury trial, the parties may submit proposed jury instructions to alleviate

any alleged confusion.

### C.  The Trustee Properly Ratified the Case

The Court is inclined to follow the analysis in *Jenkins v. Wright and Ferguson Funeral

Home*, which mirrors the facts of the case at bar. 215 F.R.D. 518, 518 (S.D. Miss. 2003). The

plaintiff in *Jenkins* filed her employment discrimination complaint prior to filing for Chapter 7

bankruptcy. *Id.* at 520. Jenkins brought the case in her own name, but the bankruptcy Trustee,

Shaffer, became the real party in interest once the bankruptcy proceeding was initiated. *Id.* at

521. After the defendant filed a motion to dismiss, the trustee executed a ratification agreement

with the plaintiff. *Id. at* 520. In the ratification agreement, Shaffer, the bankruptcy trustee and

real party in interest, stated that she ratified the commencement of the action by Jenkins and

"agreed to be bound by any judgment entered or settlement obtained by the Plaintiff." *Id.*

In *Jenkins*, the court found that proper ratification by the real party in interest "requires

the ratifying party to authorize the continuation of the action and agree to be bound by the

result." *Jenkins*, 215 F.R.D. at 522 (citing *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 307

(5th Cir. 2001)). The *Jenkins* court held that Shaffer met these requirements and therefore properly ratified the case to proceed in Jenkins' name. *Id.* at 522. Because the ratification was proper it "was a valid transfer to Jenkins of the right to prosecute this cause of action in her own name." *Jenkins*, 215 F.R.D. at 522.

The court in *Jenkins* recognized that "[a] cause of action which arises before the filing of a petition in bankruptcy is the property of the bankruptcy estate." *Id.* at 521, citing *Wieburg*, 272 F.3d at 305-306. The court also understood that Rule 17's purpose is to "assure a defendant that a judgment will be final and that *res judicata* will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right." *Id.* Finally, the court reasoned that Rule 17(a) "provides that formal joinder or substitution of the real party in interest will not be necessary when [the real party in interest] ratifies commencement of the action." *Id.* at 521-522 (citing *Big John, B.V. v. Indian Head Grain Co.*, 718 F.2d 143, 147 (5th Cir. 1983)).

Similarly, Posley filed her employment discrimination case in her name, but following Posley's Chapter 7 bankruptcy petition the bankruptcy Trustee became the real party in interest. Just as in *Jenkins*, after the defendant's motion to dismiss, the real party in interest ratified the case. In the Motion to Ratify and accompanying affidavit, the Trustee states that he "ratifies the lawsuit as it was commenced by Amelia Posley" and "agrees to be bound by the judgment of the Court." [Dkt. 41 at Ex. 1.] This affidavit satisfies the two requirements for ratification. Furthermore, Rule 17's purpose will be fulfilled by this ratification: IU Health will be protected from defending against both Posley and the Trustee.

*Jenkins* also reinforces the proposition from *Rawoof* that ratification is a proper means to cure a failure to initially prosecute in the name of the real party in interest. "Rule 17 clearly

7

allows one who is not a real party in interest to prosecute a case upon ratification by the real party in interest." *Jenkins,* 215 F.R.D. at 522, n.4. This Court agrees that "[c]ontrary to the Advisory Committee Note, the language of Rule 17(a) does not state or even imply that the real party in interest must have been difficult to determine or that an understandable mistake had been made." *Id.*

Accordingly, the Court will grant ratification, because, as allowed by Rule 17, the real party in interest ratified the case within a reasonable time following IU Health's objection. The ratification was proper because the real party in interest endorsed the action and agreed to be bound by the Court's decision. The Court is not persuaded that IU Health will be prejudiced by Posley's prosecution of her Complaint in her own name.

## CONCLUSION

For the above stated reasons, the Court **GRANTS** the Motion to Ratify under Rule 17. [Dkt. 41.]

Dated:  09/06/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

8

## 3.   EXHIBIT 3 – CASE SHOWING APPLICATION OF AUTOMATIC STAY TO LAWSUITS INITIATED BY DEBTOR

### A.   IN RE CRITICAL FORK COAL CORP. (VIRGINA, 1982)


LEAGLE





# IN RE CRITICAL FORK COAL CORP.

Bankruptcy Nos. 7-80-01314, 7-81-00441, 7-81-00536 and 7-80-01040.

Email | Print | Comments (0)

18 B.R. 422 (1982)

*In re CRITICAL FORK COAL CORPORATION, Debtor. UNITED STATES of America, Plaintiff, v. CRITICAL FORK COAL CORPORATION, Defendant. In re CDA, INC., d/b/a Harvey's Warehouse, Debtor. SANYO ELECTRIC, INC., Plaintiff, v. CDA, INC., d/b/a Harvey's Warehouse, Defendant. In re Lloyd G. WALDEN, Laura V. Walden t/a Walden's Refinishing Shop & Floor Serv., Debtors. Lloyd G. WALDEN, and Laura V. Walden, Plaintiffs, v. TRI-CITY BANK & TRUST CO., Defendant. In re TRIANGLE EQUIPMENT CO., INC., Debtor. Robert COPELAND, Plaintiff, v. TRIANGLE EQUIPMENT CO., INC., Defendant.*

United States Bankruptcy Court, W.D. Virginia.

January 20, 1982.

---

**View Case**    Cited Cases    Citing Case

---

*James E. Nunley, Bristol, Va., for Critical Fork Coal Corp.*

*Thomas R. King, Jr., Asst. U.S. Atty., Roanoke, Va., for the U.S.*

*Larry D. Wayne, Compton, Cal., and John R. Fitzpatrick, Jr., Fairfax, Va., for Sanyo Elec., Inc.*

*Daniel D. Hamrick, Christianburg, Va., for CDA, Inc.*

*Michael A. Bragg, Lexington, Va., for Lloyd and Laura Walden.*

*J.D. Bowie, Bristol, Va., for Tri-City Bank & Trust Co.*

*Larry Harley, Surfside Beach, S.C., for George and Barbara Ison.*

*H.N. Osborne, Pearisburg, Va., for Robert Copeland.*

*William T. Winder, Winder, Ga., for Triangle Equipment Co., Inc.*

---

## JOINT OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The question before the Court is disposition of four proceedings "transferred" by the District Court for the Western District of

Virginia to this Court. Three of the proceedings were "transferred" on the court's own motion, and the fourth, *Walden v. Tri-City Bank & Trust Co.,* was transferred on motion of plaintiff's counsel.

Under the Bankruptcy Reform Act of 1978 (the Code), federal district court is granted original and exclusive jurisdiction of cases filed under title 11 of the United States Code. 28 U.S.C. § 1471(a). The district court is further granted original but not exclusive jurisdiction of civil proceedings arising under title 11, or arising in or related to cases under title 11. *Id.* at § 1471(b). The bankruptcy court is established as an adjunct to the district court, and is charged with exercising all the jurisdiction granted the district court. *Id.* at § 1471(c); *see* 1 Collier on Bankruptcy ¶ 3.01[1][c] at 3-33 (15th ed. 1980) [hereinafter cited as Collier].

Section 1471(d) of title 28 makes clear that either court may abstain from adjudication of a civil proceeding when such abstention is in the best interest of justice. 28 U.S.C. § 1471(d). Neither the district court nor the bankruptcy court may abstain

[18 B.R. 424]

from hearing a proceeding, however, when there is no other forum in which the matter may be heard. *See* Collier, *supra,* ¶ 3.01[1][f] at 3-53. It is clear that a court may abstain from hearing a proceeding on the motion of one of the parties to the action. Whether the court may decide to abstain *sua sponte,* however, is an open question. *Id.* at 3-54.

In any event, the continuation of a judicial proceeding against the debtor is expressly prohibited by the automatic stay in § 362(a) of the Code. The stay provision is "applicable to all entities," presumably including a federal district court in which an action is pending. Further, the debtor is prohibited from incurring debt, other than in the ordinary course of business, without approval of the court after notice and a hearing. *See* 11 U.S.C. § 364(b). The debtor's continuance of litigation, or any judicial proceeding, incurs a debt that is generally not within the ordinary course of the debtor's business. The debtor may not, therefore, pursue that proceeding in any fashion without approval of this Court. In short, it appears that the filing of a petition for relief in this Court effectively stops any further action in proceedings involving the debtor pending in other courts, regardless of whether the debtor is plaintiff or defendant.

If either party to a pending action wishes to proceed with prosecution of the action, that party may pursue one of two procedural remedies. A party in interest may file a complaint in this Court for relief from the automatic stay to proceed in the court in which the action is pending. *See* 11 U.S.C. § 362(d). Alternatively, either party may file an application for removal, pursuant to 28 U.S.C. § 1478 [1]. Immediately upon the filing of the application, the case is, *ipso facto,* removed to this Court. *See* Interim Rule 7004; Local Rule 10.

In view of the foregoing discussion, it appears that the proceedings here under consideration are not properly before this Court. In only one of the proceedings in question was the action initiated by one of the parties, and in that case, the request was made in the form of an oral motion before the district court. In none of these proceedings has either party made an appropriate filing or paid the required filing fees for this Court to continue adjudication of the issues presented. [2]

Accordingly, it is hereby

[18 B.R. 425]

## ORDERED

that the parties in interest in each of the pending proceedings be given ten days from the date of entry of this Order to make a proper filing before this Court. At the end of the allotted time, any proceeding for which no such filing has been made will be forthwith DISMISSED.

## FootNotes

1. According to Local Rule 10, an application for removal pursuant to 28 U.S.C. § 1478 is deemed an adversary proceeding to be initiated by the filing of a complaint and payment of attendant fees.

2. Present Bankruptcy Rule 703 directs that an adversary proceeding is initiated by the filing of a complaint. (The proposed new Rule 7002 is in accord.)

The Judicial Conference, pursuant to 28 U.S.C. § 1930(b) has established a filing fee of $60.00 for the filing of a complaint instituting an adversary proceeding. (Memo of March 27, 1981, from Berkeley Wright, Chief, Division of Bankruptcy, Administrative Office of the United States Courts.) This is the same fee charged by the Clerk of the District Court for instituting any civil action in that Court, pursuant to 28 U.S.C. § 1914(a).

28 U.S.C. § 771(c) places the responsibility for collection of and directs the Clerk of each Bankruptcy Court to pay into the Treasury "all fees, costs and other matters collected by him, except uncollected fees not required by act of Congress to be prepaid." This provision and others related to the Clerks of the Bankruptcy Courts are not effective until April 1, 1984. (Section 402(b) of the Bankruptcy Reform Act.) However, United States Bankruptcy Judges are given authority during the period of transition to appoint a clerk who is given all the powers, rights and duties during the period of transition that the clerk will have as of April 1, 1984. Section 404(e) of the Bankruptcy Reform Act. The Administrative Office of the United States Courts has published "Bankruptcy Statistical

Instructions" pursuant to Public Law 95-598, the Bankruptcy Reform Act of 1978, directs that separate bankruptcy proceeding dockets be maintained for any "proceeding, *instituted by complaint* filed in the Bankruptcy Court pursuant to law and the Bankruptcy Rules, which arises under Title 11 of the United States Code or arises under or is related to a case under Title 11 of the Code. Cases and adversary proceedings filed in this Court are assigned sequential numbers used for statistical reporting by this Court used by the Administrative Office. Hence, without an adversary proceeding being filed and cost paid the Clerk of this Court has no authority or provision for numbering these cases or processing them. (There is, of course, no cost due by the United States.) Also included in the definition is any such proceeding removed or transferred to the Bankruptcy Court pursuant to 28 U.S.C. § 1478 and 1475. . . ." (Volume V, page 11-ii, Guide to Judiciary Policies and Procedure.) § 1478 excludes only two instances where pending causes are removable, to-wit: United States Tax Court or governmental units enforcing regulatory power.

Prior to the Bankruptcy Reform Act of 1978, the Bankruptcy Court administered cases filed in the District Court and by operation of law referred to the Bankruptcy Court. The docket number assigned by the Clerk of the District Court carried over to the Bankruptcy Court Clerk's Office under which number the case was processed to conclusion. Under the new Code, the case is filed in the Bankruptcy Court, given a number by the Bankruptcy Court Clerk and processed to conclusion under the Bankruptcy Court Clerk's number. Hence, the District Court numbers have no relevancy to the Bankruptcy Court numbers under the New Code.

---

## Comment

Your Name

Your Email

Comments

Submit

1000 Characters Remaining

*Leagle.com reserves the right to edit or remove comments but is under no obligation to do so, or to explain individual moderation decisions.*

---

Copyright © 2015, Leagle, Inc.      Disclaimer | Terms of Use | Privacy Statement | About Us | Contact Us